UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JENNIFER MEDLEY | CIVIL ACTION |
| | DOCKET NO. 09-4570-CJB-DEK |
| VERSUS | |
| | JUDGE CARL BARBIER |
| LOUISIANA STATE | |
| DEPARTMENT OF JUSTICE | MAGISTRATE JUDGE |
| | DANIEL E. KNOWLES, III |

<u>MEMORANDUM IN SUPPORT OF</u>
<u>MOTION FOR SUMMARY JUDGMENT</u>

**MAY IT PLEASE THE COURT:**

**I.      INTRODUCTION**

Plaintiff filed an original complaint on July 27, 2009, asserting claims under the Civil

Rights Act of 1964, 42 U.S.C. §2000e-5.  Plaintiff then filed a First Amended Complaint on

August 26, 2009, again under the Civil Rights Act of 1964.[1]   Both complaints name the

Louisiana Department of Justice (hereinafter "LDOJ") as defendant, alleging that LDOJ

discriminated against plaintiff by engaging in "discriminatory wage practices based on race

---

[1] Plaintiff also filed a *Motion to File Second Amended Complaint* on November 11, 2009.  [Document 18].   Had this Court granted leave to file this amended pleading, the *Second Amended Complaint* [Document 18-5], would have added new allegations of retaliation by LDOJ against plaintiff in violation of Louisiana law.   However, on January 3, 2010, Magistrate Judge Knowles denied Plaintiff's *Motion to File Second Amended Complaint* on the basis that plaintiff had failed to exhaust her administrative remedies as to any retaliation claims [Document 36].  Plaintiff then filed an *Objection to Magistrate's Order* [Document 37], which this Honorable Court denied on March 22, 2010 [Document 42].  As such, plaintiff's allegations of retaliation have not been properly joined in this matter.   Therefore, this brief will address only those claims presented in plaintiff's original and first amended complaints.

and/or gender."[2]   Both complaints allege that "(i)ncoming salaries and raises (of LDOJ employees) are, and have been, based on purely arbitrary and subjective factors which are motivated wholly, or at least in part, by the race and/or gender of the attorney who is seeking employment or seeking a salary raise."[3] Both complaints further allege that "(w)hite attorneys, both male and female were subsequently brought in at higher salaries or were quickly given raises" but that Plaintiff, a black female attorney, "received no significant raises."[4]

Plaintiff's claims should be dismissed, with prejudice, in their entirety.   Plaintiff cannot carry her burden of proof in this matter, as she cannot even establish a prima facie case of disparate pay based on race or gender.   Plaintiff cannot present sufficient evidence that any similarly-situated persons of a different race or gender were treated differently under similar circumstances.   Likewise, Plaintiff cannot substantiate her allegation that she did not receive any "significant raises," since she received department-wide "across the board" salary increases, as did all LDOJ employees, with each increase equalling between three (3%) and six (6%) percent of her annual salary.   Defendant respectfully suggests that, for the reasons presented herein, summary judgment is warranted, rejecting plaintiff's claims of disparate pay based on both race and gender.

## II.    SUMMARY OF FACTS

In this employment discrimination case, the plaintiff claims discriminatory treatment regarding wages under Title VII.   Plaintiff, Jennifer Medley, was hired by LDOJ as an Assistant Attorney General in June 2004 at a starting salary of $40,000.00.[5,6]   At the time of her hire, she

---

[2] See *Complaint* [Document 1], Prayer for Relief Paragraph; see also *First Amended Complaint* [Document 5], Prayer for Relief Paragraph.
[3] See original *Complaint* [Document 1], Paragraph 5;  *First Amended Complaint* [Document 5] Paragraph 5.
[4] See original *Complaint* [Document 1], Paragraph 6;  *First Amended Complaint* [Document 5] Paragraph 6.
[5] Exhibit A - Request to Fill a Position – Jennifer Medley, July 11, 2004.

had been admitted to practice law for only a year and a half, having been admitted to practice law in the State of Louisiana in October 2002.[7,8] Medley remained employed by LDOJ until September 4, 2009, when she voluntarily resigned in order to accept other employment.[9]  During her five-year employment with LDOJ, Medley received five (5) salary increases, which ranged from three (3%) percent to six (6%) percent of her salary.[10]  By the time she resigned her position in 2009, Medley's salary had increased by $10,000, from her starting salary of $40,000 to her ending salary of $50,000.[11]

Medley's last salary increase was effective on April 7, 2008.[12]  Just two weeks later, on April 22, 2008, Medley submitted a request for a cost of living adjustment to her supervisor, Stephen Babin, seeking an adjustment in salary to $60,000.00.[13]  Interestingly, the stated reasons for the requested increase was devoid of any references to plaintiff's performance or other work-related factors that would warrant a merit increase.  Also, it is notable that her request for increase included no suggestion of any discriminatory practices or motives. The requested increase would have constituted a **twenty (20%) percent increase** in plaintiff's salary and, at $10,000.00, would have equaled the cumulative amount of salary increases that plaintiff had received over her four years of employment with LDOJ.

On November 3, 2008, Medley filed an EEOC complaint, alleging that she was "paid less than similarly situated employees" and that she believed that she was "being discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because of my sex,

---

[6] Exhibit B – Report entitled "LADOJ N.O. Litigation Attorneys from 1/1/2006 to 3/15/2010"
[7] Exhibit C - Application for Employment – Jennifer Medley, February 22, 2004. *(Irrelevant pages excluded for purpose of this motion).*
[8] Exhibit D – Resume of Jennifer Medley, May 21, 2004
[9] Exhibit E – Letter of Resignation, August 26, 2009
[10] Exhibit F -  Recommendation for Salary Change – Jennifer Medley.
[11] See Exhibit F.
[12] See Exhibit F.
[13] Exhibit G – Memorandum from Jennifer Medley to Stephen Babin, April 22, 2008

female and my race, Black."[14,15]  On December 3, 2008, the LDOJ provided its response to the charge of discrimination, denying that Medley was paid less than similarly situated employees and denying that she has been discriminated against on the basis of race and gender.  On May 28, 2009, the U.S. Department of Justice, Civil Rights Division, issued a Notice of Right to Sue letter.[16]  In the original and first amended complaint filed in the present action, Medley alleges that LDOJ engaged in "discriminatory wage practices based on race and/or gender."[17]

## III.    LAW & ARGUMENT

### A.  *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  F.R.C.P. 56(c);  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986) (the court will review the facts in the light most favorable to the non-movant); *Walker v. Thompson*, 214 F. 3d 615, 624 (5th Cir. 2000) (the moving party bears the initial burden of showing that there is an absence of any issues of material fact).  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Allen v. Rapides Parish Sch. Bd*., 204 F.3d 619, 621 (5th Cir. 2000).  If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986); *Allen*, 204 F.3.d at 621.  To sustain this burden, the non-moving party cannot rest on the mere allegations in

---

[14] Exhibit H -- EEOC Charge of Discrimination, Charge No. 461-2009-00223, November 3, 2008.
[15] Exhibit I – Notice of Charge of Discrimination, Charge No. 461-2009-00223, November 4, 2008.
[16] Exhibit J– Notice of Right to Sue Within 90 Days, Charge No. 461-2009-00223, May 28, 2009
[17] See *Complaint* [ Document 1], Prayer for Relief Paragraph; see also *First Amended Complaint* [Document 5] Prayer for Relief Paragraph.

the pleadings.   F.R.Civ.P. 56(e);  *Celotex*, 477 U.S. at 324; *Meinecke v. H&R Block*; 66 F.3d 77, at 81.

In an employment discrimination case, the Court should focus on whether a genuine issue exists regarding whether the defendant intentionally discriminated against the plaintiff.  *Grimes v. Texas Dept of Mental Health,* 102 F.3d 137 (5th Cir. 1996); *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444 (5th Cir. 1996); *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993). Unsubstantiated assertions are not competent summary judgment evidence.  *Grimes*, 102 F.3d at 139; *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir. 1994). Nor are conjecture or speculation adequate to satisfy the nonmovant's burden.  See *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994).   The Fifth Circuit has held that an employee's self-serving generalized testimony stating his subjective belief that discrimination occurred "is simply insufficient to support a jury verdict in plaintiff's favor."   See *Grizzle v. Travelers Health Network, Inc.,* 14 F.3d 261, 268 (5th Cir. 1994).   Likewise, the Fifth Circuit has held that summary judgment may be appropriate in cases where elusive concepts such as motive or intent are at issue, if the nonmoving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation.  See *Krim v. BancTexas Group*, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993).

### B.   *Shifting Burdens of Proof in Discrimination Cases.*

To make out a prima facie case of discrimination under Title VII, an employee must show that she was a member of a protected class, she was denied a benefit, she was qualified for the benefit and an employee outside the class received the benefit.   *McDonnell Douglas, Corp. v. Green,* 411 U.S. 792, 802-03 (1973).   In order for Medley to successfully establish a prima facie case of disparate pay based on race and gender discrimination, she must show that she was paid less than a member of a different race **and** a member of a different gender performing

substantially the same work. *Pittman v. Hattiesburg Municipal Separate School District*, 644 F.3d 1071, 1075.  (5th Cir. 1981).   In other words, to avoid summary judgment on her wage claim, she must demonstrate that she occupied a position similar to white employees and to male employees who were compensated at a higher rate.   *Lee v. Georgia-Pacific Corporation*, 944 F.Supp. 497, 502 (S.D. Miss 1996).

Plaintiff has exhausted her administrative process with regard to her allegations of disparate pay based on race and gender in the original and in the first amended complaint.[18] Once administrative remedies have been exhausted, a plaintiff may then prove claims of discrimination based on either direct or circumstantial evidence. *McCoy v. City of Shreveport*, 2007 WL 1991042 (5th Cir. 2007).  Disparate treatment may be proven by direct evidence of intentional discrimination or, where there is no direct evidence, by showing disparate treatment using the three-part *McDonnell Douglas*[19] analysis as modified by the Fifth Circuit in *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305 (5th Cir. 2001).  The instant case must be proved with circumstantial evidence, as plaintiff points to no direct testimony from LDOJ employees as to discriminatory intent, but rather must be shown through inference.

Under the *McDonnell Douglas* framework for discrimination cases: (1) the plaintiff must first establish a prima facie case of discrimination, and if she does, (2) the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its action, and if it does, (3) the plaintiff must offer evidence that the proffered reason is a pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "To establish a prima facie case of racial discrimination with respect to compensation, the plaintiff

---

[18] See Exhibits H, I & J.
[19] *McDonnell Douglas Corporation v. Green,* 411. U.S. 792, 93 S.Ct., 1817, 36 L.Ed.2d 668 (1973).

must show that she was paid less than a member of a different race was paid for work requiring substantially the same responsibility." *Pittman v. Hattiesburg Mun. Separate Sch. Dist.,* 644 F.2d 1071, 1074 (5th Cir.1981). The plaintiff must show that those workers to whom she compares herself were "performing substantially the same job." *Uviedo v. Steves Sash & Door Co.,* 738 F.2d 1425, 1431 (5th Cir.1984).

Under *the McDonnell Douglas-Rachid* burden-shifting analysis, the plaintiff must first establish a prima facie case of discrimination by showing that 1) she is a member of a protected class; 2) she was qualified for her position; 3) she was discharged or suffered adverse employment discrimination action by the employer; and 4) she was replaced by someone outside of her protected class, or that she was treated less favorably than other similarly situated employees outside of her class. *Id.*

### 1. *Plaintiff's Racial Discrimination Claim*

#### a. *Plaintiff Has Failed to Establish the Requisite Prima Facie Case.*

Since plaintiff has alleged disparate pay, in part, on the basis of race, in order to establish the requisite prima facie case, she must demonstrate that there were non-black employees performing substantially the same job with substantially the same responsibilities who earned more than she did.  Although her original and first amended complaints as well as her deposition testimony fail to identify a single non-black employee whose level of pay exceeded hers, plaintiff's discovery responses include specific allegations of "Caucasian attorneys who were 'subsequently brought in at higher salaries or were given raises.'"[20] In her response to Interrogatory No. 8, plaintiff identifies six attorneys employed by LDOJ whose level of pay

---

[20] Exhibit K - *Responses to Defendant's First Set of Interrogatories and First Requests for Production of Documents,* Response to Interrogatory No. 8.

allegedly exceeded hers.[21] Specifically, plaintiff identifies the following employees:  Phyllis E. Glazer (white female), Kelly Badeaux-Phillips (white female), Anthony Winters (black male), Matthew Derbes (white male), Michael Menasco (white male) and John Sudderth (white male).[22] In her response to Interrogatory No. 9, plaintiff identifies three attorneys whom she considered to have been "similarly situated" to herself, namely Matthew Derbes (white male), Michael Menasco (white male) and Tanya Irvin (black female).[23]

Reading these two discovery responses in conjunction, it becomes clear that, of the six allegedly higher-paid Caucasian attorneys identified by plaintiff, plaintiff only alleges that she was "similarly situated" to Mr. Derbes and Mr. Menasco.[24]  Conversely, plaintiff has failed to allege that Phyllis Glazer, Raquelle Badeaux-Phillips, Anthony Winters or John Sudderth were "similarly situated" to her.  Plaintiff has likewise failed to allege that Tanya Irvin was paid at a higher rate than plaintiff—most likely because plaintiff is a black female employee whose salary was identical to plaintiff's at the time of plaintiff's resignation.[25]   The following analysis will show that these disjointed arguments cannot be reconciled into a viable prima facie case. It should be noted that, to date, plaintiff has failed to produce any evidence in support of her unsubstantiated assertions and self-serving generalized testimony.

Nevertheless, defendant LDOJ shows that plaintiff's identification of the above-listed employees fails to meet the requisite elements of establishing plaintiff's prima facie case for several reasons Specifically, the named employees were either: (1) not a member of a different

---

[21] See Exhibit K, Response to Interrogatory No. 8.
[22] See Exhibit K, Response to Interrogatory No. 8.
[23] See Exhibit K, Response to Interrogatory No. 9.
[24] It will be shown herein that, in fact, plaintiff was "similarly situated" to neither Mr. Derbes nor Mr. Menasco.
[25] See Exhibit B.

race; (2) not paid more than the plaintiff despite plaintiff's allegations; (3) not "similarly situated; or (4) not performing substantially the same job.

### i. Anthony Winters and Tanya Irvin Are Not Members of a Different Race.

In order to establish her prima facie case of disparate pay based on race, plaintiff must show that she was paid less than a member of another race performing substantially the same work.   Plaintiff has identified Anthony Winters as one of the "Caucasian attorneys who were subsequently brought in at high salaries or given raises."[26] However, despite plaintiff's characterization of Mr. Winters as a white employee, he is, in actuality, black, having described himself as "African American" on LDOJ personnel forms.[27]   As such, Mr. Winters cannot be said to qualify as a "member of another race" for purposes of establishing plaintiff's prima facie case. For this reason, this Court should not consider plaintiff's identification of Mr. Winters in determining whether plaintiff has made the requisite prima facie showing.

Moreover, by her own admission, plaintiff has inadvertently supplied this Court with an example of a member of her own race whose rate of pay is equal to or greater than her own.  To be sure, Mr. Winters—a black male attorney—was hired in October 2006 as an Assistant Attorney General in the Gaming Division of the LDOJ at a slightly higher starting salary than plaintiff had received at her time of hire.[28,29]   His starting salary was $41,000 and he received department-wide "across the board" salary increases, as did all LDOJ attorneys.[30] His present salary is $50,000.86—equal to plaintiff's rate of pay at the time of her resignation.[31] To the detriment of her own claim, plaintiff's identification of Mr. Winters as an employee whose salary

---

[26] See Exhibit K, Response to Interrogatory No. 8.
[27] Exhibit L – Consent to Background Check – Anthony Dwayne Winters, September 20, 2006.
[28] Exhibit M – Request to Fill Position – Anthony D. Winters, October 2, 2006.
[29] See Exhibit A.
[30] Exhibit N – Recommendations for Salary Change –Anthony D. Winters.
[31] See Exhibit N; see also Exhibit F.

exceeded plaintiff's serves only to demonstrate that LDOJ has not engaged in a disparate pay based on race.

Similarly, plaintiff has identified Tanya Irvin as an employee to whom she was "similarly situated;"[32] however, plaintiff's argument defies common sense.  First, Ms. Irvin is a black female and therefore cannot qualify as a "member of another race" for purposes of plaintiff's prima facie case.[33]  However, since plaintiff draws a comparison between herself and Ms. Irvin, is should be noted that Ms. Irvin was hired in January 2009 at a starting salary of $50,000 – an amount equal to plaintiff's salary at that time.[34]  This level of pay was based on Ms. Irvin's eight years of prior legal experience.[35]  Just as with Mr. Winters, plaintiff's identification of Ms. Irvin only further undermines her claims of disparate pay based on race.

For this reason, this Court should not consider plaintiff's identification of Mr. Winters or Ms. Irvin in determining whether plaintiff has sufficiently established her prima facie case of disparate pay based on race.

### ii. *For the Majority of Plaintiff's Employment, Her Salary Was Actually Higher Than Phyllis Glazer's Salary.*

In her discovery responses, plaintiff has identified Phyllis Glazer, a white female attorney, as an example of a white employee whose rate of pay was higher than her own.[36] However, during the time that Ms. Glazer and plaintiff were both employed at LDOJ, **plaintiff's salary was actually higher than Ms. Glazer's** for most of plaintiff's employment.

---

[32] See Exhibit K – Response to Interrogatory No. 9.
[33] See Exhibit B.
[34] Id.
[35] Id.
[36] See Exhibit K.

Phyllis Glazer was admitted to practice law in the State of Louisiana in 2005, three years after Ms. Medley was admitted to practice.[37] She was hired as a full-time employee by LDOJ in October 2005, approximately fifteen (15) months after plaintiff's hire date in June 2005.[38,39] Both plaintiff and Ms. Glazer were hired at the same starting salary -- $40,000.00, albeit over a year apart.[40] At the time of Ms. Glazer's hire, plaintiff had already received an "across the board" salary increase, and therefore was already earning more than Ms. Glazer's $40,000 starting salary.[41]   Over the next two years, Plaintiff continued to earn a higher salary than Ms. Glazer during which time both received the same "across the board" increases.[42]   Despite plaintiff's allegations that Ms. Glazer was "quickly given raises," plaintiff and Ms. Glazer received the same "across the board" increases.[43]   Aside from the department-wide increases, Ms. Glazer was given one merit increase on January 28, 2008, approximately 2½ years after she was hired.[44]  Ms. Glazer received a $5,0000.00 merit increase when she received a competitive job offer from another perspective employer, bringing her salary from $44,821 to $49,821, exceeding for the first time plaintiff's then-salary of $46,984.[45]   After this increase, until the time of plaintiff's resignation a year and a half later, Ms. Glazer continued to earn a salary slightly higher than plaintiff's.[46] As a result, despite plaintiff's allegations, Ms. Glazer was actually paid less than plaintiff for two years (from October 2005 through January 2008), after

---

[37] See Exhibit B.
[38] See Exhibit O – Request to Fill Position – Phyllis E. Glazer – April 6, 2004.  See also Exhibit B.
[39] Prior to October 2005, Phyllis Glazer was employed by LDOJ on a part-time basis as a law clerk.
[40] See Exhibit B; see also Exhibit A; see also Exhibit O.
[41] See Exhibit B; see also Exhibit F;  see also Exhibit O.
[42] Exhibit P – Recommendations for Salary Change – Phyllis Glazer.  See also Exhibit B; see also Exhibit F.
[43] See Exhibit B; see also Exhibit F; see also Exhibit P.
[44] See Exhibit B; see also Exhibit K, Response to Interrgatory 8; see also Exhibit P.
[45] See Exhibit  B;  see also Exhibit F; see also Exhibit P.
[46] See Exhibit  B;  see also Exhibit F; see also Exhibit P.

which time Ms. Glazer was paid slightly more than plaintiff for a year and a half (from January 2008 through September 2009).

For this reason, plaintiff's identification of Phyllis Glazer as a member of a different race earning more than her is **only partially accurate** and fails to establish a prima face case of disparate pay on the basis of race. Not only does the example of Phyllis Glazer disprove plaintiff's claim of disparate pay based on race, but actually demonstrates the opposite that, at times, LDOJ was paying plaintiff – a black female—more than a white female employee.  As such, this Court should disregard plaintiff's identification of Ms. Glazer as an employee who earned more than plaintiff in its consideration of plaintiff's prima facie case.

> ### iii.    *Plaintiff Was Not "Similarly Situated" to Phillips, Menasco & Sudderth.*

Plaintiff's allegations that the above-referenced "white employees were subsequently brought in at higher salaries or were quickly given raises" neglects the fact that several of these employees—specifically, Raquelle (Kelly) Badeaux-Phillips (a white female), Michael Menasco (a white male) and John Sudderth (a white male) **were not similarly situated to plaintiff** at the time of their respective hires, insofar as **their prior employment history far exceeded plaintiff's**.

When plaintiff was hired by LDOJ, she had approximately one and a half years of legal experience.[47] However, Ms. Phillips, Mr. Menasco and Mr. Sudderth each came to the Department of Justice with considerably more legal experience than plaintiff. Ms. Phillips had approximately five and a half years prior legal experience at the time of her hire with LDOJ;[48]

---

[47] See Exhibit C; see also Exhibit D.
[48] Exhibit Q – Pre-Employment Questionnaire – Raquelle Badeaux-Phillips. *(Irrelevant pages excluded for purpose of this motion).*

Mr. Menasco had approximately five and a half years;[49,50] and Mr. Sudderth had approximately twelve years prior legal experience.[51,52]

In comparison to plaintiff's limited prior legal experience of only a year and a half, during which time she was employed by no less than three different employers, plaintiff cannot be considered as being "similarly situated" with far more experienced attorneys, Ms. Phillips, Mr. Menasco and Mr. Sudderth.[53]

Additionally, plaintiff has identified Tanya Irvin as an employee who is "similarly situated" to herself.[54]   Plaintiff's inclusion of this allegation, aside from being incorrect, is pointless and does nothing to advance plaintiff's prima facie case.   First, plaintiff and Ms. Irvin are not "similarly situated;" at the time that she was hired by LDOJ, Ms. Irvin had approximately six years of prior legal experience, whereas plaintiff had only a year and a half at the time of her hire.[55] Secondly, as previously discussed, because Ms. Irvin is a black female attorney whose salary was identical to plaintiff's until the time of plaintiff's resignation, she is neither a "member of a different race" nor a "higher paid employee."[56]   Plaintiff's identification of Ms. Irvin fails to demonstrate that there were similarly situated non-black employees who were paid more than plaintiff, but rather bolsters defendant's position that there was no disparity in pay as a result of race or gender.

---

[49] Exhibit R – Pre-Employment Questionnaire – Michael Menasco. *(Irrelevant pages excluded for purpose of this motion)*.
[50] Exhibit S – Resume of Michael Menasco.
[51] Exhibit T – Application for Employment – John Sudderth.
[52] Exhibit U – Resume of John Sudderth
[53] See Exhibit C; see also Exhibit D.
[54] See Exhibit K – Response to Interrogatory No. 9.
[55] See Exhibit B.
[56] Id.

For these reasons, this Court should disregard plaintiff's allegations regarding Phillips, Menasco and Sudderth, as well as Irvin in determining whether plaintiff has made a prima facie showing that there were similarly situated non-black employees earning more than her.

   iv.   *Plaintiff Did Not Perform "Substantially the Same Job" as Either Derbes or Winters.*

Plaintiff's identification of the allegedly higher-paid employees also neglects the fact that she did not perform "substantially the same job" as either attorney Matthew Derbes (white male) or Anthony Winters (black male) – a requisite element in establishing plaintiff's prima facie case.

Matthew Derbes was hired as an Assistant Attorney General in the Criminal Division of LDOJ on October 30, 2006, at a starting salary of $50,000, based on his prior legal experience as a chief prosecutor with the Orleans Parish District Attorney's Office.[57,58] As an attorney in the Criminal Division, his job description is considerably different than that of the plaintiff. Specifically, attorneys in the Criminal Division prosecute criminal cases, which require more involvement by the attorneys into investigating these criminal matters.[59] They also issue opinions on criminal statutes, which involve a thorough working knowledge of criminal law. Most attorneys employed in the Criminal Division have prior experience as prosecutors in district attorney's offices. Because the criminal matters handled by LDOJ are complex in nature, the work requires that its attorneys have prosecutorial experience in the criminal arena, have developed a specialized working knowledge of the criminal legal system and have an entirely different skill set than those attorneys employed in the Litigation Division.  Consequently, these

---

[57] Exhibit V – Request to Fill a Position – Matthew Derbes.
[58] Exhibit W – Pre-Employment Questionnaire – Matthew Derbes*(Irrelevant pages excluded for purpose of this motion).*
[59] Exhibit X – Louisiana Department of Justice Policy and Procedures Manual (August 7, 2000) *(Irrelevant pages excluded for purpose of this motion).* , p. A5 – A9.

attorneys are usually former assistant district attorneys. This, in turn, considerably limits the applicant pool from which the LDOJ may find suitable candidates. For these reasons, Mr. Derbes' job responsibilities are more specialized than that of the attorneys employed in the Litigation Division.

At the time of his hire with LDOJ, Mr. Derbes already had a demonstrated ability in jury trials in complex criminal cases. Over the course of his employment with LDOJ, not only did Mr. Derbes receive "across the board" salary increases, as did all other LDOJ attorneys, but based upon his experience, talent and his having received a job offer with another employer, in March 2008, Mr. Derbes received a substantial merit increase in order to match the salary for the job he had accepted so that he would remain with LDOJ.[60,61]

With respect to Anthony Winters, as previously stated herein, Mr. Winters is a black male and therefore plaintiff's flawed identification of Mr. Winters as a Caucasian employee who was paid more than plaintiff should be rejected in its entirety. Nevertheless, this Court should note that in addition to Mr. Winters' status as a member of plaintiff's own protected class, her reliance on Mr. Winters as an employee who performed "substantially the same job" as plaintiff is likewise faulty.

The Gaming Division, in which Mr. Winters is employed, is a specialized division insofar as its attorneys focus strictly on gaming and gaming law; conduct investigations into gaming-related complaints, work with the Louisiana State Police Gaming Unit and the Louisiana Gaming Control Board; and handles gaming-related administration matters as well as litigation.[62]

---

[60] Exhibit Y – Recommendations for Salary Change – Matthew B. Derbes.
[61] See Exhibit B.
[62] See Exhibit X, p. A15-A16.

On October 2, 2006, Anthony Winters was hired as an Assistant Attorney General in the Gaming Division of LDOJ, at a starting salary of $41,000.00.[63] He received department-wide "across the board" salary increases, as did all LDOJ attorneys.[64]

By contrast, plaintiff was hired at a reasonable market rate at the time of her hiring. Although she received salary increases throughout her tenure with LDOJ as did all attorneys, her performance did not warrant additional merit increases above and beyond these across the board increases. Plaintiff was originally tasked with handling Civil Rights cases; however, it became apparent that she was unable to handle these types of cases and her supervisors had to remove the cases from her. Plaintiff even agreed that she was not able to handle Civil Rights cases at that time. Plaintiff further demonstrated an unwillingness to handle Worker's Compensation cases assigned to her;[65] however after discussing the matter with her supervisor, she was directed to handle these types of cases. The workload involved in the civil rights and workers' compensation cases differs considerably from that required by cases handled by attorneys in the criminal and gaming divisions of the LDOJ insofar as the Litigation Division defends the State in constitutional challenges to State laws and defends state agencies and elected officials in civil claims.[66] While the work of the Litigation Division includes state and federal litigation, preparation of pleadings, conducting discovery, and general motion practice—this Division deals with general areas of civil law and public protection. Contrasted with Gaming and Criminal Divisions, the Litigation Division requires no specialized knowledge of any particular area of the law. As such, plaintiff cannot be said to have performed "substantially the same job" or

---

[63] See Exhibit N.
[64] See Exhibit N.
[65] See Exhibit BB – Deposition of Jennifer Medley, p. 167, line 22- p. 168, line 5.
[66] See Exhibit X, p. A17-20.

responsibilities as either Mr. Derbes or Mr. Winters, as their job duties were considerably different than hers.

Thus, plaintiff has failed to come forward with any evidence to contest the distinction between her responsibilities as an attorney in the Litigation Division and those of Mr. Derbes, in the Criminal Division and of Mr. Winters in the Gaming Division.   She does not allege that the responsibilities of these positions are "substantially similar" nor can she present any evidence to support such an allegation.  For this reason, this Court should not consider plaintiff's allegations regarding Mr. Derbes or Mr. Winters in determining whether plaintiff has established a prima facie case of disparate pay based on race.

### v.  Other Black Attorneys Were Paid Higher Salaries than Plaintiff.

Plaintiff claims that other attorneys, who were white, were paid more than her.  While this is true, it is equally true that *that other black attorneys within the New Orleans Litigation Division were paid more than Medley.*[67]   In her own deposition testimony, plaintiff admits that there were black LDOJ attorneys who were compensated at either an equal or higher level than she was.[68]   Additionally, LDOJ shows that there were, in fact, at least three black female attorneys in the New Orleans Litigation Division whose starting salaries were higher than plaintiff's.  Specifically, Pauline Feist, a black female with five years' prior experience was hired at $45,000 in 2001; Sharon Florence, a black female was hired at $50,000.08 in 2009; Kevin Hill, a black male with nine years' prior experience was hired at $60,000 in 2008; Tanya Irvin, a black female with seven years' prior experience was hired at $50,000 in 2009.[69]

---

[67] See Exhibit B.
[68] See Exhibit BB – Deposition of Jennifer Medley, p. 111, line 19 through p. 112, line 3
[69] See Exhibit B.

For the above and foregoing reasons, plaintiff has failed to meet her initial burden of proof insomuch as she has not established a prima facie case of disparate pay based on racial discrimination.  She simply has not demonstrated that she was paid less than a member of a different race was paid for work requiring substantially the same responsibility.  Neither has she shown that those workers to whom she compared herself were "performing substantially the same job."  Accordingly, plaintiff is unable to establish a prima facie case and, there being no material fact issue concerning plaintiff's discriminatory wage claim based on race, summary judgment in favor of defendant, LDOJ, is warranted.

### b. *Defendant Louisiana Department of Justice Has Legitimate, Non-Discriminatory Reasons in Setting Salaries of its Employees.*

Even if plaintiff could demonstrate a requisite prima facie case of disparate pay based on race, which she cannot do, the burden would then shift to defendant, LDOJ, to articulate a legitimate, non-discriminatory reason for paying non-black attorneys more than it paid plaintiff. *Bodenheimer v. PPG Industries, Inc.* 5 F.3d 955, 958 (5th Cir. 1993) citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981).  If the employer articulates a legitimate business reason for the challenged action, the presumption of discrimination disappears. Although it is not required to do so, based upon plaintiff's failure to make a prima facie showing, out of an abundance of caution, LDOJ respectfully shows that its LDOJ's rationale in setting the pay levels of its employees, including that paid to plaintiff, are legitimate and non-discriminatory in nature.

In the instant matter, LDOJ was justified in paying the individuals identified by plaintiff (Glazer, Badeaux-Phillips, Winters, Derbes, Menasco and Sudderth) salaries higher than that paid to plaintiff, for the various reasons addressed *supra*.  As will be shown herein, these reasons

are legitimate and non-discriminatory in nature. The salaries of these employees, like all LDOJ employees, are determined on an individual basis. Many factors affect salary for professionals, including but not limited to: specialization, expertise, experience, market factors, productivity, attitude, departmental needs, personality, work ethic, technical proficiency and budget limitations. A cursory review of the salaries of the employees in the New Orleans Litigation Division and the incidence of members of plaintiff's protected class (i.e. black attorneys) earning salaries higher than plaintiff's, demonstrates that the level of pay throughout the Litigation Division was not based on race or gender, but were based on each individual's level of skill, experience and performance. Additionally, the differential in pay between plaintiff and those attorneys in other divisions (i.e. Criminal, Gaming, etc.) is attributed to the specialized skill and expertise in those areas of law as well as the specific responsibilities associated with those divisions.

These considerations are legitimate and non-discriminatory reasons why other attorneys, including some, but certainly not all, white attorneys in the New Orleans Litigation Division of the LDOJ were paid more than plaintiff. It is clear that the levels of salary were not determined on the basis of race but by consideration of a number of valid factors. Specifically, plaintiff's starting salary was a function of elements that include her prior legal experience, the responsibilities of the position being filled, market factors, salary negotiations between plaintiff and LDOJ. It should not be overlooked that plaintiff negotiated for, and ultimately accepted, the starting salary of $40,000.[70] This fact is consistent with the rate of pay that plaintiff allegedly made at the two previous full-time positions that she had held.[71] Taking into account all of these

---

[70] See Exhibit A.
[71] See Exhibit C - Plaintiff's Job Application, p. 6-7; see also Exhibit D.

considerations, LDOJ's reasons for setting plaintiff's starting salary at $40,000.00 were valid, justifiable business reasons, none of which were discriminatory in nature.

Additionally, LDOJ is equally justified in its subsequent salary decisions regarding plaintiff's salary. The Louisiana Attorney General has the discretion to give salary increases as he sees fit. Over the last several years, the Department of Justice has given "across the board" salary increases to all employees, including attorneys, on an almost annual basis (budget permitting).[72] The amount of an "across the board" increase is a standard percentage, as determined by that administration. During plaintiff's employment, the plaintiff, as well as all attorneys within the Department of Justice, were recipients of these raises. Plaintiff's raises ranged from three (3%) percent to six (6%) of her salary.[73] Merit increases are given to employees at the discretion of the Attorney General.[74] Plaintiff, however, did not warrant additional merit increases above and beyond these department-wide increases as other employees—irrespective of race—received.

As such, defendant LDOJ has sufficiently articulated that plaintiff's rate of pay, similar to that of all other LDOJ employees, is based on legitimate, non-discriminatory business reasons. Therefore, any presumption of discrimination (had plaintiff successfully carried her burden of proof) has now disappeared. Accordingly, even though plaintiff has failed to establish a prima facie case of disparate pay based on race, defendant LDOJ has sufficiently met its burden in demonstrating a valid reason for setting plaintiff's salary as it did.

Consequently, the burden now shifts to plaintiff to show that LDOJ's legitimate, non-discriminatory reasons for plaintiff's level of pay were merely pretextual for discrimination.

---

[72] See Exhibit B.
[73] See Exhibit F,
[74] See Exhibit W, p. E-7.

Plaintiff must now come forward with evidence that the reasons articulated by LDOJ herein were merely pretexts for discrimination.  It is respectfully suggested that there is insufficient evidence of any such pretext.  Pretext cannot be established by the employees' mere conclusory statements that she has been discriminated against.  *Murphy v. Metro Transp. Authority,* 2004 WL 1941759 (5th Cir. 2004); *Amburgey v. Corhart Refactories Corp., Inc.,* 936 F.2d 805, 814 (5th Cir. 1991). It is respectfully submitted that plaintiff will not and cannot demonstrate pretext by LDOJ in setting plaintiff salary.  Accordingly, there remains no material issue of fact regarding plaintiff's claim of disparate pay based on race and summary judgment must be granted.

### 2.   *Plaintiff's Gender Discrimination Claim*

In her original and first amended complaints, plaintiff asserts claims that she was paid less than other "similarly situated" employees on the basis of ***gender.***  As discussed *supra,* while she does not specifically identify any such employees in these complaints, plaintiff has identified six (6) employees (Badeaux-Phillips, Glazer, Derbes, Menasco, Winters and Sudderth) in her discovery responses as "Caucasian attorneys who were 'subsequently brought in at higher salaries or were given raises.'"[75] Interestingly, in establishing a prima facie case of disparate pay based on *race,* **plaintiff has effectively disproven her own claim of disparate pay based on gender**.  To be sure, plaintiff has presented Phyllis Glazer and Kelly Badeaux-Phillips (both white females) as examples of attorneys who were "subsequently brought in at higher salaries or were given raises."   Ms. Badeaux-Phillips was hired on May 2, 2005, less than a year after plaintiff's hire in June 2004, at the starting salary of $52,000.00—considerably higher than plaintiff's then level of pay of $40,000.00, due to her almost six years of prior legal experience.[76]

---

[75] See Exhibit K, Response to Interrogatory Number 8.
[76] Exhibit Z– Request to Fill A Position – Raquelle Badeaux-Phillips, April 6, 2005.  See also Exhibit Q.

Since that time, Ms. Badeaux-Phillips received the standard "across the board" increases, bringing her present salary up to $65,720.20.[77]

However, the fact that Ms. Badeaux-Phillips—a member of the same protected class as plaintiff (i.e. female) –was hired at a higher rate than Ms. Medley's initial rate of pay at the time of her hire *actually refutes plaintiff's claims that LDOJ engaged in discriminatory wage practices based on gender*.  Similarly, the fact that Ms. Glazer—another female—was at one point earning a higher salary than plaintiff also *disproves plaintiff's gender discrimination claims.*  As a result, plaintiff's identification of these female employees earning a higher salary than her has negated her own claims of disparate pay based on gender discrimination.

Similarly, plaintiff claims that other attorneys, who were male, earned higher salaries than hers.  While this is true, it is also true that numerous female attorneys in the New Orleans Litigation Division were either hired at a higher rate of pay than Medley or otherwise received merit increases based upon their performance that elevated their salary to a level above that of the plaintiff.   Among the female attorneys in the New Orleans Litigation Division who earned more than plaintiff are the following:   Raquelle Badeaux-Phillips, Pauline Feist, Sharon Florence, Phyllis Glazer, Cherie Huffman, Tanya Irvin, Susan LaFaye, Stacy Lecompte, Kathi Logan, Marguerite Pellerin, Andree Pitard, Sharry Scott and Rebecca Urrutia.[78]

At the same time, it is also true that there were several male attorneys in the New Orleans Litigation Division who earned either the same as, or less than, the plaintiff.   To be sure, Alan Alario II, was hired in February 2006, at a starting salary of $40,000.00; Philbert Grinstead was hired in January 2004 at a rate of $35,000.00; and Frank LaBruzzo was hired in September 2005

---

[77] Exhibit AA - Recommendations for Salary Increase – Raquelle Badeaux-Phillips.  See also Exhibit B.
[78] See Exhibit B.

at \$40,000.00.[79]  Thus, it can hardly be said that the LDOJ engaged in disparate pay based on gender.

Accordingly, there remains no genuine issue that LDOJ has not engaged in disparate pay based on gender and this Court should grant summary judgment, dismissing plaintiff's claims of disparate pay based on gender discrimination.

## IV.  CONCLUSION

In summary, plaintiff has failed to establish a prima facie case with respect to her claims of disparate pay based on either race or gender.   As to the race claim, plaintiff has not identified a single "similarly-situated" LDOJ employee who "performs substantially the same job" and whom she was paid less than.   Even though plaintiff has failed to meet her initial burden of proof, defendant LDOJ has nonetheless articulated legitimate, non-discriminatory reasons for setting plaintiff's salary as it did.  At this point, plaintiff must, but cannot, demonstrate that the legitimate, non-discriminatory reasons were only pretexts for discrimination.  For these reasons, there remains no material issue of fact and summary judgment is warranted as to plaintiff's claim of disparate pay based on race.

Likewise, plaintiff has quite simply refuted her own claims of disparate pay based on gender.   In identifying attorneys whose rate of pay was higher than her own in support of her racial discrimination wage claim, plaintiff has inadvertently identified female attorneys whose rate of pay exceeds her own, effectively disproving her gender discrimination wage claim.  There

---

[79] See Exhibit B.

exists no material issue of fact as to this claim, and this Honorable Court should grant summary

judgment in favor of defendant, LDOJ.

Respectfully Submitted:

**JAMES D. "BUDDY' CALDWELL
ATTORNEY GENERAL**

**CLATYON & FRUGE**
ANTONIO M. CLAYTON, Bar Roll #21191
Special Assistant Attorney General
607 N. Alexander Avenue
Port Allen, Louisiana 70767
Telephone:  (225) 344-7000
Facsimile:  (225) 393-7631
tclayton@aol.com

**--and---**

**SHOWS, CALI, BERTHELOT & WALSH, LLP**

 */s Amy L. McInnis*_____
E. Wade Shows, La. Bar Roll No. 7367
Amy L. McInnis, La. Bar Roll No. 29337
*Special Assistant Attorneys General*
628 St. Louis Street (70802)
P.O. Drawer 4425
Baton Rouge, Louisiana 70821
Telephone: (225) 346-1461
Facsimile:  (225) 346-1467
ews@scbllp.com
amym@scbllp.com

## CERTIFICATE OF SERVICE

  I hereby certify that on the 9th day of September, 2010, a copy of the foregoing *Memorandum in Support of Motion for Summary Judgment* was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

*s/ Amy L, McInnis*
**Amy L. McInnis**

_____
24