# RECOMMENDATION FOR SALARY CHANGE

**EMPLOYEE NAME:** RAQUELLE M. BABEAUX-PHILLIPS

**TITLE:** ASSISTANT ATTORNEY GENERAL

**SECTION:** NEW ORLEANS

**DIVISION:** LITIGATION

**PROGRAM:** LITIGATION

| PRESENT SALARY | AMOUNT OF CORRECTION | PROPOSED SALARY | TYPE INCREASE | EFFECTIVE DATE |
|---|---|---|---|---|
| $ 2,000.00 BI-WEEKLY | $ 80.00 | $ 2,080.00 BI-WEEKLY | Adjustment | 08/28/2006 |
| $ 52,000.00 ANNUAL | $ 2,080.00 | $ 54,080.00 ANNUAL | | |

_Judi Stout_
HUMAN RESOURCE COORDINATOR

```
FUNDS AVAILABLE (DIV/SEC)
YES  ✓      NO _____
_Cindy River_
DEPUTY DIRECTOR/ADM.SERVICES    DATE
```

APPROVED:

_Nicholas Gachassin, Jr._
NICHOLAS GACHASSIN, JR.    DATE
FIRST ASSISTANT ATTORNEY GENERAL

_Charles C. Foti_
CHARLES C. FOTI, JR.    DATE
ATTORNEY GENERAL



EXHIBIT AA IN GLOBO

# RECOMMENDATION FOR SALARY CHANGE

**EMPLOYEE NAME:** RAQUELLE M. BADEAUX

**TITLE:** ASSISTANT ATTORNEY GENERAL

**SECTION:** NEW ORLEANS OFFICE

**DIVISION:** LITIGATION

**PROGRAM:** LITIGATION

| PRESENT SALARY | AMOUNT OF CORRECTION | PROPOSED SALARY | TYPE INCREASE | EFFECTIVE DATE |
|---|---|---|---|---|
| $ 2,080.00 BI-WEEKLY | $ 57.60 | $ 2,137.60 BI-WEEKLY | Adjustment | 07/01/2007 |
| $ 54,080.00 ANNUAL | $ 1,497.60 | $ 55,577.60 ANNUAL | | |

_____
HUMAN RESOURCE COORDINATOR

**FUNDS AVAILABLE (DIV/SEC)**
YES ✓   NO ___
_____
DIRECTOR/ADM SERVICES   DATE

APPROVED:

_____
NICHOLAS GACHASSIN, JR.   DATE
FIRST ASSISTANT ATTORNEY GENERAL

_____
CHARLES C. FOTI, JR.   DATE
ATTORNEY GENERAL

# RECOMMENDATION FOR SALARY CHANGE

**EMPLOYEE NAME:** RAQUELLE M. BADEAUX

**TITLE:** ASSISTANT ATTORNEY GENERAL

**SECTION:** NEW ORLEANS OFFICE

**DIVISION:** LITIGATION

**PROGRAM:** LITIGATION

| PRESENT SALARY | AMOUNT OF CORRECTION | PROPOSED SALARY | TYPE INCREASE | EFFECTIVE DATE |
|---|---|---|---|---|
| $ 2,137.60 BI-WEEKLY | $ 247.02 | $ 2,384.62 BI-WEEKLY | Adjustment | 08/27/2007 |
| $ 55,577.60 ANNUAL | $ 6,422.52 | $ 62,000.12 ANNUAL | | |

_____
HUMAN RESOURCE COORDINATOR

**FUNDS AVAILABLE (DIV/SEC)**
YES ✓   NO ____
_[signature]_
DIRECTOR/ADM SERVICES   DATE

APPROVED:
_[signature]_
**NICHOLAS GACHASSIN, JR.   DATE**
FIRST ASSISTANT ATTORNEY GENERAL

_[signature]_
**CHARLES C. FOTI, JR.   DATE**
ATTORNEY GENERAL

# RECOMMENDATION FOR SALARY CHANGE

**EMPLOYEE NAME:** RAQUELLE M. BADEAUX

**ISIS NUMBER:** 186012

**TITLE:** ASST ATTORNEY GENERAL

**SECTION:** NEW ORLEANS OFFICE

**DIVISION:** NEW ORLEANS OFFICE

**PROGRAM:** LITIGATION

| PRESENT SALARY | AMOUNT OF CORRECTION | PROPOSED SALARY | TYPE INCREASE | EFFECTIVE DATE |
|---|---|---|---|---|
| $ 2,384.62 BI-WEEKLY | $ 143.08 | $ 2,527.70 BI-WEEKLY | Adjustment | 04/07/2008 |
| $ 62,000.12 ANNUAL | $ 3,720.08 | $ 65,720.20 ANNUAL | | |

_Jermie D. Davoy_  3/11/08
HUMAN RESOURCE MANAGER   DATE

**FUNDS AVAILABLE (DIV/SEC)**
YES ✓    NO ____
_[signature]_ 3-11-08
DIRECTOR/ADM. SERVICES   DATE

APPROVED:
_[signature]_
JOHN SINQUEFIELD    DATE
FIRST ASSISTANT ATTORNEY GENERAL

_[signature]_
JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL

1

UNITED STATES JUDICIAL DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CIVIL ACTION
DOCKET NO. 09-4570-CJB-DEK
JUDGE CARL BARBIER
MAGISTRATE JUDGE DANIEL K. KNOWLES, III

JENNIFER MEDLEY

VERSUS

LOUISIANA STATE DEPARTMENT OF JUSTICE

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Deposition of JENNIFER MEDLEY, taken at the offices of LAW OF OFFICE OF DALE E. WILLIAMS, located at 212 Park Place, Covington, Louisiana, 70433, on Thursday, the 15th day of April, 2010.

REPORTED BY:
    ROBIN REYNOLDS, CCR
    BOARD CERTIFIED COURT REPORTER
    CERTIFICATE NO. 94019

SERPAS & ASSOCIATES, llc
985.951.7255 * 800.526.8720

EXHIBIT
BB

APPEARANCES:

REPRESENTING THE PLAINTIFF:

    LAW OFFICE OF DALE E. WILLIAMS
    (By: Dale E. Williams, Esquire)
    212 Park Place
    Covington, Louisiana 70433

REPRESENTING THE DEFENDANTS:

    SHOWS, CALI, BERTHELOT & WALSH,
       L.L.P.
    Special Assistant Attorney General
    (By: E. Wade Shows, Esquire)
    628 St. Louis Street
    Baton Rouge, Louisiana 70802

ALSO PRESENT:
    Robert Harroun
    Department of Justice

                                                                111

1      A.      You know what everybody's
2  duties are.  You know those things about
3  other people as lawyers.
4      Q.      But what you don't know is how
5  many cases they have, correct?
6      A.      That's incorrect.
7      Q.      You do know?
8      A.      You do know.  We have a shared
9  system.
10     Q.      Okay.  So the reports you would
11 send, you could access somebody else's
12 reports, also?
13     A.      No.  What you do -- yeah, you
14 can access that.
15     Q.      All right.  Is that one of the
16 factors that you itemized in your
17 Jennifer's sheet?
18     A.      No.  I didn't itemize that.
19     Q.      Were there any African American
20 lawyers that were making more than you
21 compared to what your factors were?
22     A.      African American male lawyers,
23 yes.
24     Q.      Any African American female
25 lawyers?

1   A.   They were equal.

2   Q.   Equal to you?

3   A.   Yes.  Given the time out.

4   Q.   Your little sheet is going to
5   show me how you calculated it?

6   A.   Well, I calculated it from the
7   Civil Service.

8   Q.   But, I mean, that little sheet
9   will break it down in terms of race, as
10  well as gender?

11  A.   Yes.  It's not many.

12  Q.   Were there any equally situated
13  white attorneys that were being paid less
14  than you?

15  A.   No.

16  Q.   Either male or female?

17  A.   No.

18  Q.   So every female white attorney
19  and every male white attorney that you
20  calculated to be on the same level with you
21  were making more money than you?

22  A.   Even now, yeah, when I left.

23  Q.   Before you filed the EEOC
24  complaint did you ever complain or raise
25  questions about disparity in pay based on

1   you earlier, in the New Orleans office we
2   are not sectioned off.  So there is no such
3   thing as sections in the New Orleans
4   office.
5       Q.    I understand.  But as a lawyer
6   with your experience you would much rather
7   do civil rights cases than worker's
8   compensation cases, I would assume?
9       A.    I would rather do anything than
10  worker's compensation cases.
11      Q.    I'm with you.  What I'm saying,
12  although you have the same section, the
13  quality, I'll call it the quality of the
14  work, can be disparaging because of the
15  type of cases that you are given, whether
16  it's workman's compensation, road hazards,
17  civil rights, right?
18      A.    No.
19      Q.    Didn't you say at some point
20  you didn't want to do any workman's
21  compensation?
22      A.    When I got hired Steve Babin
23  asked me, Is there any area of law that you
24  prefer not to do?  I told him not really.
25  I had only handled one workman's

168

1  compensation case prior to D.O.J.  I
2  represented a plaintiff in that case.  I
3  just didn't like the way the law is
4  written.  I told had him I preferred not to
5  do that.
6             But you really didn't have --
7  you did not have that choice.  You can't
8  pick and choose what you want to do.  Your
9  boss tells you to do this, that's what you
10 do.
11            I did not get any workman's
12 compensation assignments for a long time,
13 never.  So then I started getting the
14 workman's compensation assignments.  As I
15 started getting them, I noticed other
16 people weren't getting them.
17            In all fairness, I think if I
18 have to get the comp assignments, then why
19 aren't they evenly distributed.
20      Q.    And no one told you you were
21 getting the comp assignments because they
22 felt that would be an area where you could
23 better perform than the civil rights cases?
24      A.    No.  You are still comparing
25 only one area of law.  No.  No one ever

169

1  told me anything about the performance.
2  That is the only problem we had was during
3  the time of my separation.
4       Q.     In the category for your
5  element of damages you talk about mental
6  anguish, including vexation and worry, in
7  connection with the filing of this suit,
8  loss of professional reputation and loss of
9  enjoyment of life.
10             Let's start with mental anguish
11 including vexation and worry.  Tell me
12 about what you suffered.
13      A.     The entire time when I started
14 complaining about the pay disparity, I
15 mean, it was a constant worry about, will I
16 the lose my job because I'm making these
17 complaints.  You have to think about that
18 all of the time.
19             And then, you know, when Paul
20 started watching every move that I made.
21 Then Phyllis is in my office yelling about
22 getting an offer from the City Attorney's
23 office.  I mean, it was one thing after
24 another.  It was a constant fight.  And no
25 one would address it, a constant fight.

```
 1                    REPORTER'S CERTIFICATE
 2             This certification is valid only for
 3        a transcript accompanied by my original
 4        signature and original seal on this page.
 5        I, ROBIN REYNOLDS, Certified Court
 6        Reporter, in and for the State of
 7        Louisiana, as the officer before whom this
 8        testimony was taken, do hereby certify that
 9        the Witness to whom the oath was
10        administered, after having been duly sworn
11        by me upon the authority of R.S. 37:2554,
12        did testify as hereinbefore set forth in
13        the foregoing pages; that the testimony was
14        reported by me in the stenotype reporting
15        method, was transcribed by me or under my
16        personal direction and supervision, and is
17        a true and correct transcript, to the best
18        of my ability and understanding; that I am
19        not related to counsel or the parties
20        herein, nor am I interested in the outcome
21        of this matter.
22
23                         _____
24                         ROBIN REYNOLDS, CCR
25                         LICENSE NO. 94019
```

[Official Seal: ROBIN L. REYNOLDS, Certified Court Reporter, in and for the State of Louisiana, Certificate Number 94019, Certificate expires 12-31-10]