UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JENNIFER M. MEDLEY | * | CIVIL ACTION |
| | * | NO. 09-4570 |
| | * | |
| versus | * | SECTION J |
| | * | JUDGE BARBIER |
| | * | |
| STATE OF LOUISIANA, | * | DIVISION 3 |
| DEPARTMENT OF JUSTICE | * | MAGISTRATE KNOWLES |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **STATEMENT OF CONTESTED MATERIAL FACTS**

1. Medley has had significant and sustained success as a trial attorney, has never lost a civil rights case and has earned the respect both of her colleagues, Judges and those attorneys she has opposed in court. She had a great and productive working relationship with her client, the Office of Risk Management, her adjusters (particularly the civil rights adjuster, Lynda Colomb) and various agency personnel whom she represented.[1]

2. When Medley interviewed for her job, her last annual salary was $40,000.00; she had requested a starting salary with the AG's office of $45,000.00.[2]

3. White attorneys, both male and female were subsequently brought in at higher salaries or were quickly given raises, in addition to the annual raise received by all attorneys.[3]

---

[1] *See* Plaintiff's *verified* Complaint, ¶3 (Rec. Doc. 1); *see also* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶5 and Exhibit 2, Affidavit of Carmella Parker, ¶8: "Jennifer Medley, to my knowledge, enjoyed working on…[Civil Rights] cases and was quite successful and did not have any unfavorable results from the state."

[2] *See* Plaintiff's *verified* Complaint, ¶6 (Rec. Doc. 1).

[3] *See* Plaintiff's *verified* Complaint, ¶6 (Rec. Doc. 1).

4. Medley began raising questions and complaining publicly of unfair pay differentials between males and females, whites and blacks in early 2008.[4]

5. Medley first attempted to resolve this matter through her chain of command.[5]

6. Medley eventually sent a memorandum through her chain of command, which directed the attention of Mr. Rob Harroun to pay disparities based in race and gender.[6]

7. Medley requested salary increases on several bases: first, for cost of living; second, to offset preexisting gender and race pay disparities, and third, in return for her excellent performance.[7]

8. The Louisiana Department of Justice happens to be, at this point, formally and officially wedded to an entirely subjective personnel evaluation scheme in which the chief deciders were, almost without exception, older white males.[8]

9. Among the attorneys whose salary underscored the gender and race pay disparities is Mr. Matthew Derbes, a white male, who graduated on the same date as Medley in May 2002.

---

[4] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶3.

[5] *See* Plaintiff's *verified* Complaint, ¶7 (Rec. Doc. 1).

[6] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶3; *see also*, Exhibit 3, Memorandum to Rob Harroun.

[7] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶4; *see also*, Exhibit 4, Letter of Recommendation by Stephen Babin dated June 20, 2008, Letter of Recommendation by Lynda Colomb, the Civil Rights Adjuster, dated July 18, 2008, Letter by Steve Babin to YLD Scholarship Program dated June 7, 2007, and Letter by Judge Cornelius Regan Cong DiMattia dated June 20, 2008. Despite these letters of recommendation extolling Medley's professional competence and demeanor, the AG's office now asserts that it somehow doubted Medley's ability to perform her job. *See* Memorandum in Support of Motion for Summary Judgment (Rec. Doc. 96-1), p.16.

[8] *See* Exhibit 5, Deposition of Neomie Savoy taken September 23, 2010, p.38 (ll.6-21); *see also* Exhibit 6, Deposition of Gayle Truly taken September 24, 2010, p.36 (ll.14-15, 21-25), p.37 (ll.1-10).

Derbes was admitted to the Bar on the same day in October 2002 as Medley, was hired by the AG's office on October 20, 2006, but was given four increases, in addition to the annual pay increases received by all attorneys, the first from $50,000.08 on July 1, 2007 to the last at $72,080.06 on April 7, 2008; these four pay increases, which amounted to $22,079.98 came in a period of only eight months and were made in addition to the annual increases that all AG employees received.[9]

10. Despite the announced budgetary concern, Ms. Raquelle Babeaux-Phillips, a white female in the New Orleans office, and Mr. John Sudderth, a white male in the New Orleans office, requested and were given salary increases outside of those given annually.[10]

11. Not a single Assistant Attorney General was ever permitted to meet with the AG personally on a pay issue but, instead, was told to meet with intermediaries such as John Sinquefield and Rob Harroun.[11]

12. When Medley looked into the actual pay situation at the Louisiana Department of Justice, using civil service pay data, she was shocked to discover the extent to which it was stratified according to race and gender.  Salaries for attorneys working for the Louisiana Department of Justice, as revealed by records kept in the ordinary course of business, revealed the following:[12]

---

[9] *See* Exhibit 7, Recommendations for Salary Change for Matthew B. Derbes.

[10] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶5.

[11] *See* Exhibit 6, Deposition of Gayle Truly taken September 24, 2010, p.45 (ll.5-16).

[12] *See* Exhibit 8, *in globo* Employee Reports from State Civil Service for December 2006, August 2009, and January 2010; *see also* Exhibit 9, *in globo* Spreadsheet of Louisiana AAGs for the respective years and Exhibit 1, Sworn Declaration of Jennifer Medley, ¶8.  The spreadsheet is simply a compilation of the salaries listed in the Civil Service Employee Reports sorted by race and gender.

| December 31, 2006 | White Males   | $65,428.00 |
|                   | Black Males   | $57,432.55 |
|                   | White Females | $57,997.53 |
|                   | Black Females | $49,670.51 |
| August 14, 2009   | White Males   | $69,264.05 |
|                   | Black Males   | $65,849.77 |
|                   | White Females | $63,293.36 |
|                   | Black Females | $57,091.13 |
| January 31, 2010  | White Males   | $72,157.44 |
|                   | Black Males   | $64,485.00 |
|                   | White Females | $64,073.10 |
|                   | Black Females | $56,248.03 |

13. Jennifer Medley discovered that these pay discrepancies, running along the lines of race and gender, went back at least as far as the Richard Ieyoub administration.[13] Indeed, women *and* minorities had continuously, if intermittently, complained ever since then.[14]

14. The AG received a letter from Medley's attorney placing him on notice of Medley's claims of discrimination and disparate treatment; this letter was copied to and received by Paul Deal on August 5, 2008.[15] Deal confronted Medley, asking her why she was so upset over a differential of only "a couple of thousand dollars."[16]

15. In April 2008, Medley requested information from other attorneys in her office concerning a specific legal question. This was a practice quite common to the office and was

---

[13] *See* Exhibit 6, Deposition of Gayle Truly taken September 24, 2010, p.8 (ll.12-25), p.9 (ll.1-10). Richard Ieyoub was the AG in office before Charles Foti, the current AG's predecessor.

[14] *See* Exhibit 6, Deposition of Gayle Truly taken September 24, 2010, p.15 (ll.18-22).

[15] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶9.

[16] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶9.

encouraged.[17]  Her superior, Paul Deal, replied to Medley, copying all the attorneys she had asked, that she should "look it up" herself.[18]  Deal later walked into Medley's office to chew her out, publically, about the email she had written requesting legal information.  The conversation that ensued was loud and done in Medley's office with the door open:  the other attorneys in the office could clearly hear Paul Deal, (White, male) tell Jennifer Medley, (a younger African-American female attorney), that she was "crazy."[19]

16. The AG tasked his special assistant/investigator, a young woman whose salary the AG had doubled to $102,000, to snoop through Jenifer Medley's work emails and bring to his attention things that Medley might have been doing wrong, or things which Medley might be criticized for. [20]  In her deposition, Investigator Carter admitted that she had never been asked to do any such thing before to any attorney working for the State.[21]

17. On September 11, 2008, Mr. Paul Deal, Medley's immediate supervisor, made a comment he had never made before in Medley's hearing, that "all black females want more money for less work."[22]

---

[17] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶6.

[18] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶7.

[19] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶7.

[20] *See* Exhibit 15, Deposition of Ms. Sha Carter taken April 16, 2010, p.10 (ll.16-21).  Sha Carter had worked with the AG since 1997, and, when the AG came into office, she was hired at double her previous salary.  *Id.* at pp.8 (ll.23-25)-9 (l.1), p.19 (ll.17-22).  An investigator receiving pay in excess of $100,000 per year is "unheard of" in the AG's office.  *See* Exhibit 6, Deposition of Gayle Truly taken September 24, 2010, p.42 (ll.22-25), p.43 (ll.1-18).

[21] *See* Exhibit 15, Deposition of Ms. Sha Carter taken April 16, 2010, p.16 (ll.11-19).

[22] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶10.

18. This comment was pointedly directed at Medley following her complaints about the discriminatory pay differentials between whites and blacks and males and females in the office.[23]

19. Deal generated a mass email asking AG employees to put in a request for personal printers before the budget cuts went into effect.[24] The only two individuals who failed to receive printers were Medley and Sharry Scott, a white female, both of whom had very vocal about the discriminatory pay disparities between male and female attorneys working for the Louisiana Department of Justice.[25]

20. When questioned, Deal responded that he did not recall Medley requesting the printer and that they had been distributed based on seniority.[26] However, a secretary (Angela Sapia) and an attorney (Don Paul Landry), hired after the printers were ordered, received printers.[27]

21. From November 2008 until early May 2009, when Deal was terminated by the Attorney General, Deal began passing Medley's office several times a day, every day.[28] Deal even went so far as to stick his head in Medley's office each time he passed by.[29]

---

[23] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶10.

[24] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶11.

[25] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶11.

[26] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶11.

[27] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶11.

[28] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶13; *see also* Exhibit 12, Deposition of Sharry Scott taken September 23, 2010, p.38 (ll.21-25), p.39 (ll.1-3).

[29] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶13.

22. Medley had been requesting to get her civil rights cases back a year before she was constructively discharged.[30] The decision not to return Medley's civil rights cases was an ongoing one which came at the recommendation of Paul Deal ***after*** he had ignored her request for a printer and begun subjecting her to heightened scrutiny, actions that Medley complained about to Mr. Babin.[31]

23. The retaliation she experienced following her complaints took its toll on Medley's mental and physical health, placed undue stress on her, and negatively affected her office morale.[32]

24. At approximately the same time, the Attorney General involuntarily transferred Carmella Parker.[33]

25. At last, on the advice of her treating physician, Jennifer Medley reluctantly resigned her position of Assistant Attorney General with the Louisiana Department of Justice.[34]

26. Medley was uniformly praised by the adjusters she has worked for in the Office of Risk Management.[35]

27. She made sure that her supervisors knew this when she requested consideration for a raise.[36]

---

[30] *See* Exhibit 14, Deposition of Stephen Babin taken September 23, 2010, p.16 (ll.24-25), p.17 (ll.1-6, 18-25), p.18 (ll.1-4).

[31] *See* Exhibit 14, Deposition of Stephen Babin taken September 23, 2010, p.26 (ll.11-25), p.27 (ll.9-24).

[32] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶18.

[33] *See* Exhibit 2, Affidavit of Carmella Parker, ¶18.

[34] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶18.

[35] *See* Exhibit 18, Office of Risk Management Contract Evaluations. Each one of these evaluations ranks Medley's performance at satisfactory or above.

[36] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶5.

28. It is the "policy, but not the practice" to perform annual performance reviews; evaluations have not been performed "since Richard Ieyoub's time."[37]

29. Instead, merit determinations are made arbitrarily and entirely subjectively by office and section chiefs.[38]

30. The Attorney General operates with complete discretion in regard to hiring and compensation; pay levels have no connection with job performance, since performance evaluations of assistant attorneys general are never performed.[39]

31. Making complaints of any kind can be a fearful thing for an attorney who works solely at the pleasure of the Attorney General.[40]

32. The atmosphere at the AG's office was not conducive to making criticisms and described the reaction given to those who vocalized criticisms of the AG's procedures and administration.[41]

33. The AG's office was openly defensive about individuals, particularly legislators, coming into the office and criticizing the administration.[42]

---

[37] *See* Exhibit 16, Deposition of Renee Fontenot Free taken April 16, 2010, p.20 (l.13); *see also* Exhibit 5, Deposition of Neomie Savoy taken September 23, 2010, p.31 (ll.15-16).

[38] *See* Exhibit 11, Deposition of Robert Harroun taken April 16, 2010, p.28 (ll.6-9); *see also* Exhibit 12, Deposition of Sharry Scott taken September 23, 2010, p.10 (ll.15-25), p.11 (ll.1-2).

[39] *See* Exhibit 1, Sworn Declaration of Jennifer Medley, ¶2.

[40] *See* Exhibit 12, Deposition of Sharry Scott taken September 23, 2010, p.35 (ll.12-22), p.36 (ll.8-15), p.60 (ll.2-5).

[41] *See* Exhibit  Deposition of Gayle Truly taken September 24, 2010, p.25 (ll.9-24), p.44 (ll.20-23).

[42] *See* Exhibit 6, Deposition of Gayle Truly taken September 24, 2010, p.27 (ll.11-17).

Respectfully submitted,
LAW OFFICE OF DALE EDWARD WILLIAMS

/s/Dale E. Williams
Dale E. Williams, Bar #18709
212 Park Place
Covington, Louisiana 70433
Telephone: (985) 898-6368
Facsimile:  (985) 892-2640
mailto:dale@daleslaw.com

James M. Williams, Bar #26141
Gauthier, Houghtaling, & Williams, L.L.P
3500 N. Hullen Street
Metairie, Louisiana 70002
Telephone: (504) 456-8600

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/Dale E. Williams