# AFFIDAVIT

STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE

BEFORE ME, Notary Public, personally came and appeared:

## CARMELLA PARKER

a resident of the full age of majority of Carville, Louisiana, who upon being duly sworn did depose and state the following:

-On October 20, 2003, I was hired by named defendant under the Ieyoub administration to work in the New Orleans satellite office as an Assistant Attorney General.

-My starting rate of pay was only $32,000.00. My ending rate of pay, after six (6) years of exemplary employment, earning a Masters of Business Administration, and being employed longer than half of the attorneys on staff of the New Orleans office, was only $52,000.00.

-While working at the DOJ, I learned that there were indeed issues with pay as it relates to race and gender and to my surprise, I was being paid the least in the office. However, due to our non-civil service status and the work climate--that one does not bring up such issues for fear of firing--, I simply respectfully requested a raise. To which, Mr. Babin responded that I did not need additional pay because my husband had a job and asked me, "doesn't your husband work?".

-After Hurricane Katrina, Jennifer Medley as well as myself began to discuss our race and gender as it related to salaries with Stephen Babin and Paul Deal. Mr. Deal responded that I had simply failed to negotiate better pay. Mr. Babin and Mr. Deal indicated that it was not up to them to give salary increases. However, given our concerns, Mr. Deal had informed us that he would meet with Attorney General Foti about the issue, as they would have Saturday morning breakfast on a regular basis.

-Mr. Deal informed Jennifer Medley and myself that AG Foti wanted to know who in the office was complaining and that Mr. Deal asked us if it was "alright" to reveal who was making such inquires. Mr. Deal also indicated that he could not predict what the outcome would be once AG Foti knew who was reporting their concerns. Mr. Deal stated that the outcome could include being terminated from employment. This is precisely why he thought it was best to approach him on Saturday as opposed to during the work week. After this explanation, Jennifer Medley was extremely worried that she would be fired. I informed Mr. Deal that it was alright to reveal my name even if the consequence was termination, because I firmly held to the belief that there were many people who paved the road for me, as an African American woman, to achieve what I achieved and I had to think of those individuals that would come after me. Jennifer Medley believed that as well, but she, at that time, squarely believed that she would be fired.

-I recall being flabbergasted from Mr. Deal's told that if I brought up the issues of race and gender in pay that I could be fired that I told Mr. Babin, who was also aware of the on-going talks, that if that was truly the case, that I would report "my firing" to an international media outlet that was "up the street from our office." I honestly could not fathom that for reporting what I perceived as "discriminatory" actions to my superiors and asking for them to address the issue, especially since I worked for the *Department of Justice*, that I would be terminated.

-As it relates to assigning Civil Rights cases, I know that AAG Phyllis Glazer was repeatedly taking cases off of Ms. Phyllis Kieffer's desk, prior to Mr. Babin reviewing them and assigning the cases to the attorneys, was assigning the cases to herself. This method that AAG Glazer resulted in a not so pleasant exchange between Ms. Kieffer, who was Mr. Babin's secretary, and Ms. Glazer. Ms. Glazer was informed not to take the cases from off of her desk again.

-I am aware that Jennifer Medley at the time of her being removed from Civil Rights cases she was going through a divorce. Jennifer Medley, to my knowledge, enjoyed working on these types of cases and was quite successful and did not have any unfavorable results from the state. I am aware that the Risk Adjuster Lynda Colombe and Jennifer Medley had a very good working relationship.

-I am also aware of the fact that at one point in time the lowest paid attorneys in the New Orleans office were myself, Jennifer Medley, and Pauline Feist—all three black female attorneys. I am also aware of the fact that Jennifer Medley had already filed her EEOC charge against the Attorney General's office when the AG's office began to hire other black attorneys in the New Orleans office at the same or higher rates than Jennifer Medley.

-On April 11, 2007, I met with Stephen Babin and Paul Deal regarding pay disparates and other issues. Attached is a copy of my email as a follow up to my meeting with Mr. Babin and Mr. Deal as Exhibit "A".

-In late 2008, I began to suspect that the current AG was again paying me far less than AG employees similarly situated to me because I am a black female.

-Commencing in mid 2008, I began approaching my supervisors to inquire as to whether or not and why I was being paid far less than my counterparts because I am a black female. Following my transfer to the Baton Rouge office, I was still paid the least in the General Liability section of the Baton Rouge office.

-I inquired of Section Chief Peter Giarrusso, on several occasions as to why I, as a black female, was being paid less than other non-black and female counterparts.

-Mr. Giarrusso, who by all counts is a fair man and was sympathetic to the situation, advised Petitioner that in the Department's defense, that I "could have negotiated better pay".

-Throughout my discussions with each of the supervisors, I was repeatedly reminded that I, "serve at the pleasure of the AG" and that I could be terminated at any time. In fact, Mr. Deal had stated that if I continued to bring up the issue of equal pay, I could be fired and would likely not be hired by other law firms. In other words, I would be deliberately black-balled.

-On July 25, 2008, I met with three (3) high ranking Attorney General Seniors. I met with Houston Penn, Robb Harroun, and Renee Free. During that meeting, I specifically advised that I was being discriminated in my pay on account of race and gender and, further, that I had been previously threatened and intimidated by my supervisors when I began questioning the discriminatory pay practices of the AG's office. I additionally advised them that under a previous Administration, black attorneys were considered lower quality and, further, that all of the attorneys in the New Orleans office hired after me were paid more, in spite of my qualifications.

-I additionally submitted a follow up to the July 25, 2008 meeting with a written complaint regarding unequal pay on account of race and gender to Mr. Giarrusso, Mr. Houston Penn, Mr. Rob Harroun, Ms. Renee Free, Mr. Siquefield, and Attorney General Caldwell. A copy of same is attached as Exhibit "B". Nothing has even been done to address my complaints.

-Following my complaints, I was again subjected to repeated threats regarding termination; I was involuntarily transferred requiring a round trip drive of several hours every day from my residence. I now believe that I was subjected to retaliatory harassment and reprisal, forced to drive, on account of my complaints of unlawful discrimination.

Following the unabated situation in my working environment, I was left with no other alternative but to resign and was constructively discharged on October 22, 2009.

-This Affidavit is made upon my personal knowledge, information, and belief.

_[signature]_

SWORN TO AND SUBSCRIBED before me, Notary Public, this 1st day of October, 2010.

_[signature]_
Angela L. Easty
#65506