```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3

 4   JENNIFER M. MEDLEY              CIVIL ACTION
                                    NO. 09-4570
 5        VERSUS                    SECTION J
                                    JUDGE BARBIER
 6   STATE OF LOUISIANA,            DIVISION 3
     DEPARTMENT OF JUSTICE          MAGISTRATE KNOWLES
 7

 8

 9

10

11                     ORIGINAL

12

13

14

15          The deposition of ROBERT E. HARROUN, III,

16   taken in the above-entitled cause, before Jan

17   DiCicco, a Certified Court Reporter, given at the

18   Law Offices of Shows, Cali, Berthelot & Walsh, LLP,

19   628 St. Louis Street, Baton Rouge, Louisiana, 70802,

20   on the 16th day of April, 2010.

21

22

23

24

25
```

APPEARANCES:

REPRESENTING JENNIFER M. MEDLEY:

      LAW OFFICES OF DALE EDWARD WILLIAMS
      BY:  DALE E. WILLIAMS, ESQ.
      212 Park Place
      Covington, Louisiana  70433

REPRESENTING STATE OF LOUISIANA, DEPARTMENT OF
JUSTICE:

      SHOWS, CALI, BERTHELOT & WALSH, LLP
      BY:  E. WADE SHOWS, ESQ.
      628 St. Louis Street
      Baton Rouge, Louisiana  70802

ALSO PRESENT:

      JENNIFER M. MEDLEY

REPORTED BY:

      JAN DICICCO
      CERTIFIED COURT REPORTER

1                    I N D E X

2

3    APPEARANCES................................ 2

4    INDEX..................................... 3

5    STIPULATION............................... 4

6    REPORTER'S CERTIFICATE.................... 47

7    WITNESS'S CERTIFICATE.................... 48

8

9    EXAMINATION

10   BY MR. WILLIAMS........................... 5

11

12   EXHIBITS

13   Harroun 1................................ 38

14   Harroun 2................................ 40

15

16

17

18

19

20

21

22

23

24

25

STIPULATION

1

2          It is stipulated and agreed by and between

3   counsel for the parties hereto that this deposition

4   is hereby being taken pursuant to the Federal Rules

5   of Civil Procedure, for all purposes, in accordance

6   with law;

7          That the formalities, including those of

8   sealing, certification and filing, are specifically

9   waived;

10          That the formality of signing is

11   specifically not waived;

12          That all objections, save those as to the

13   form of the question and the responsiveness of the

14   answer, are hereby reserved until such time as this

15   deposition or any part thereof, may be used or

16   sought to be used in evidence.

17

18          JAN DICICCO, Certified Court Reporter,

19   officiated in administering the oath to the witness.

20

21          ROBERT E. HARROUN, III

22   State of Louisiana, Department of Justice, P. O. Box

23   94005, Baton Rouge, Louisiana, 70804-9005, after

24   having been first duly sworn by the court reporter,

25   did testify as follows:

```
 1   BY MR. WILLIAMS:

 2       Q.   Mr. Harroun?

 3       A.   Uh-huh.

 4       Q.   How long have you worked for the State

 5   Attorney General's office?

 6       A.   Latest stint since 1992 to present.

 7       Q.   Okay.  And how many years total have you

 8   spent working for the Attorney General's office?

 9       A.   '73 to '76, so that would be '92 to --

10   twenty-two.

11       Q.   Okay.

12       A.   Twenty-three.

13       Q.   Okay.  I don't know if we have a trial

14   date.  Yet.  I think we do.  Are you planning to

15   retire in the next few months?

16       A.   Not that I'm aware of, no.

17       Q.   Okay.

18       A.   Do you know something I don't?

19       Q.   No.  I was just wondering if you were going

20   to be employed, having twenty-two years, whether

21   you're still going to be employed by the Attorney

22   General when the trial came.  And could you describe

23   for me your duties in the Attorney General's office

24   as it was in, say, the year 2008.

25       A.   Well, I was then the deputy Attorney
```

1    General in charge of the administration and

2    operations of the litigation division.  At that

3    time, and now, I guess, you know, I oversaw the tort

4    defense work for the state.  And determined with the

5    counsel of the first assistant and the Attorney

6    General the various case allotments.

7        Q.    Okay.  You say you're in charge of

8    administration and operations of the litigation

9    division.

10       A.    Uh-huh.

11       Q.    Now, the litigation division got to be

12   pretty big in the Attorney General's office, isn't

13   it?

14       A.    Yes.  It's about a hundred ninety

15   employees.

16       Q.    Okay.  Does that include support staff as

17   well as attorneys?

18       A.    Yes.  That's an approximation.

19       Q.    You probably heard me asking a lot of

20   questions to Miss Renee Free about administrative

21   matters.

22       A.    Uh-huh.

23       Q.    I expect some of them might be better

24   directed to you.  I noticed you were here for Miss

25   Free's deposition.

```
 1        A.    Uh-huh.
 2        Q.    And you heard the colloquy between the
 3   Attorney General and Senator Carter Peterson.
 4        A.    Uh-huh.
 5        Q.    Okay.
 6              MR. SHOWS:
 7                    Rob, you got to say yes or no.
 8   BY MR. WILLIAMS:
 9        Q.    We heard the Attorney General, at least to
10   my recollection, we heard the Attorney General
11   speaking of an open door policy.
12        A.    Yes.
13        Q.    Could you tell me about that policy.
14        A.    By open door policy, I've never talked to
15   him about that.  You know, to me that would be
16   accessibility.
17        Q.    Okay.  Do you know if Miss Jennifer Medley
18   ever requested a meeting with the Attorney General
19   about her pay problems?
20        A.    Yes.  She did in a letter, I believe.
21        Q.    Was this letter addressed -- did it come to
22   your attention?
23        A.    I saw a copy of it.
24        Q.    Was Miss Medley able to talk directly to
25   the Attorney General?
```

1      A.    I don't know.

2      Q.    Did Miss Medley ever ask you to arrange

3    such a meeting with the Attorney General?

4      A.    I don't recall.  She may have.

5      Q.    Is there any reason that you know of why

6    such a meeting could not have been arranged with

7    Mr. Caldwell?

8      A.    I know of no reason.

9      Q.    Would you have been the one responsible for

10   conducting an investigation into the two EEOC

11   complaints that were referenced in that colloquy

12   that we heard earlier?

13     A.    Okay.  What was the first part of your

14   question?  Would I be what?

15     Q.    Would you be familiar, I guess is what I'm

16   asking, or would you have been involved with an

17   investigation of the EEOC complaints that we heard

18   about in that colloquy?

19     A.    Yes, I would have brought this to the

20   attention of the Attorney General and the first

21   assistant and then would have advised David Sanders

22   and Bridget Denicola to look into that matter.

23     Q.    Okay.  What is Mr. Sanders -- could you

24   spell his name, please.

25     A.    David S-A-N-D-E-R-S.

1    Q.    Sanders.

2    A.    Sanders.

3    Q.    And Miss Denicola?

4    A.    Bridget, B-R-I-D-G-E-T, D-E-N-I-C-O-L-A.

5    Q.    D-E-N --

6    A.    I-C-O-L-A.

7    Q.    Denicola?

8    A.    Denicola.

9    Q.    Okay.  What are their jobs, positions?

10   A.    David Sanders is the head of the special

11   litigation section.  And Bridget is an assistant

12   Attorney General in that section also.

13   Q.    What does the special litigation section do

14   besides special litigation?  And what is special

15   litigation, I guess is my question.

16   A.    They represent disciplinary counsel or any

17   judge that would be sued.  Those cases go to them.

18   They also would look into any employment law issues

19   or questions that we might have.

20   Q.    Well, was any investigation into the EEOC

21   complaints done to your knowledge?

22   A.    Yes.

23   Q.    And who did those investigations?

24   A.    David Sanders and Bridget Denicola.

25   Q.    Was there a report that was rendered in

1    association with that investigation?

2         A.   No.

3         Q.   Was the report verbal in nature?  Oral?

4         A.   No.  There was no report.  Depends on what

5    your definition of a report is.

6         Q.   I guess, I'm thinking of a report as

7    something I can read either online or, you know, in

8    hard copy.

9         A.   The answer to the EEOC complaint would be

10   the report, I guess, if you want to call it that.

11        Q.   Okay.  Was there anything other than the

12   answer to the EEOC complaint that you can recall as

13   being part of the report?

14        A.   No.  Other than exhibits that were attached

15   to the report.

16        Q.   Okay.  Fair enough.  Was there ever any

17   investigation of the allegation that was mentioned

18   in that colloquy about estrogen alley?  Did anybody

19   ever look into that?

20        A.   Yes.

21        Q.   Who followed up on that?

22        A.   Steve Babin.

23        Q.   And who is Mr. Babin?

24        A.   He is the office chief of the New Orleans

25   office.

1    Q.    And was he office chief at the time?

2    A.    At the time of that -- I don't know.  I

3  don't know.  I don't know if Mr. Deal was still

4  there at that time or --

5    Q.    Had Mr. Deal already left when the

6  investigation was started?

7    A.    Had he already left, then Steve Babin would

8  have been the office chief.

9    Q.    When the investigation into estrogen alley

10  took place, was Mr. Deal already gone?

11    A.    I'm not sure.  I can't -- I don't know.

12    Q.    Was any written report rendered as a result

13  of that investigation --

14    A.    No.

15    Q.    -- into estrogen alley?

16    A.    No.

17    Q.    Was any action taken as a result of the

18  investigation into estrogen alley?

19    A.    Any action as a result of an investigation?

20    Q.    The investigation into the estrogen alley

21  incident.

22    A.    Steve counseled the woman who had used that

23  term.

24    Q.    Who was the woman who used the term?

25    A.    Kathy Logan.

1      Q.   Did any man ever use the word estrogen

2  alley, according to your investigation?

3      A.   I don't know.  Nothing was reported to me

4  other than Kathy Logan had originated the word, or

5  phrase.

6      Q.   Was there ever any investigation into

7  Mr. Paul Deal and of his handling of gender

8  relations, for want of a better word, I suppose, in

9  the New Orleans office?

10     A.   No.  Not that I'm aware of.

11     Q.   If there was an investigation in a

12 litigation office, would you have normally been

13 aware of it?

14     A.   Normally.

15     Q.   Are you aware of any investigation into the

16 pay structure of the litigation department as in

17 terms of what people are being paid and also what

18 their race and their gender and possibly ethnicity

19 are?

20     A.   Am I aware of an ongoing investigation?

21     Q.   No.  Are you aware -- I believe we heard

22 some reference to such an investigation in the

23 colloquy.  I believe that Senator Carter Peterson

24 made a request that such an investigation be done.

25 My question is, are you aware of any such

1    investigation having been performed?

2        A.    Not an investigation, no.

3        Q.    Well, was any list or information put

4    together in response to that, I guess, might have

5    been a request for information?

6        A.    We began a, I guess you would call it a

7    salary survey within the litigation division, but

8    Mr. Caldwell wanted a complete investigation or

9    survey done department wide, and we were in the

10   process of doing that when he, when we found out

11   about our budget cut, which took everything off the

12   board.

13       Q.    Who was tasked -- well, was anybody ever

14   tasked with doing that report?

15       A.    David Sanders and Bridget Denicola.

16       Q.    Did they identify any resources that they

17   would require to conduct this?

18       A.    I'm sure they did.

19       Q.    Are you aware of any memorandum or other

20   communication dealing with the reasons that this

21   study never happened?

22       A.    Study never happened?

23       Q.    Well, I'm assuming that it has never

24   happened, is that right?

25       A.    I can't recall a memorandum going out.  I

1   don't know why the study was not complete.

2       Q.   If I wanted to find out what budget

3   constraints specifically, you know, made it

4   impossible, where would I look?  I mean --

5       A.   That would be Renee Free's division, the

6   administration division.

7       Q.   Well, you were here for Miss Free's

8   testimony.  Did you ever see any documents relating

9   to why we can't go forward with this salary

10  investigation?

11      A.   No.

12      Q.   Did anybody ever talk about it with you?

13      A.   Yes.

14      Q.   Okay.  Who was that?

15      A.   Renee Free, John Sinquefield,

16  S-I-N-Q-U-E-F-I-E-L-D.

17      Q.   Who is John Sinquefield?

18      A.   At that time he was first assistant

19  Attorney General.

20      Q.   He has since been replaced?

21      A.   He is the now senior counsel to the

22  Attorney General and Trey Philips is the first

23  assistant Attorney General.

24      Q.   What did Miss Free tell you about having to

25  cancel this --

1     A.   Well, that we had got word that there would

2  be a massive budget cut to the Attorney General's

3  office and that would be implemented shortly.  And

4  that because of that and the probability of

5  lay-offs, that salary increases at that point in

6  time were not an option.

7     Q.   How are decisions on salary made in the

8  Attorney General's office?

9     A.   Well, in my division, in litigation

10 division, when we are informed that there could

11 possibly be money for a salary increase, I make it

12 known to my office and section chiefs and my staff

13 in the litigation division, administration.

14    Q.   Okay.  And is it up to those subordinates

15 to determine how the money is distributed?

16    A.   No.  It's up to the Attorney General on how

17 --

18    Q.   Does he make, does he review each

19 individual attorney and make a decision or are there

20 recommendations made?

21    A.   I don't know if he reviews each attorney.

22 Most of the increases are generally across the

23 board.

24    Q.   In other words, if there is a ten thousand

25 dollar a month to be distributed among ten

1   attorneys, is it usually the practice of giving each
2   attorney a thousand dollars?
3       A.   No.  It's generally a percentage.  There is
4   no pile of money allocated.
5       Q.   I see.  So if it worked out that there was
6   enough money for, say, a four percent across the
7   board pay raise, that is what would happen?
8       A.   Correct.
9       Q.   I remember the Attorney General mentioning
10  in the colloquy that when he came to take up the
11  post of Attorney General that he only had to hire
12  something like sixty people.  Do you recall that
13  being said?  Sixty or seventy.  Something like
14  that.  Fairly small number.
15      A.   I don't really recall, but, you know.
16      Q.   Okay.  I was wondering if you could tell me
17  whether that number that he mentioned, and you
18  remember the comment when --
19      A.   No.  I really didn't catch it, but.
20      Q.   Well, then, my question is, when the
21  Attorney General came in, I believe you were working
22  both before and after the new Attorney General came
23  in.
24      A.   Yes.
25      Q.   Was there a large influx of new litigators?

1      A.    Not that I recall, no.

2      Q.    Okay.

3      A.    Not in litigation.

4      Q.    Okay.  Or even a large influx of support

5  staff.

6      A.    No.  I wouldn't know what, who all was

7  hired and where.

8      Q.    When the Attorney General came into office,

9  are you as the, I guess the individual responsible

10 for administration in the litigation section, are

11 you aware of any wholesale redistribution of pay or

12 was pay pretty much left alone?

13     A.    Pay was pretty much left alone.

14     Q.    In other words, they didn't say, okay,

15 we've got this much total money in payroll.  Now

16 we're going to redistribute it.  Nothing like that

17 happened?

18     A.    Not to my knowledge.

19     Q.    Okay.  In your years with the Attorney

20 General's office in the Department of Justice, have

21 you ever been involved or ever heard complaints

22 about pay disparity based on gender and race other

23 than, obviously, the one here?

24     A.    No.

25     Q.    When Miss Medley -- of course you're aware

1    of Miss Medley's complaint.

2         A.    Yes.

3         Q.    I believe you testified she talked to you

4    about it.   We will get into that.   But before Miss

5    Medley came to you with these issues, was there any

6    other individual whose name you can recall that came

7    to you with similar issues?

8         A.    I believe Carmella Parker.

9         Q.    Okay.   And she worked in the Baton Rouge

10   office?

11        A.    She was originally in the New Orleans

12   office, I think, but when Katrina hit, she was moved

13   to Baton Rouge.

14        Q.    And what happened as a result -- did you

15   talk to Miss Parker about her complaints?

16        A.    They were -- I wouldn't characterize them

17   as complaints.   She just felt that she warranted a

18   raise.

19        Q.    Was it, did she come with -- was part of

20   her issue that she was not being paid as much as

21   similarly qualified males?

22        A.    I can't recall what the issue was, but I

23   just remember her asking for an increase in salary.

24        Q.    She filed a lawsuit against the Attorney

25   General's office, is that correct?

```
1        A.    Correct.

2        Q.    And that was tried in Baton Rouge?

3        A.    I'm sorry?

4        Q.    And that case was settled, was it not?

5        A.    No.

6        Q.    It was not settled?

7        A.    No.

8        Q.    Do you recall the attorney that represented

9   her?

10       A.    I want to say Jill Craft.  And it was not

11  settled as far as I know. · I'm not aware of it being

12  settled.

13       Q.    Are you aware of it going to trial?

14       A.    No.

15       Q.    Were the allegations by Miss Parker limited

16  to pay issues?

17       A.    I can't recall.

18       Q.    Did you ever talk to Miss Carmella Parker

19  about her problems?

20       A.    Yes.

21       Q.    What do you recall her saying about her

22  problems?

23       A.    That she would like an increase in salary.

24       Q.    And she went to an attorney for that?

25       A.    I don't know.
```

1    Q.    She went to Miss Jill Craft for that?

2    A.    I don't know why she went to Jill Craft.

3  You asked me if I talked to her about it, and very

4  briefly, she had submitted information and we took

5  that request under advisement.

6    Q.    Well, I'm only suggesting to you, sir, that

7  normally when someone goes to their boss asking for

8  a raise and doesn't get it, they don't go to an

9  attorney unless there is some claimed infraction of

10  the law.

11          MR. SHOWS:

12              I'm going to object to the form of the

13  question.  It's argumentative.  He's already said

14  what he knows about it.

15  BY MR. WILLIAMS:

16    Q.    I'm just suggesting to you, sir, that as an

17  attorney, I was wondering if the way I rephrased it

18  might have prompted your memory as to what issue she

19  raised through her lawyer.

20    A.    I don't know.  I can't recall.

21    Q.    All right.  Was there any other reason

22  besides budgetary problems that the salary report

23  was not actually rendered?

24    A.    The only reason that was related to me was

25  massive budget cuts.

1      Q.   These requests that Senator Carter Peterson

2 made back in April of 2008, do you know if any of

3 those requests for information were responded to by

4 the Attorney General's office?

5      A.   I wouldn't know that either.

6      Q.   Who would know that?

7      A.   The Attorney General.

8      Q.   Okay.  Can you think of anybody else other

9 than the Attorney General that would be able to

10 answer that question?

11     A.   Well, Renee Free, but.

12     Q.   She apparently wasn't able to.

13     A.   I was not at the meeting.  I don't --

14 nothing was asked of me.

15     Q.   Okay.  Do you happen to know whether the

16 Department of Justice has ever received money from

17 the legislature for attorney retention purposes?

18     A.   No, I'm not familiar with that.

19     Q.   Okay.  Is that something that the Attorney

20 General would be familiar with?  You don't know?

21     A.   I don't know.

22     Q.   Okay.  Are you responsible for the

23 enforcement of discipline and ethical standards by

24 the attorneys who work for the State?

25     A.   No.

1    Q.    Who is?

2    A.    Enforcement of disciplinary?  I would think

3  that would be Charles Plattsmier.

4    Q.    Well, I mean, within your organization.  If

5  there are allegations, information is discovered

6  that suggests that breach of ethical requirements or

7  ethical norms has occurred, would that come to your

8  attention in the course of business?

9    A.    It could or it couldn't.  If it did, I

10  would refer that to Bridget, David Sanders and

11  Bridget Denicola.

12    Q.    Were there ever any such issues that had to

13  do with Miss Jennifer Medley while she was employed

14  with the Attorney General's office?

15    A.    Can you repeat the question?

16    Q.    Were there any issues concerning ethical

17  violations or anything of the sort that came to your

18  attention?

19    A.    Well --

20    Q.    I'm not talking about today.

21    A.    What was relayed today, you know.

22    Q.    Well, I mean, did you hear about it earlier

23  than today?

24    A.    Yes.

25    Q.    When did you hear about it?

1      A.    Probably a week ago.

2      Q.    A week ago.  And you're pretty sure you

3    didn't hear about any of those concerns more than a

4    week ago?

5      A.    I don't know.  It could have been.

6      Q.    Are there any concerns that you, any such

7    similar concerns that you did not -- well, let me

8    rephrase that.  Miss Sha Carter mentioned several

9    concerns, emails mainly, arising from emails.  Other

10   than those, are you aware of any other concerns

11   about Miss Jennifer Medley?

12     A.    I don't recall any.  Other than what was

13   discussed here.

14     Q.    All right.  With Miss Carter?

15     A.    Correct.

16     Q.    When an individual in the New Orleans

17   office, when an individual attorney in the New

18   Orleans office receives a raise that is other than a

19   cost of living raise, who has to approve that?

20     A.    Buddy Caldwell.

21     Q.    Is there anyone else who has to sign off on

22   the raise?

23     A.    No.  I think Buddy is the -- unless

24   administratively Renee does, but Buddy is the

25   signatory.

1    Q.   Okay.  Are these raises done with the
2   recommendation of the office chief typically?
3    A.   With the recommendation from the office
4   chief?
5    Q.   Yes.
6    A.   Typically, yes.
7    Q.   Okay.  Do you happen to recall any instance
8   where a raise was given on, I mean personally to
9   you.  Do you happen to personally recall any
10  instance that was, of a raise that was above the
11  ordinary raise being given by the Attorney General
12  without a recommendation from the office chief?
13              MR. SHOWS:
14              Can we separate.  You said beyond the
15  ordinary and also that was not recommended by --
16  BY MR. WILLIAMS:
17    Q.   Let me rephrase it.  Let's just restrict it
18  to the New Orleans office.
19    A.   New Orleans office?
20    Q.   Yes.  Can you recall any nonroutine raise
21  happening there without the recommendation of the
22  office chief?
23              MR. SHOWS:
24              That's assuming that it has happened.
25              MR. WILLIAMS:

1              Yeah.  And that's what --

2          MR. SHOWS:

3              So that's a misleading question.

4    BY MR. WILLIAMS:

5       Q.   If it hasn't happened, tell me.

6       A.   I don't know.  I wouldn't know if the

7    office chief wasn't consulted or if he was.  I'm

8    just saying that normally it's the office chief

9    makes the recommendation.

10      Q.   If some attorney were to get a ten thousand

11   dollar raise in the New Orleans office and this was

12   not across the board raise, would you normally have

13   been aware of that?

14      A.   Normally, but not necessarily, no.

15      Q.   And let me ask, then, let me follow up my

16   question about nonroutine raises with this.  How are

17   nonroutine raises given?  What procedure is followed

18   for the determination of who is, who should receive

19   nonroutine raises?

20          MR. SHOWS:

21              I'm going to object to the form of the

22   question.

23   BY MR. WILLIAMS:

24      Q.   If you know of any.

25          MR. SHOWS:

```
 1              You're assuming that there are
 2   nonroutine raises given.  Were any nonroutine raises
 3   given while you were head of litigation?  If so, to
 4   whom?  Was it approved by Buddy?  Otherwise it's
 5   assuming a fact not in evidence and I'll object to
 6   the form of the question.
 7   BY MR. WILLIAMS:
 8      Q.   Okay.  Were any such raises given while you
 9   were chief of litigation?
10      A.   The ones that I am aware of came about as a
11   result of a report that was the response to the EEOC
12   claim.
13      Q.   Okay.  So these nonroutine raises were
14   being given to minorities and to women?
15      A.   I don't recall.
16      Q.   Okay.
17      A.   I'm sure they were given to women.  I don't
18   know.
19      Q.   Can you recall any individuals in the New
20   Orleans office who received such raises?
21      A.   The one that was paramount to the
22   proceeding was Phyllis Glazier.
23      Q.   Okay.  Any others?
24      A.   I'm not saying there weren't others.  I
25   just don't recall any or can't think of them.
```

1    Q.    Okay.

2    A.    At this time.

3    Q.    All right.  Did you ever have any

4  complaints about Jennifer Medley's work when she was

5  working in the New Orleans office?

6    A.    I can't recall any specific complaints

7  other than the Gonzales matter.

8    Q.    Okay.  Would you agree with, I think we've

9  had some testimony about evaluations given by Office

10 of Risk Management claims adjusters.

11   A.    Yes.

12   Q.    Were those used to determine merit in the

13 department?

14   A.    Not really.  I think if you have an

15 excellent or a poor, I would look into that,

16 especially the poors.  The majority of those reports

17 generated at the close of a case and they're used by

18 the administration over at ORM to review how our

19 attorneys have done on the case.

20   Q.    Do you get feedback from ORM about how your

21 attorneys are doing?

22   A.    Yes.

23   Q.    Other than those review sheets.

24   A.    Yes.

25   Q.    Okay.  And what form does that take?

1    A.   Usually takes the form of an email from Ann
2  Wax.
3    Q.   Are you aware of any emails from Miss Ann
4  Wax about Miss Medley?
5    A.   I can't recall any, no.
6    Q.   How is merit determined, then, in the
7  Attorney General's office?  How do you figure out
8  who is doing a good job and who isn't?
9    A.   I rely on the office and section chiefs.  I
10  think your traditional factors would determine that,
11  productivity, technical ability, number of cases
12  handled, number of cases closed.  Budget
13  limitations.  The market, you know, with regard to
14  the hires, the market, what the market was,
15  experience, specialization and expertise in a
16  particular area.
17    Q.   Mr. Harroun, you mentioned earlier that
18  Miss Medley had come to you with various questions
19  and I guess complaints about pay.  Do you recall
20  when she first did that?
21    A.   No, I don't.
22    Q.   Do you recall what form these
23  communications took?  Was it face to face
24  conversation?
25    A.   I don't recall that.  The primary one that

1   I do recall is the April memo to Steve Babin.

2       Q.   Okay.

3       A.   I'm not saying we didn't talk before that.

4   I just don't recall.

5       Q.   Before this complaint, had you ever gotten

6   to know Miss Medley?  Did you know her as an

7   individual?

8       A.   I would see her at CLE's, you know,

9   official office functions.

10      Q.   Okay.  And then she wrote the letter to

11  Mr. Steve Babin?

12      A.   Well, yes.  A memo was sent to Steve, yes.

13      Q.   Was that copied to you?

14      A.   I can't remember if it was or not.  I did

15  see it.  I don't recall whether it was copied to me

16  or not.

17      Q.   When you saw this memo, what action, if

18  any, did you take as a result of it?

19      A.   I would have sent it up to the 7th floor,

20  meaning Mr. Caldwell, John Sinquefield, made them

21  aware of the contents of the memo and what was going

22  on in Miss Medley's life.

23      Q.   After you received a copy of that letter to

24  Steve Babin, were there any other conversations you

25  had with Miss Medley about her pay issue?

1       A.   I believe there were a couple of emails in
2   which Miss Medley advised me that she had bills
3   coming due and that she was unable to make the
4   payment on the bills.  Asking me if there had been
5   any decision made on her salary increase, her cost
6   of living increase request.
7       Q.   When you transmitted the letter to
8   Mr. Babin, to the 7th floor, did you do that by
9   means of old fashioned mail, or did you email it?
10      A.   I would have put it in a confidential
11  folder and taken it upstairs.
12      Q.   Okay.  When you received subsequent emails,
13  did you forward those emails or did you -- how did
14  you communicate about subsequent discussions, that
15  is, if you did, how would you have done that?
16      A.   Either through conversation or making a
17  copy of the email, bringing it up.  Or possibly, you
18  know, e-mailing it to Renee, asking, you know, if we
19  were in a position to do anything.
20      Q.   These emails that you've referenced, these
21  were done, I would assume, on your office computer.
22      A.   Yes.
23      Q.   These are the properties of the Department
24  of Justice, these computers?
25      A.   Yes.

1     Q.   Okay.  And I assume you have an email

2  server somewhere, is that right?

3     A.   Yes.

4     Q.   Okay.  Who is the person to talk to about

5  the configuration of the Department of Justice's

6  email server?

7     A.   That would be Mike Reilly.

8     Q.   Were any memos on the subject of Miss

9  Medley, did any memos on the topic of Miss Medley,

10  her dealing with pay issue come to your attention?

11  Email documents.

12     A.   Well, Steve Babin's.  And I don't know if

13  she had -- I think yesterday she had mentioned there

14  were two or three, she thought two or three other

15  emails.  I'm not aware of those, so I'm not saying

16  that there couldn't have been, but I do remember the

17  Steve Babin one.

18     Q.   Did you yourself send any emails to

19  Mr. Caldwell's attention concerning Miss Medley?

20     A.   I would have normally gone through Renee

21  Free.

22     Q.   Okay.

23     A.   Or Christelle Taylor, who is his secretary,

24  administrative assistant.

25     Q.   You would have directed your e-mails to

1    Miss Taylor?

2       A.   Miss Taylor to make sure, because I don't

3    want to send Buddy.  I know Miss Taylor would do

4    that on a regular basis.

5       Q.   Do you recall any such correspondence going

6    to Miss Taylor concerning Miss Medley?

7       A.   No.

8       Q.   That's not to say it doesn't exist, though?

9       A.   It may exist.

10       Q.   I mean, you can't recall?

11       A.   Normally those would go to Renee.

12       Q.   Miss Free?

13       A.   Yes.

14       Q.   Okay.  What was Miss Free's part?  Why

15    would they go to Miss Free as opposed to directly to

16    the Attorney General?

17       A.   Because Miss Free, it's my appreciation,

18    was the go-to person from the standpoint of budget

19    issues and, for example, bar dues, reimbursement.  I

20    know there was a request from Jennifer for that.

21    And that, I believe we forwarded to Renee.

22       Q.   Did the Attorney General review the

23    response by the Department of Justice to the EEOC,

24    the EEOC complaint referencing Miss Jennifer

25    Medley's issues?

1      A.    I believe he did.

2      Q.    Concerning the use of emails for

3   nonbusiness related purposes and the use of State

4   resources for nonbusiness related purposes, can

5   attorneys working for the State of Louisiana conduct

6   law practice out of their office, out of their State

7   office?

8      A.    No.  They shouldn't be.

9      Q.    You've seen a lawsuit that was previously

10   identified as Sha Carter 1, and I just ask you to

11   refer to that.  Is there a copy here?  Looks like

12   Mr. Steve Babin has signed the pleading.

13      A.    Uh-huh.

14      Q.    For Mr. Paul Deal.

15          MR. SHOWS:

16              I object to the form of the question.

17   That's a misleading question.  Attorney General's

18   office has signed on behalf of Paul Deal.

19   BY MR. WILLIAMS:

20      Q.    Is it ethical in your judgment for an

21   attorney in a private lawsuit to sign himself as a

22   representative of the Attorney General?

23      A.    Again, I would defer to David Sanders and

24   Bridget Denicola.

25      Q.    You have no opinion on that, sir?

1      A.    I generally run all those issues by those
2    two people.
3      Q.    That isn't my question.  My question is, do
4    you have an opinion on the propriety of Mr. Deal
5    signing a private pleading.
6         MR. SHOWS:
7              I object to the form of the question.
8    BY MR. WILLIAMS:
9      Q.    Let me pose the question, signing in proper
10   person and as assistant Attorney General and office
11   chief of the New Orleans Department of Justice?  Do
12   you have any opinion about that?
13     A.    No.
14     Q.    You don't?
15     A.    No.
16     Q.    Okay.  Are you aware that Mr. Steve Babin
17   conducts a bankruptcy practice?
18     A.    No.
19     Q.    And if you were to be aware that Mr. Steve
20   Babin files numerous pleadings in bankruptcy from
21   his computer at the Department of Justice in New
22   Orleans, do you have an opinion as to whether that
23   would violate the policies and procedures of
24   Department of Justice?
25     A.    I would not know that until I looked at the

1    current policy and procedure that we have.  But I

2    would have no opinion unless I saw what you were

3    referring to and consult with David and Bridget.

4        Q.   And if I were to further tell you that

5    Mr. Babin's secretary would routinely and as part of

6    her day to day duties file pleadings on behalf of

7    Mr. Babin and his practice on State time, at a State

8    office, would that violate any norms or ethical

9    concerns?

10       A.   Well, again, I would bring that to the

11   attention of David and Bridget.

12       Q.   Now, Mr. Steve Babin is a white male, is

13   that correct, sir?

14       A.   Correct.

15       Q.   Just for the record.  Are you aware of an

16   attorney by the name of Bobby Finkelstein?

17       A.   Yes.

18       Q.   He's a white male, is that correct?

19       A.   Yes.

20       Q.   Are you aware that Mr. Finkelstein is

21   listed as a full time attorney in the Law Office of

22   Cliff Cardone in New Orleans?

23       A.   No.

24       Q.   Matter of fact, if you were to go to

25   Mr. Cliff Cardone's website right now, you would see

1    Mr. Finkelstein's name represented as a full time

2    attorney there.  Without mentioning the fact that he

3    works for the State of Louisiana.  If that were, in

4    fact, so, are you aware of any deviation from

5    practices in the Attorney General's office?

6        A.    Again, I would look at that on an

7    individual basis and consult with Bridget and David.

8        Q.    Have any allegations against any white male

9    come to your attention since Hurricane Katrina,

10   arising out of the New Orleans office?

11            MR. SHOWS:

12            Wait.  Any allegations?

13   BY MR. WILLIAMS:

14       Q.    Have any allegations of impropriety about

15   any white male come to you since Hurricane Katrina

16   out of the New Orleans office?

17       A.    No.

18       Q.    Okay.  Have any allegations against white

19   females come to you from the New Orleans office

20   since Hurricane Katrina?

21       A.    Allegation of what?

22       Q.    Of impropriety.

23       A.    I'm not sure what you mean by impropriety,

24   but no, I'm not aware of any.

25       Q.    To your knowledge, has the email of any

1    attorney been subjected to specific scrutiny by an

2    investigator other than Miss Jennifer Medley since

3    Hurricane Katrina?

4        A.    Any attorney --

5        Q.    In the New Orleans office.

6        A.    No.

7        Q.    How about if we expand that to the entire

8    Department of Justice, any attorney working for the

9    Department of Justice.

10       A.    I wouldn't be aware of that.

11       Q.    You wouldn't be aware of it.  How about any

12   attorney working for the litigation section.  Are

13   you aware of any attorney's email has been

14   investigated, combed through?

15       A.    No.

16            MR. SHOWS:

17                Off the record.

18            (A discussion was held off the record.)

19   BY MR. WILLIAMS:

20       Q.    In your job with the litigation section,

21   are you typically involved in individual litigation

22   strategies?

23       A.    Only on very high profile cases or

24   staffings that we would have with ORM.

25       Q.    Have you ever been personally involved, and

```
 1   I might have come close to asking this question, but
 2   I'm not sure I ever did, personally involved in
 3   investigating complaints of sexual harassment,
 4   disparity of pay or anything like that in the
 5   Department of Justice?
 6       A.   Not personally other than to request that
 7   it be done.
 8       Q.   Let's take a quick break.
 9            (SHORT BREAK TAKEN.)
10   BY MR. WILLIAMS:
11       Q.   Just a couple documents, Mr. Harroun.  I am
12   going to label this one as Harroun 1.  It can be
13   described as an email from Mr. Rob Harroun to Miss
14   Jennifer Medley dated Tuesday, July 29th.  And I've
15   marked this Harroun 1.
16            MR. SHOWS:
17            Did we talk about this yesterday?
18            THE WITNESS:
19            Yeah, we did.
20   BY MR. WILLIAMS:
21       Q.   It's a short email.  It says, Jennifer,
22   I've referred your request to the 7th floor.  I have
23   not heard anything today.  I will check on the
24   status tomorrow.  My question, sir, is, did you
25   check on the status tomorrow?
```

1     A.    Yes.

2     Q.    And what was the status?

3     A.    The status was that we were still

4  conducting the salary survey for the entire

5  department.  And that as soon as we completed that,

6  that we would get back to Jennifer.

7     Q.    All right.  Now, what did Jennifer's

8  request include that you remember now?

9     A.    What's that?

10    Q.    What was in her request that you refer to.

11    A.    A cost of living increase?

12    Q.    Yeah.  So that's what Miss Medley was

13 requesting, is that right?

14    A.    Yeah.

15    Q.    She was requesting a cost of living

16 increase?

17    A.    I'm going back to the April email to Steve

18 Babin.

19    Q.    Okay.

20    A.    With attachments that she sent.

21    Q.    And is that your understanding, that she

22 was just requesting a cost of living increase?

23    A.    Correct.

24    Q.    Okay.

25    A.    Based on the fact that she couldn't pay

1    her, meet her obligations.

2        Q.   Okay.   This is Harroun 2.   I think we've

3    seen that before, too.   I think you referenced this

4    in your earlier testimony, Mr. Harroun.   You've seen

5    this letter from Lisa Brener?

6        A.   Yes.

7            MR. SHOWS:

8                Actually, got about three of them

9    here.

10           MR. WILLIAMS:

11               Well, there's others.

12           MR. SHOWS:

13               Are we talking about the August 4th

14   letter?

15   BY MR. WILLIAMS:

16       Q.   Right now I'm talking about the August 4th,

17   2008 letter.   You've seen this letter before, sir?

18       A.   Yes.

19       Q.   Now, copies of this went to Mr. Caldwell,

20   to yourself and Mr. Paul Deal.

21       A.   Yes.

22       Q.   Were there any discussions between you and

23   the Attorney General about the contents of this --

24   maybe we should wait.   Were there any discussions

25   between you and Mr. Caldwell about this letter?

1    A.    I'm sure there was.

2    Q.    Okay.  What was the substance of those

3  conversations?

4    A.    For us to look into the allegations in the

5  letter.

6    Q.    Okay.  And what actions did you take as a

7  result of that, of those instructions?

8    A.    I requested, gave a copy of the letter to

9  David Sanders and Bridget Denicola and asked them to

10  look into it.

11    Q.    Okay.  Did you take any further action?

12    A.    No.

13    Q.    Was there any discussion about meeting with

14  Miss Brener and Miss Medley about the substance of

15  this letter?

16    A.    Was there any discussions about meeting?

17    Q.    Meeting with them personally.

18    A.    With who?

19    Q.    Miss Medley and Miss Brener.

20    A.    Who meeting with them?

21    Q.    With any meeting, either by Mr. Caldwell or

22  yourself or anyone else from the Department of

23  Justice.

24    A.    No.

25    Q.    There was not?

```
 1        A.    No.  Not from my standpoint.
 2        Q.    Okay.  Did you discuss this with Mr. Paul
 3   Deal?
 4        A.    I'm sure I did.
 5        Q.    Do you remember any of the conversations?
 6        A.    No.
 7        Q.    Was Mr. Deal -- I understand he was, he's
 8   no longer employed by the Department of Justice, is
 9   that right?
10        A.    That's correct.
11        Q.    Was Mr. Deal, did he resign voluntarily or
12   was he terminated?
13        A.    I'm not sure.  I don't know what his --
14        Q.    Are you familiar --
15        A.    I was not there in the outprocessing, so I
16   don't know.
17        Q.    Are you familiar with the decision or the
18   facts and circumstances surrounding Mr. Deal's
19   departure?
20        A.    Not completely.
21        Q.    What is your understanding?
22        A.    I was not there at the time that he
23   outprocessed, so I'm not sure what went on.
24        Q.    You weren't there.  What knowledge do you
25   have about the circumstances of Mr. Deal's departure
```

1  from the employment with the Department of Justice?

2      A.   Well, he was one of the twenty some odd

3  people that were approached to consider resigning or

4  what have you because of the budget cuts.

5      Q.   Okay.  Did his dissociation or was his

6  leaving in any way associated with any part he may

7  have played in the complaints that Miss Medley has

8  brought, to your knowledge?

9      A.   Not to my knowledge.

10      Q.   Okay.  If you go down a little bit further,

11  there's another letter.

12      A.   Okay.

13      Q.   Have you ever seen this letter before?

14          MR. SHOWS:

15              What was the date on it?  Which one we

16  talking about now?

17  BY MR. WILLIAMS:

18      Q.   I'm going to identify this letter as one

19  coming from the Department of Justice signed by Miss

20  Renee Free dated August 13, 2008 addressed to Miss

21  Lisa Brener.  It's part of, it's been offered as

22  Harroun 2, part of that exhibit.

23      A.   Yes.

24      Q.   Have you ever seen this letter before, sir?

25      A.   Yes.  This was an exhibit in response to

1   the EEOC.

2       Q.   Were you consulted in the drafting of this

3   letter?

4       A.   No.

5       Q.   I'll draw your attention to a letter from,

6   signed by you on behalf of the Attorney General to

7   Miss Lisa Brener dated October 3rd, 2008.  Do you

8   recognize this letter, sir?

9       A.   Yes.

10      Q.   That is your signature?

11      A.   Yes.

12      Q.   You indicate that the study was to be

13  complete by September 30th, 2008.  And due to a week

14  long office closure, which occurred because of

15  hurricane Gustav, the study is only partially

16  complete and not yet final.  Is any part of this,

17  was any part of this study committed to paper or --

18      A.   It is.

19      Q.   -- were there documents created?

20      A.   Yes.

21      Q.   And where are those documents located?

22      A.   At the Department of, Louisiana Department

23  of Justice.

24      Q.   But more specifically, can you tell me what

25  office they're in or who has custody of them?

1          A.    I have, I should have a copy.

2          Q.    Okay.  So if we were to request a copy of

3     the incomplete report on Department of Justice

4     compensation structure, you would know what that

5     means and where it's located?

6          A.    Yes.

7          Q.    Okay.  Can you describe what, how far along

8     that report got?

9          A.    Okay.  Initially the study was to pertain

10    to the litigation division only.  That portion of

11    the report had been basically completed.  But a

12    decision was made to extend that to the entire

13    department.  Which would include all divisions.  And

14    that would be released when it had been completed.

15    It was during the time that that study was ongoing

16    that the budget cuts hit.

17         Q.    Okay.  Do you recall whose decision it was

18    to incorporate the entire Department of Justice in

19    this report and not just the division of litigation?

20         A.    The Attorney General's.

21         Q.    It was his personal decision, as far as you

22    know?  It was Mr. Caldwell's personal decision as

23    far as you know?

24         A.    It was his decision, yeah, to encompass the

25    entire department.

1      Q.    Okay.   Are you aware of any ongoing efforts
2   to complete the study today as we sit here?
3      A.    No.
4      Q.    Okay.
5      A.    I'm not aware of any.
6      Q.    Okay.   I think that's all the questions we
7   have.   Thank you, Mr. Harroun.   I appreciate you
8   being here.
9      A.    Thank you.
10          (DEPOSITION CONCLUDED.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

REPORTER'S CERTIFICATE

        I, JAN DICICCO, Certified Court Reporter, do
hereby certify that the above-named witness, after
having been first duly sworn by me to testify to the
truth, did testify as herein above set forth;

        That the testimony was reported by me in
shorthand and transcribed under my personal
direction and supervision, and is a true and correct
transcript, to the best of my ability and
understanding;

        That I am not of counsel, not related to
counsel or the parties hereto, and not in any way
interested in the outcome of this matter.


_____

JAN DICICCO

CERTIFIED COURT REPORTER



48

```
 1                    WITNESS'S CERTIFICATE

 2

 3          I have read or have had the foregoing

 4   testimony read to me and hereby certify that it is a

 5   true and correct transcription of my testimony, with

 6   the exception of any attached corrections or

 7   changes.

 8

 9

10

11          (       ) No Corrections

12

13          (       ) Corrections Attached

14

15

16

17

18

19               _____

20               ROBERT E. HARROUN, III

21

22

23

24

25
```

ability               close     49

**A**

ability  (28:11) (47:10)
ble  (7:24) (21:9) (21:12)
above  (24:10) (47:6)
above-entitled  (1:16)
above-named  (47:4)
accessibility  (7:16)
accordance  (4:5)
according  (12:2)
across  (15:22) (16:6)
(25:12)
action  (1:4) (11:17)
(11:19) (29:17) (41:11)
actions  (41:6)
actually  (20:23) (40:8)
addressed  (7:21) (43:20)
adjusters  (27:10)
administering  (4:19)
administration  (6:1)
(6:8) (14:6) (15:13) (17:10)
(27:18)
administrative  (6:20)
(31:24)
administratively  (23:24)
advised  (8:21) (30:2)
advisement  (20:5)
after  (4:23) (16:22)
(29:23) (47:4)
again  (33:23) (35:10)
(36:6)
against  (18:24) (36:8)
(36:18)
ago  (23:1) (23:2) (23:4)
agree  (27:8)
agreed  (4:2)
all  (4:5) (4:12) (17:6)
20:21) (23:14) (27:3)
(34:1) (39:7) (45:13) (46:6)
allegation  (10:17) (36:21)
allegations  (19:15)
(22:5) (16:8) (36:12)
(36:14) (36:18) (41:4)
alley  (10:18) (11:9)
(11:15) (11:18) (11:20)
(12:2)
allocated  (16:4)
allotments  (6:6)
alone  (17:12) (17:13)
along  (45:7)
already  (11:5) (11:7)
(11:10) (20:13)
also  (2:9) (9:12) (9:18)
(12:17) (24:15)
among  (15:25)
ann  (28:1) (28:3)
another  (43:11)
answer  (4:14) (10:9)
(10:12) (21:10)
any  (4:15) (8:5) (9:16)
(9:18) (9:20) (10:16)
(11:12) (11:17) (11:19)
(12:1) (12:6) (12:15)
(12:25) (13:3) (13:16)
(13:19) (14:8) (17:11)
(18:5) (20:21) (21:2)
(22:12) (22:16) (23:3)
(23:6) (23:10) (23:12)
(24:7) (24:9) (24:20)
(25:24) (26:2) (26:8)
'26:19) (26:23) (26:25)
.27:3) (27:6) (28:3) (28:5)
(29:18) (29:24) (30:5)
(31:8) (31:9) (31:18) (32:5)
(34:12) (35:8) (36:4) (36:8)
(36:12) (36:14) (36:15)
(36:18) (36:24) (36:25)

(37:4) (37:8) (37:11)
(37:13) (40:22) (40:24)
(41:11) (41:13) (41:16)
(41:21) (42:5) (43:6)
(44:16) (44:17) (46:1)
(46:5) (47:13) (48:6)
anybody  (10:18) (13:13)
(14:12) (21:8)
anyone  (23:21) (41:22)
anything  (10:11) (22:17)
(30:19) (38:4) (38:23)
apparently  (21:12)
appearances  (2:1) (3:3)
appreciate  (46:7)
appreciation  (32:17)
approached  (43:3)
approve  (23:19)
approved  (26:4)
approximation  (6:18)
april  (1:20) (21:2) (29:1)
(39:17)
are  (4:8) (4:14) (5:14)
(9:9) (12:15) (12:17)
(12:19) (12:21) (12:25)
(13:19) (15:7) (15:10)
(15:19) (15:22) (17:9)
(17:10) (19:13) (21:22)
(22:5) (23:6) (23:10) (24:1)
(25:16) (26:1) (27:21)
(28:3) (30:23) (34:16)
(35:15) (35:20) (36:4)
(37:12) (37:21) (40:13)
(42:14) (42:17) (44:21)
(46:1)
area  (28:16)
argumentative  (20:13)
arising  (23:9) (36:10)
arrange  (8:2)
arranged  (8:6)
ask  (8:2) (25:15) (33:10)
asked  (20:3) (21:14) (41:9)
asking  (6:19) (8:16)
(18:23) (20:7) (30:4)
(30:18) (38:1)
assistant  (6:5) (8:21)
(9:11) (14:18) (14:23)
(31:24) (34:10)
associated  (43:6)
association  (10:1)
assume  (30:21) (31:1)
assuming  (13:23) (24:24)
(26:1) (26:5)
attached  (10:14) (48:6)
(48:13)
attachments  (39:20)
attention  (7:22) (8:20)
(22:8) (22:18) (31:10)
(31:19) (35:11) (36:9) (44:5)
attorney  (5:5) (5:8)
(5:21) (5:23) (5:25) (6:5)
(6:12) (7:3) (7:9) (7:10)
(7:18) (7:25) (8:3) (8:20)
(9:12) (14:19) (14:22)
(14:23) (15:2) (15:8)
(15:16) (15:19) (15:21)
(16:2) (16:9) (16:11)
(16:21) (16:22) (17:8)
(17:19) (18:24) (19:8)
(19:24) (20:9) (20:17)
(21:4) (21:7) (21:9) (21:17)
(21:19) (22:14) (23:17)
(24:11) (25:10) (28:7)
(32:16) (32:22) (33:17)
(33:21) (33:22) (34:10)
(35:16) (35:21) (36:2)
(36:5) (37:1) (37:4) (37:8)
(37:12) (40:23) (44:6)

(45:20)
attorneys  (6:17) (16:1)
(21:24) (27:19) (27:21)
(33:5)
attorney's  (37:13)
august  (40:13) (40:16)
(43:20)
aware  (5:16) (12:10)
(12:13) (12:15) (12:20)
(12:21) (12:25) (13:19)
(17:11) (17:25) (19:11)
(19:13) (23:10) (25:13)
(26:10) (28:3) (29:21)
(31:15) (34:16) (34:19)
(35:15) (35:20) (36:4)
(36:24) (37:10) (37:11)
(37:13) (46:1) (46:5)

**B**

babin  (10:22) (10:23)
(11:7) (29:1) (29:11)
(29:24) (30:8) (31:17)
(33:12) (34:16) (34:20)
(35:7) (35:12) (39:18)
babin's  (31:12) (35:5)
back  (21:2) (39:6) (39:17)
bankruptcy  (34:17) (34:20)
bar  (32:19)
barbier  (1:5)
based  (17:22) (39:25)
basically  (45:11)
basis  (32:4) (36:7)
baton  (1:19) (2:8) (4:23)
(18:9) (18:13) (19:2)
because  (15:4) (32:2)
(32:17) (43:4) (44:14)
been  (4:24) (8:6) (8:9)
(8:16) (11:8) (12:12) (13:1)
(13:5) (14:20) (17:21)
(23:5) (25:13) (30:4)
(31:16) (37:1) (37:13)
(37:25) (43:21) (45:11)
(45:14) (47:5)
before  (1:16) (16:22)
(18:4) (29:3) (29:5) (40:3)
(40:17) (41:13) (43:24)
began  (13:6)
behalf  (33:18) (35:6)
(44:6)
being  (4:4) (10:13)
(12:17) (16:13) (18:20)
(19:11) (24:11) (26:14)
(46:8)
believe  (7:20) (12:21)
(12:23) (16:21) (18:3)
(18:8) (30:1) (32:21) (33:1)
berthelot  (1:18) (2:7)
besides  (9:14) (20:22)
best  (47:10)
better  (6:23) (12:8)
between  (4:2) (7:2)
(40:22) (40:25)
beyond  (24:14)
big  (6:12)
bills  (30:2) (30:4)
bit  (43:10)
board  (13:12) (15:23)
(16:7) (25:12)
bobby  (35:16)
boss  (20:7)
both  (13:12) (16:19)
box  (4:22)
breach  (22:6)
break  (38:8) (38:9)
brener  (40:5) (41:14)
(41:19) (43:21) (44:7)
bridget  (8:22) (9:4)

(9:11) (9:24) (13:15)
(22:10) (22:11) (33:24)
(35:3) (35:11) (36:7) (41:9)
b-r-i-d-g-e-t  (9:4)
briefly  (20:4)
bring  (35:10)
bringing  (30:17)
brought  (8:19) (43:8)
buddy  (23:20) (23:23)
(23:24) (26:4) (32:3)
budget  (13:11) (14:2)
(15:2) (20:25) (28:12)
(32:18) (43:4) (45:16)
budgetary  (20:22)
business  (22:8)
but  (13:7) (16:15) (16:19)
(18:4) (18:12) (18:22)
(21:11) (23:24) (25:14)
(31:16) (35:1) (36:24)
(38:1) (44:24) (45:11)

**C**

caldwell  (8:7) (13:8)
(23:20) (29:20) (40:19)
(40:25) (41:21)
caldwell's  (31:19) (45:22)
cali  (1:18) (2:7)
call  (10:10) (13:6)
came  (5:22) (16:10)
(16:21) (16:22) (17:8)
(18:5) (18:6) (22:17) (26:10)
can  (10:7) (10:12) (18:6)
(21:8) (22:15) (24:14)
(24:20) (26:19) (33:4)
(38:12) (44:24) (45:7)
cancel  (14:25)
can't  (11:11) (13:25)
(14:9) (18:22) (19:17)
(20:20) (26:25) (27:6)
(28:5) (29:14) (32:10)
cardone  (35:22)
cardone's  (35:25)
carmella  (18:8) (19:18)
carter  (7:3) (12:23)
(21:1) (23:8) (23:14) (33:10)
(27:19)
cases  (9:17) (28:11)
(28:12) (37:23)
catch  (16:19)
cause  (1:16)
certificate  (3:6) (3:7)
(47:1) (48:1)
certification  (4:8)
certified  (1:17) (2:13)
(4:18) (47:3) (47:20)
certify  (47:4) (48:4)
changes  (48:7)
characterize  (18:16)
charge  (6:1) (6:7)
charles  (22:3)
check  (38:23) (38:25)
chief  (10:24) (11:1)
(11:8) (24:2) (24:4) (24:12)
(24:22) (25:7) (25:8) (26:9)
(34:11)
chiefs  (15:12) (28:9)
christelle  (31:23)
circumstances  (42:18)
(42:25)
civil  (1:4) (4:5)
claim  (26:12)
claimed  (20:9)
claims  (27:10)
cle's  (29:9)
cliff  (35:22) (35:25)
close  (27:17) (38:1)

closed   (28:12)
closure   (44:14)
code   (4:4)
colloquy   (7:2) (8:11)
(8:18) (10:18) (12:23)
(16:10)
combed   (37:14)
come   (7:21) (18:19) (22:7)
(28:18) (31:10) (36:9)
(36:15) (36:19) (38:1)
coming   (30:3) (43:19)
comment   (16:18)
committed   (44:17)
communicate   (30:14)
communication   (13:20)
communications   (28:23)
compensation   (45:4)
complaint   (10:9) (10:12)
(18:1) (29:5) (32:24)
complaints   (8:11) (8:17)
(9:21) (17:21) (18:15)
(18:17) (27:4) (27:6)
(28:19) (38:3) (43:7)
complete   (13:8) (14:1)
(44:13) (44:16) (46:2)
completed   (39:5) (45:11)
(45:14)
completely   (42:20)
computer   (30:21) (34:21)
computers   (30:24)
concerning   (22:16)
(31:19) (32:6) (33:2)
concerns   (23:3) (23:6)
(23:7) (23:9) (23:10) (35:9)
concluded   (46:10)
conduct   (13:17) (33:5)
conducting   (8:10) (39:4)
conducts   (34:17)
confidential   (30:10)
configuration   (31:5)
consider   (43:3)
constraints   (14:3)
consult   (35:3) (36:7)
consulted   (25:7) (44:2)
contents   (29:21) (40:23)
conversation   (28:24)
(30:16)
conversations   (29:24)
(41:3) (42:5)
copied   (29:13) (29:15)
copies   (40:19)
copy   (7:23) (10:8) (29:23)
(30:17) (33:11) (41:8)
(45:1) (45:2)
correct   (16:8) (18:25)
(19:1) (23:15) (35:13)
(35:14) (35:18) (39:23)
(42:10) (47:9) (48:5)
corrections   (48:6)
(48:11) (48:13)
correspondence   (32:5)
cost   (23:19) (30:5)
(39:11) (39:15) (39:22)
could   (5:22) (7:13) (8:6)
(8:23) (15:10) (16:16)
(22:9) (23:5)
couldn't   (22:9) (31:16)
(39:25)
counsel   (4:3) (6:5) (9:16)
(14:21) (47:12) (47:13)
counseled   (11:22)
couple   (30:1) (38:11)
course   (17:25) (22:8)
court   (1:1) (1:17) (2:13)
(4:18) (4:24) (47:3) (47:20)
covington   (2:4)
craft   (19:10) (20:1) (20:2)

created   (44:19)
current   (35:1)
custody   (44:25)
cut   (13:11) (15:2)
cuts   (20:25) (43:4) (45:16)

**D**

dale   (2:3)
date   (5:14) (43:15)
dated   (38:14) (43:20)
(44:7)
david   (8:21) (8:25) (9:10)
(9:24) (13:15) (22:10)
(33:23) (35:3) (35:11)
(36:7) (41:9)
day   (1:20) (35:6)
deal   (11:3) (11:5) (11:10)
(12:7) (33:14) (33:18)
(34:4) (40:20) (42:3) (42:7)
(42:11)
dealing   (13:20) (31:10)
deal's   (42:18) (42:25)
decision   (15:19) (30:5)
(42:17) (45:12) (45:17)
(45:21) (45:22) (45:24)
decisions   (15:7)
defense   (6:4)
defer   (33:23)
definition   (10:5)
d-e-n   (9:5)
denicola   (8:22) (9:3)
(9:7) (9:8) (9:24) (13:15)
(22:11) (33:24) (41:9)
d-e-n-i-c-o-l-a   (9:4)
department   (1:6) (2:5)
(4:22) (12:16) (13:9)
(17:20) (21:16) (27:13)
(30:23) (31:5) (32:23)
(34:11) (34:21) (34:24)
(37:8) (37:9) (38:5) (39:5)
(41:22) (42:8) (43:1)
(43:19) (44:22) (45:3)
(45:13) (45:18) (45:25)
departure   (42:19) (42:25)
depends   (10:4)
deposition   (1:15) (4:3)
(4:15) (6:25) (46:10)
deputy   (5:25)
describe   (5:22) (45:7)
described   (38:13)
determination   (25:18)
determine   (15:15) (27:12)
(28:10)
determined   (6:4) (28:6)
deviation   (36:4)
dicicco   (1:17) (2:12)
(4:18) (47:3) (47:19)
did   (4:25) (7:20) (7:21)
(8:2) (9:23) (10:18) (12:1)
(13:16) (13:18) (14:8)
(14:12) (14:24) (18:14)
(18:19) (19:18) (22:9)
(22:22) (22:25) (23:7)
(27:3) (28:20) (29:6)
(29:14) (29:18) (30:8)
(30:9) (30:13) (30:15)
(31:9) (31:18) (32:22)
(33:1) (38:2) (38:17)
(38:19) (38:24) (39:7)
(41:6) (41:11) (42:2) (42:4)
(42:11) (43:5) (47:6)
didn't   (16:19) (17:14)
(23:3) (29:3)
directed   (6:24) (31:25)
direction   (47:9)
directly   (7:24) (32:15)
disciplinary   (9:16) (22:2)

discipline   (21:23)
discovered   (22:5)
discuss   (42:2)
discussed   (23:13)
discussion   (37:18) (41:13)
discussions   (30:14)
(40:22) (40:24) (41:16)
disparity   (17:22) (38:4)
dissociation   (43:5)
distributed   (15:15)
(15:25)
district   (1:1) (1:2)
division   (1:6) (6:2) (6:9)
(6:11) (13:7) (14:5) (14:6)
(15:9) (15:10) (15:13)
(45:10) (45:19)
divisions   (45:13)
documents   (14:8) (31:11)
(38:11) (44:19) (44:21)
does   (6:16) (9:13) (15:18)
(23:24) (27:25)
doesn't   (20:8) (32:8)
doing   (13:10) (13:14)
(27:21) (28:8)
dollar   (15:25) (25:11)
dollars   (16:2)
done   (9:21) (12:24) (13:9)
(24:1) (27:19) (30:15)
(30:21) (38:7)
don't   (5:13) (5:18) (8:1)
(8:4) (11:2) (11:3) (11:11)
(12:3) (14:1) (15:21)
(16:15) (19:25) (20:2)
(20:8) (20:20) (21:13)
(21:20) (21:21) (23:5)
(23:12) (25:6) (26:15)
(26:17) (26:25) (28:21)
(28:25) (29:4) (29:15)
(31:12) (32:2) (34:14)
(42:13) (42:16)
door   (7:11) (7:14)
down   (43:10)
drafting   (44:2)
draw   (44:5)
due   (30:3) (44:13)
dues   (32:19)
duly   (4:24) (47:5)
during   (45:15)
duties   (5:23) (35:6)

**E**

each   (15:18) (15:21) (16:1)
earlier   (8:12) (22:22)
(28:17) (40:4)
eastern   (1:2)
edward   (2:3)
eeoc   (8:10) (8:17) (9:20)
(10:9) (10:12) (26:11)
(32:23) (32:24) (44:1)
efforts   (46:1)
either   (10:7) (21:5)
(30:16) (41:21)
else   (21:8) (23:21) (41:22)
email   (28:1) (30:9)
(30:17) (31:1) (31:6)
(31:11) (36:25) (37:13)
(38:13) (38:21) (39:17)
e-mailing   (30:18)
emails   (23:9) (28:3)
(30:1) (30:12) (30:13)
(30:20) (31:15) (31:18)
(33:2)
e-mails   (31:25)
employed   (5:20) (5:21)
(22:13) (42:8)
employees   (6:15)
employment   (9:18) (43:1)

encompass   (45:24)
enforcement   (21:23) (22:2)
enough   (10:16) (16:6)
entire   (37:7) (39:4)
(45:12) (45:18) (45:25)
especially   (27:16)
esq   (2:3) (2:7)
estrogen   (10:18) (11:9)
(11:15) (11:18) (11:20)
(12:1)
ethical   (21:23) (22:6)
(22:7) (22:16) (33:20) (35:8)
ethnicity   (12:18)
evaluations   (27:9)
even   (17:4)
ever   (7:18) (8:2) (10:16)
(10:19) (12:1) (12:6)
(13:13) (14:8) (14:12)
(17:21) (19:18) (21:16)
(22:12) (27:3) (29:5)
(37:25) (38:2) (43:13)
(43:24)
everything   (13:11)
evidence   (4:16) (26:5)
examination   (3:9)
example   (32:19)
excellent   (27:15)
exception   (48:6)
exhibit   (43:22) (43:25)
exhibits   (3:12) (10:14)
exist   (32:8) (32:9)
expand   (37:7)
expect   (6:23)
experience   (28:15)
expertise   (28:15)
extend   (45:12)

**F**

face   (28:23)
fact   (26:5) (35:24) (36:2)
(36:4) (39:25)
factors   (28:10)
facts   (42:18)
fair   (10:16)
fairly   (16:14)
familiar   (8:15) (21:18)
(21:20) (42:14) (42:17)
far   (19:11) (45:7) (45:21)
(45:23)
fashioned   (30:9)
feedback   (27:20)
felt   (18:17)
females   (36:19)
few   (5:15)
figure   (28:7)
file   (35:6)
filed   (18:24)
files   (34:20)
filing   (4:8)
final   (44:16)
find   (14:2)
finkelstein   (35:16)
(35:20)
finkelstein's   (36:1)
first   (4:24) (6:5) (8:13)
(8:20) (14:18) (14:22)
(28:20) (47:5)
floor   (29:19) (30:8)
(38:22)
folder   (30:11)
follow   (25:15)
followed   (10:21) (25:17)
follows   (4:25)
for   (4:3) (4:5) (5:4) (5:8)
(5:23) (6:4) (6:24) (8:9)
(12:8) (13:5) (14:7) (15:11)
(16:6) (17:10) (18:23)

SSOCIATES,   INC

foregoing (19:24) (20:1) (20:7) (21:3) (21:17) (21:22) (21:24) (25:18) (32:19) (32:20) (33:2) (33:4) (33:5) (33:14) (33:20) (35:15) (36:3) (37:8) (37:12) (39:4) (41:4)

form (4:13) (20:12) (25:21) (26:6) (27:25) (28:1) (28:22) (33:16) (34:7)

formalities (4:7)

formality (4:10)

forth (47:6)

forward (14:9) (30:13)

forwarded (32:21)

found (13:10)

four (16:6)

free (6:20) (16:15) (14:24) (21:11) (31:21) (32:12) (32:15) (32:17) (43:20)

free's (6:25) (14:5) (14:7) (32:14)

from (21:16) (23:9) (24:3) (24:12) (27:20) (28:1) (28:3) (32:18) (32:20) (34:20) (36:4) (36:19) (38:13) (40:5) (41:22) (42:1) (43:1) (43:19) (44:5)

full (35:21) (36:1)

functions (29:9)

further (35:4) (41:11) (43:10)

G

gave (41:8)

gender (12:7) (12:18) (17:22)

general (5:22) (6:1) (6:6) (7:3) (7:9) (7:10) (7:18) (7:25) (8:3) (8:20) (9:12) (14:9) (14:22) (14:23) (15:16) (16:9) (16:11) (16:21) (16:22) (17:8) (21:7) (21:9) (21:20) (24:11) (32:16) (32:22) (33:22) (34:10) (40:23) (44:6)

generally (15:22) (16:3) (34:1)

general's (5:5) (5:8) (5:23) (6:12) (15:2) (15:8) (17:20) (18:25) (21:4) (22:14) (28:7) (33:17) (36:5) (45:20)

generated (27:17)

get (18:4) (20:8) (25:10) (27:20) (39:6)

given (1:17) (24:8) (24:11) (25:17) (26:2) (26:3) (26:8) (26:14) (26:17) (27:9)

giving (16:1)

glazier (26:22)

goes (20:7)

going (5:19) (5:21) (13:25) (17:16) (19:13) (20:12) (25:21) (29:21) (32:5) (38:12) (39:17) (43:18)

gone (11:10) (31:20)

gonzales (27:7)

good (28:8)

got (6:11) (7:7) (15:1) (17:15) (40:8) (45:8)

go-to (32:18)

gotten (29:5)

guess (6:3) (8:15) (9:15) (10:6) (10:10) (13:4) (13:6) (17:9) (28:19)

gustav (44:15)

H

had (11:5) (11:7) (11:22) (12:4) (15:1) (16:11) (20:4) (22:12) (27:9) (28:18) (29:5) (29:25) (30:2) (30:4) (31:13) (45:11) (45:14) (48:3)

handled (28:12)

handling (12:7)

happen (16:7) (21:15) (24:7) (24:9)

happened (13:21) (13:22) (13:24) (17:17) (18:14) (24:24) (25:5)

happening (24:21)

harassment (38:3)

hard (10:8)

harroun (1:15) (3:13) (3:14) (4:21) (5:2) (28:17) (38:11) (38:12) (38:13) (38:15) (40:2) (40:4) (43:22) (46:7) (48:20)

has (13:23) (14:20) (21:16) (22:7) (23:19) (23:21) (24:24) (33:12) (33:18) (36:25) (37:13) (43:7) (44:25)

hasn't (25:5)

have (5:4) (5:7) (5:13) (8:4) (8:6) (8:9) (8:16) (8:19) (8:21) (9:19) (11:8) (12:12) (13:4) (17:20) (20:18) (23:5) (25:12) (27:3) (27:14) (27:19) (29:19) (30:10) (30:15) (31:1) (31:16) (31:20) (31:25) (33:25) (34:4) (34:12) (34:22) (35:1) (35:2) (36:8) (36:14) (36:18) (37:24) (37:25) (38:1) (38:22) (42:25) (43:4) (43:7) (43:13) (43:24) (45:1) (46:7) (48:3)

having (4:24) (5:20) (13:1) (14:24) (47:5)

head (9:10) (26:3)

hear (22:22) (22:25) (23:3)

heard (6:19) (7:2) (7:9) (7:10) (8:12) (8:17) (12:21) (17:21) (38:23)

held (37:18)

her (7:19) (18:15) (18:20) (18:23) (19:9) (19:19) (19:21) (20:3) (20:19) (29:6) (29:8) (29:25) (30:5) (31:10) (35:6) (39:10) (40:1) (46:2) (46:8)

hereby (4:4) (4:14) (47:4) (48:4)

herein (47:6)

hereto (4:3) (47:13)

he's (20:13) (35:18) (42:7)

high (37:23)

him (7:15)

himself (33:21)

hire (16:11)

hired (17:7)

hires (28:14)

his (8:24) (12:7) (31:23) (34:21) (35:7) (42:13)

(43:5) (45:21) (45:24)

hit (18:12) (45:16)

how (5:4) (5:7) (15:7) (15:15) (15:16) (25:16) (27:18) (27:20) (28:6) (30:7) (30:13) (30:15) (37:7) (37:11) (45:7)

hundred (16:7)

hurricane (36:9) (36:15) (36:20) (37:3) (44:15)

I

i-c-o-l-a (9:6)

identified (33:10)

identify (13:16) (43:18)

iii (1:15) (4:21) (48:20)

i'll (26:5) (44:5)

i'm (5:16) (8:15) (10:6) (11:11) (12:10) (13:18) (13:23) (19:3) (19:11) (20:6) (20:12) (20:16) (21:18) (22:20) (25:7) (25:21) (26:17) (26:24) (29:3) (31:15) (36:23) (36:24) (38:2) (39:17) (40:16) (41:1) (42:4) (42:13) (42:23) (43:18) (46:5)

implemented (15:3)

impossible (14:4)

impropriety (36:14) (36:22) (36:23)

incident (11:21)

include (6:16) (39:8) (45:13)

including (4:7)

incomplete (45:3)

incorporate (45:18)

increase (15:11) (18:23) (19:23) (30:5) (30:6) (39:11) (39:16) (39:22)

increases (15:5) (15:22)

index (3:4)

indicate (44:12)

individual (15:19) (17:9) (18:6) (23:16) (23:17) (29:7) (36:7) (37:21)

individuals (26:19)

influx (16:25) (17:4)

information (13:3) (13:5) (20:4) (21:3) (22:5)

informed (15:10)

infraction (20:9)

initially (45:9)

instance (24:7) (24:10)

instructions (41:7)

interested (47:14)

into (8:10) (8:22) (9:18) (9:20) (10:19) (11:9) (11:15) (11:18) (11:20) (12:6) (12:15) (17:8) (18:4) (27:15) (41:4) (41:10)

investigated (37:14)

investigating (38:3)

investigation (8:10) (8:17) (9:20) (10:1) (10:17) (11:6) (11:9) (11:13) (11:18) (11:19) (11:20) (12:2) (12:6) (12:11) (12:15) (12:20) (12:22) (12:24) (13:1) (13:2) (13:8) (14:10)

investigations (9:23)

investigator (37:2)

involved (8:16) (17:21) (37:21) (37:25) (38:2)

isn't (6:12) (28:8) (34:3)

issue (18:20) (18:22) (20:18) (29:25) (31:10)

issues (9:18) (18:5) (18:7) (19:16) (22:12) (22:16) (32:19) (32:25) (34:1)

it's (6:14) (15:16) (16:3) (20:13) (25:8) (26:4) (32:17) (38:21) (43:21) (45:5)

i've (7:14) (38:14) (38:22)

J

jan (1:16) (2:12) (4:18) (47:3) (47:19)

jennifer (1:4) (2:2) (2:10) (7:17) (22:13) (23:11) (27:4) (32:20) (32:24) (37:2) (38:14) (38:21) (39:6)

jennifer's (39:7)

jill (19:10) (20:1) (20:2)

job (28:8) (37:20)

jobs (9:9)

john (14:15) (14:17) (29:20)

judge (1:5) (9:17)

judgment (33:20)

july (38:14)

just (5:19) (18:17) (18:23) (20:16) (24:17) (25:8) (26:25) (29:4) (33:10) (35:15) (38:11) (39:22) (45:19)

justice (1:6) (2:6) (4:22) (17:20) (21:16) (30:24) (32:23) (34:11) (34:21) (34:24) (37:8) (37:9) (38:5) (41:23) (42:8) (43:1) (43:19) (44:23) (45:3) (45:18)

justice's (31:5)

K

kathy (11:25) (12:4)

katrina (18:12) (36:9) (36:15) (36:20) (37:3)

know (5:13) (5:18) (6:3) (7:15) (7:17) (8:1) (8:5) (8:8) (10:7) (11:2) (11:3) (11:11) (12:3) (14:1) (14:3) (15:21) (16:15) (17:6) (19:11) (19:25) (20:2) (20:20) (21:2) (21:5) (21:6) (21:15) (21:20) (21:21) (22:21) (23:5) (25:6) (25:24) (26:18) (28:13) (29:6) (29:8) (30:18) (31:12) (32:3) (32:20) (34:25) (42:13) (42:16) (45:4) (45:22) (45:23)

knowledge (9:21) (17:18) (36:25) (42:24) (43:8) (43:9)

knowles (1:6)

known (15:12)

knows (20:14)

L

label (38:12)

large (16:25) (17:4)

latest (5:6)

law (1:18) (2:3) (4:6) (9:18) (20:10) (33:6) (35:21)

lawsuit (18:24) (33:9) (33:21)

lawyer (20:19)

lay-offs (15:5)

least (7:9)
leaving (43:6)
left (11:5) (11:7) (17:12) (17:13)
legislature (21:17)
let (23:7) (24:17) (25:15) (34:9)
let's (24:17) (38:8)
letter (7:20) (7:21) (29:10) (29:23) (30:7) (40:5) (40:14) (40:17) (40:25) (41:5) (41:8) (41:15) (43:11) (43:13) (43:18) (43:24) (44:3) (44:5) (44:8)
life (29:22)
like (16:12) (16:13) (17:16) (19:23) (33:11) (38:4)
limitations (28:13)
limited (19:15)
lisa (40:5) (43:21) (44:7)
list (13:3)
listed (35:21)
litigation (6:2) (6:8) (6:11) (9:11) (9:13) (9:14) (9:15) (12:12) (12:16) (13:7) (15:9) (15:13) (17:3) (17:10) (26:3) (26:9) (37:12) (37:20) (37:21) (45:10) (45:19)
litigators (16:25)
little (43:10)
living (23:19) (30:6) (39:11) (39:15) (39:22)
llp (1:18) (2:7)
located (44:21) (45:5)
.ogan (12:5) (12:4)
long (5:4) (44:14)
longer (42:8)
look (8:22) (9:18) (10:19) (14:4) (27:15) (36:6) (41:4) (41:10)
looked (34:25)
looks (33:11)
lot (6:19)
louis (1:19) (2:8)
louisiana (1:2) (1:6) (1:19) (2:4) (2:5) (2:8) (4:4) (4:22) (4:23) (33:5) (36:3) (44:22)

## M

made (12:24) (14:3) (15:7) (15:20) (21:2) (29:20) (30:5) (45:12)
magistrate (1:6)
mail (30:9)
mainly (23:9)
majority (27:16)
make (15:11) (15:18) (15:19) (30:3) (32:2)
makes (25:9)
making (30:16)
male (35:12) (35:18) (36:8) (36:15)
males (18:21)
man (12:1)
management (27:10)
many (5:7)
  arked (38:15)
  arket (28:13) (28:14)
  assive (15:2) (20:25)
matter (8:22) (27:7) (35:24) (47:14)
matters (6:21)
may (4:15) (8:4) (32:9)

(43:6)
maybe (40:24)
mean (14:4) (22:4) (22:22) (24:8) (32:10) (36:23)
meaning (29:20)
means (30:9) (45:5)
medley (1:4) (2:2) (2:10) (7:17) (7:24) (8:2) (17:25) (18:5) (22:13) (23:11) (28:4) (28:18) (29:6) (29:25) (30:2) (31:9) (31:19) (32:6) (37:2) (38:14) (39:12) (41:14) (41:19) (43:7)
medley's (18:1) (27:4) (29:22) (32:25)
meet (40:1)
meeting (7:18) (8:3) (8:6) (21:13) (41:13) (41:16) (41:17) (41:20) (41:21)
memo (29:1) (29:12) (29:17) (29:21)
memorandum (13:19) (13:25)
memory (20:18)
memos (31:8) (31:9)
mentioned (10:17) (16:17) (23:8) (28:17) (31:13)
mentioning (16:9) (36:2)
merit (27:12) (28:6)
might (6:23) (9:19) (13:4) (20:18) (38:1)
mike (31:7)
minorities (26:14)
misleading (25:3) (33:17)
miss (6:20) (6:24) (7:17) (7:24) (8:2) (9:3) (14:7) (14:24) (17:25) (18:1) (18:4) (18:15) (19:15) (19:18) (20:1) (22:13) (23:8) (23:11) (23:14) (28:3) (28:4) (28:18) (29:6) (29:22) (29:25) (30:2) (31:8) (31:9) (31:19) (32:1) (32:2) (32:3) (32:6) (32:12) (32:14) (32:15) (32:17) (32:24) (37:2) (38:13) (39:12) (41:14) (41:19) (43:7) (43:19) (43:20) (44:7) (money (15:11) (15:15) (16:4) (16:6) (17:15) (21:16)
month (15:25)
months (5:15)
more (23:3) (44:24)
most (15:22)
moved (18:12)
much (17:12) (17:13) (17:15) (18:20)

## N

name (8:24) (18:6) (35:16) (36:1)
nature (10:3)
necessarily (25:14)
never (7:14) (13:21) (13:22) (13:23)
new (10:24) (12:9) (16:22) (16:25) (18:11) (23:16) (23:17) (24:18) (24:19) (25:11) (26:19) (27:5) (34:11) (34:21) (35:22) (36:10) (36:16) (36:19) (37:5)
next (5:15)
ninety (6:14)
nonbusiness (33:3) (33:4)
nonroutine (24:20) (25:16) (25:17) (25:19)

(26:2) (26:13)
normally (12:12) (12:14) (20:7) (25:8) (25:12) (25:14) (31:20) (32:11)
norms (22:7) (35:8)
not (4:11) (5:16) (8:6) (11:11) (12:10) (13:2) (14:1) (15:6) (17:1) (17:3) (17:18) (18:20) (19:4) (19:6) (19:10) (19:11) (20:23) (21:13) (21:18) (22:20) (23:7) (24:15) (25:12) (25:14) (26:5) (26:24) (27:14) (29:3) (29:14) (29:16) (31:15) (32:8) (34:25) (36:23) (36:24) (38:2) (38:6) (38:23) (41:25) (42:1) (42:13) (42:15) (42:20) (42:22) (42:23) (43:9) (44:16) (45:19) (46:5) (47:12) (47:13)
nothing (12:3) (17:16) (21:14)
noticed (6:24)
now (6:3) (6:11) (14:21) (17:15) (35:12) (35:25) (39:7) (39:8) (40:16) (40:19) (43:16)
number (16:14) (16:17) (28:11) (28:12)
numerous (34:20)

## O

oath (4:19)
object (20:12) (25:21) (26:5) (33:16) (34:7)
objections (4:12)
obligations (40:1)
obviously (17:23)
occurred (22:7) (44:14)
october (44:7)
odd (43:2)
off (13:11) (23:21) (37:17) (37:18)
offered (43:21)
office (5:5) (5:8) (5:23) (6:12) (10:24) (10:25) (11:1) (11:8) (12:9) (12:12) (15:3) (15:8) (15:12) (17:8) (17:20) (18:10) (18:12) (18:25) (21:4) (22:14) (23:17) (23:18) (24:2) (24:3) (24:12) (24:18) (24:19) (24:22) (25:7) (25:8) (25:11) (26:20) (27:5) (27:9) (28:7) (28:9) (29:9) (30:21) (33:6) (33:7) (33:18) (34:10) (35:8) (35:21) (36:5) (36:10) (36:16) (36:19) (37:5) (44:14) (44:25)
offices (1:18) (2:3)
official (29:9)
officiated (4:19)
okay (5:7) (5:11) (5:13) (5:17) (6:7) (6:16) (7:5) (7:17) (8:13) (8:23) (9:9) (10:11) (10:16) (14:14) (15:14) (16:16) (17:2) (17:4) (17:14) (17:19) (18:9) (21:8) (21:15) (21:19) (21:22) (24:1) (24:7) (26:8) (26:13) (26:16) (26:23) (27:1) (27:8) (27:25) (29:2) (29:10) (30:12) (31:1)

(31:4) (31:22) (32:14) (34:16) (36:18) (39:19) (39:24) (40:2) (41:2) (41:6) (41:11) (42:2) (42:3) (43:10) (43:12) (45:2) (45:7) (45:9) (45:17) (46:1) (46:4) (46:6)
old (30:9)
one (8:9) (17:23) (26:21) (28:25) (31:17) (38:12) (43:2) (43:15) (43:18)
ones (26:10)
ongoing (12:20) (45:15) (46:1)
online (10:7)
only (16:11) (20:6) (20:24) (37:23) (44:15) (45:10)
open (7:11) (7:14)
operations (6:2) (6:8)
opinion (33:25) (34:4) (34:12) (34:22) (35:2)
opposed (32:15)
option (15:6)
oral (10:3)
ordinary (24:11) (24:15)
organization (22:4)
originally (18:11)
originated (12:4)
orleans (10:24) (12:9) (18:11) (23:16) (23:18) (24:18) (24:19) (25:11) (26:20) (27:5) (34:11) (34:22) (35:22) (36:10) (36:16) (36:19) (37:5)
orm (27:18) (27:20) (37:24)
other (10:11) (10:14) (12:4) (13:13) (15:24) (17:14) (17:22) (18:6) (20:21) (21:8) (23:9) (23:10) (23:12) (23:18) (27:7) (27:23) (29:24) (31:14) (37:2) (38:6)
others (26:23) (26:24) (40:11)
otherwise (26:4)
our (13:11) (27:18)
out (13:10) (13:25) (14:2) (16:5) (28:7) (33:6) (36:10) (36:16)
outcome (47:14)
outprocessed (42:23)
outprocessing (42:15)
over (27:18)
oversaw (6:3)

## P

paid (12:17) (18:20)
paper (44:17)
paramount (26:21)
park (2:4)
parker (18:8) (18:15) (19:15) (19:18)
part (4:15) (8:13) (10:13) (18:19) (32:14) (35:5) (43:6) (43:21) (43:22) (44:16) (44:17)
partially (44:15)
particular (28:16)
parties (4:3) (47:13)
paul (12:7) (33:14) (33:18) (40:20) (42:2)
pay (7:19) (12:16) (16:7) (17:11) (17:12) (17:13) (17:22) (19:16) (28:19) (29:25) (31:10) (38:4) (39:25)

payment                                                                                    sorry        53

payment (30:4)
payroll (17:15)
people (12:17) (16:12)
 '34:2) (43:3)
percent (16:6)
percentage (16:3)
performed (13:1)
person (31:4) (32:18)
 (34:10)
personal (45:21) (45:22)
 (47:8)
personally (24:8) (24:9)
 (37:25) (38:2) (38:6) (41:17)
pertain (45:9)
peterson (7:3) (12:23)
 (21:1)
philips (14:22)
phrase (12:5)
phyllis (26:22)
pile (16:4)
place (2:4) (11:10)
planning (5:14)
plattsmier (22:3)
played (43:7)
pleading (33:12) (34:5)
pleadings (34:20) (35:6)
please (8:24)
point (15:5)
policies (34:23)
policy (7:11) (7:13)
 (7:14) (35:1)
poor (27:15)
poors (27:16)
portion (45:10)
pose (34:9)
position (30:19)
positions (9:9)
 ossibly (12:18) (15:11)
 (30:17)
post (16:11)
practice (16:1) (33:6)
 (34:17) (35:7)
practices (36:5)
present (2:9) (5:6)
pretty (6:12) (17:12)
 (17:13) (23:2)
previously (33:9)
primary (28:25)
private (33:21) (34:5)
probability (15:4)
probably (6:19) (23:1)
problems (7:19) (19:19)
 (19:22) (20:22)
procedure (4:5) (25:17)
 (35:1)
procedures (34:23)
proceeding (26:22)
process (13:10)
productivity (28:11)
profile (37:23)
prompted (20:18)
proper (34:9)
properties (30:23)
propriety (34:4)
purposes (4:5) (21:17)
 (33:3) (33:4)
pursuant (4:4)
put (13:3) (30:10)

Q

 qualified (18:21)
 question (4:13) (8:14)
 (9:15) (12:25) (16:20)
 (20:13) (21:10) (22:15)
 (25:3) (25:16) (25:22)
 (26:6) (33:16) (33:17)
 (34:3) (34:7) (34:9) (38:1)

(38:24)
questions (6:20) (9:19)
 (28:18) (46:6)
quick (38:8)

R

race (12:18) (17:22)
raise (16:7) (18:18)
 (20:8) (23:18) (23:19)
 (23:22) (24:8) (24:10)
 (24:11) (24:20) (25:11)
 (25:12)
raised (20:19)
raises (24:1) (25:16)
 (25:17) (25:19) (26:2)
 (26:8) (26:13) (26:20)
read (10:7) (48:3) (48:4)
really (16:15) (16:19)
 (27:14)
reason (5:8) (8:8) (20:21)
 (20:24)
reasons (13:20)
recall (8:4) (10:12)
 (13:25) (16:12) (16:15)
 (17:1) (18:6) (18:22) (19:8)
 (19:17) (19:21) (20:20)
 (23:12) (24:7) (24:9)
 (24:20) (26:15) (26:19)
 (26:25) (27:6) (28:5)
 (28:19) (28:22) (28:25)
 (29:1) (29:4) (29:15) (32:5)
 (32:10) (45:17)
receive (25:18)
received (21:16) (26:20)
 (29:23) (30:12)
receives (23:18)
recognize (44:8)
recollection (7:10)
recommendation (24:2)
 (24:3) (24:12) (24:21) (25:9)
recommendations (15:20)
recommended (24:15)
record (35:15) (37:17)
 (37:18)
redistribute (17:16)
redistribution (17:11)
refer (22:10) (33:11)
 (39:10)
reference (12:22)
referenced (8:11) (30:20)
 (40:3)
referencing (32:24)
referred (38:22)
referring (35:3)
regard (28:13)
regular (32:4)
reilly (31:7)
reimbursement (32:19)
related (20:24) (33:3)
 (33:4) (47:12)
relating (14:8)
relations (12:8)
relayed (22:21)
released (45:14)
rely (28:9)
remember (16:9) (16:18)
 (18:23) (29:14) (31:16)
 (39:8) (42:5)
rendered (9:25) (11:12)
 (20:23)
renee (6:20) (14:5)
 (14:15) (21:11) (23:24)
 (30:18) (31:20) (32:11)
 (32:21) (43:20)
repeat (22:15)
rephrase (23:8) (24:17)
rephrased (20:17)

replaced (14:20)
report (9:25) (10:3)
 (10:4) (10:5) (10:6) (10:10)
 (10:13) (10:15) (11:12)
 (13:14) (20:22) (26:11)
 (45:3) (45:8) (45:11) (45:19)
reported (2:11) (12:3)
 (47:7)
reporter (1:17) (2:13)
 (4:18) (4:24) (47:3) (47:20)
reporter's (3:6) (47:1)
reports (27:16)
represent (9:16)
representative (33:22)
represented (19:8) (36:1)
representing (2:2) (2:5)
request (12:24) (13:5)
 (20:5) (30:6) (32:20) (38:6)
 (38:22) (39:8) (39:10) (45:2)
requested (7:18) (41:8)
requesting (39:13)
 (39:15) (39:22)
requests (21:1) (21:3)
require (13:17)
requirements (22:6)
reserved (4:14)
resign (42:11)
resigning (43:3)
resources (13:16) (33:4)
responded (21:3)
response (13:4) (26:11)
 (32:23) (43:25)
responsible (8:9) (17:9)
 (21:22)
responsiveness (4:13)
restrict (24:17)
result (11:12) (11:17)
 (11:19) (18:14) (26:11)
 (29:18) (41:7)
retention (21:17)
retire (5:15)
review (15:18) (27:18)
 (27:23) (32:22)
reviews (15:21)
right (13:24) (20:21)
 (23:14) (27:3) (31:2)
 (35:25) (39:7) (39:13)
 (40:16) (42:9)
risk (27:10)
rob (7:7) (38:13)
robert (1:15) (4:21)
 (48:20)
rouge (1:19) (2:8) (4:23)
 (18:9) (18:13) (19:2)
routinely (35:5)
run (34:1)

S

said (16:13) (20:13)
 (24:14)
salary (13:7) (14:9)
 (15:5) (15:7) (15:11)
 (18:23) (19:23) (20:22)
 (30:5) (39:4)
sanders (8:21) (8:23)
 (9:1) (9:2) (9:10) (9:24)
 (13:15) (22:10) (33:23)
 (41:9)
s-a-n-d-e-r-s (8:25)
save (4:12)
saw (7:23) (29:17) (35:2)
say (5:24) (6:7) (7:7)
 (16:6) (17:14) (19:10) (32:8)
saying (19:21) (25:8)
 (26:24) (29:3) (31:15)
says (38:21)
scrutiny (37:1)

sealing (4:8)
secretary (31:23) (35:5)
section (1:5) (9:11)
 (9:12) (9:13) (15:12)
 (17:10) (28:9) (37:12)
 (37:20)
see (14:8) (16:5) (29:8)
 (29:15) (35:25)
seen (33:9) (40:3) (40:4)
 (40:17) (43:13) (43:24)
senator (7:3) (12:23)
 (21:1)
send (31:18) (32:3)
senior (14:21)
sent (29:12) (29:19)
 (39:20)
separate (24:14)
september (44:13)
server (31:2) (31:6)
set (47:6)
settled (19:4) (19:6)
 (19:11) (19:12)
seventy (16:13)
several (32:18)
sexual (38:3)
sha (23:8) (33:10)
she (7:20) (8:4) (18:3)
 (18:9) (18:11) (18:12)
 (18:17) (18:19) (18:20)
 (18:24) (19:23) (19:24)
 (20:1) (20:2) (20:4) (20:18)
 (21:12) (22:13) (27:4)
 (28:20) (29:10) (30:2)
 (30:3) (31:13) (31:14)
 (39:15) (39:20) (39:21)
 (39:25)
sheets (27:23)
short (38:9) (38:21)
shorthand (47:8)
shortly (15:3)
should (25:18) (40:24)
 (45:1)
shouldn't (33:8)
shows (1:18) (2:7) (7:6)
 (20:11) (24:13) (24:23)
 (25:2) (25:20) (25:25)
 (33:15) (34:6) (36:11)
 (37:16) (38:16) (40:7)
 (40:12) (43:14)
sign (23:21) (33:21)
signatory (23:25)
signature (44:10)
signed (33:12) (33:18)
 (43:19) (44:6)
signing (4:10) (34:5)
 (34:9)
similar (18:7) (23:7)
similarly (18:21)
since (5:6) (14:20) (36:9)
 (36:15) (36:20) (37:2)
sinquefield (14:15)
 (14:17) (29:20)
s-i-n-q-u-e-f-i-e-l-d
 sir (20:6) (20:16) (33:25)
 (35:13) (38:24) (40:17)
 (43:24) (44:8)
sit (46:2)
sixty (16:12) (16:13)
small (16:14)
some (6:23) (12:22) (20:9)
 (25:10) (27:9) (43:2)
someone (20:7)
something (5:18) (10:7)
 (16:12) (16:13) (21:19)
somewhere (31:2)
soon (39:5)
sorry (19:3)

sort                                                                          took   54

| sort | | | |
|---|---|---|---|
| sort  (22:17) | tell  (7:13) (14:24) | (4:10) (4:12) (4:13) (4:19) | (47:10) (47:13) (47:14) |
| sought  (4:16) | (16:16) (25:5) (35:4) (44:24) | (4:24) (5:4) (5:8) (5:15) | (48:3) (48:6) |
| speaking  (7:11) | ten  (15:24) (15:25) (25:10) | (5:21) (5:22) (5:23) (5:24) | their  (9:9) (12:18) (20:7) |
| special  (9:10) (9:13) | term  (11:23) (11:24) | (5:25) (6:1) (6:2) (6:3) | (33:6) |
| (9:14) | terminated  (42:12) | (6:4) (6:5) (6:6) (6:8) | them  (6:23) (9:17) (18:16) |
| specialization  (28:15) | terms  (12:17) | (6:11) (6:12) (7:2) (7:9) | (26:25) (29:20) (40:8) |
| specific  (27:6) (37:1) | testified  (18:3) | (7:10) (7:18) (7:25) (8:3) | (41:9) (41:17) (41:20) |
| specifically  (4:8) (4:11) | testify  (4:25) (47:5) | (8:9) (8:10) (8:13) (8:17) | (44:25) |
| (14:3) (44:24) | (47:6) | (8:19) (8:20) (9:10) (9:13) | then  (5:25) (8:21) (11:7) |
| spell  (8:24) | testimony  (14:8) (27:9) | (9:20) (10:3) (10:9) (10:10) | (16:20) (25:15) (28:6) |
| spent  (5:8) | (40:4) (47:7) (48:4) (48:5) | (10:11) (10:12) (10:13) | (29:10) |
| staff  (6:16) (15:12) (17:5) | than  (10:11) (10:14) | (10:15) (10:17) (10:24) | there  (8:5) (9:25) (10:4) |
| staffings  (37:24) | (12:4) (17:23) (21:9) | (11:1) (11:2) (11:5) (11:8) | (10:11) (10:16) (11:4) |
| standards  (21:23) | (22:23) (23:3) (23:10) | (11:9) (11:17) (11:20) | (12:6) (12:11) (15:1) |
| standpoint  (32:18) (42:1) | (23:12) (23:18) (27:7) | (11:22) (11:24) (12:1) | (15:10) (15:19) (15:24) |
| started  (11:6) | (27:23) (37:2) (38:6) | (12:4) (12:9) (12:15) | (16:3) (16:5) (16:25) (18:5) |
| state  (1:6) (2:5) (4:22) | thank  (46:7) (46:9) | (12:16) (12:22) (13:7) | (20:9) (20:21) (22:5) |
| (5:4) (6:4) (21:24) (33:3) | that  (4:3) (4:7) (4:10) | (13:9) (13:11) (13:20) | (22:12) (22:16) (23:6) |
| (33:5) (33:6) (35:7) (36:3) | (4:12) (5:9) (5:16) (6:2) | (14:1) (14:5) (14:21) | (23:21) (24:21) (26:1) |
| states  (1:1) | (6:16) (7:13) (7:15) (8:5) | (14:22) (15:2) (15:4) (15:7) | (26:24) (29:24) (30:1) |
| status  (38:24) (38:25) | (8:11) (8:12) (8:17) (8:18) | (15:13) (15:15) (15:16) | (30:4) (31:13) (31:16) |
| (39:2) (39:3) | (8:22) (9:12) (9:17) (9:19) | (15:22) (16:1) (16:6) (16:9) | (32:20) (33:11) (36:2) |
| steve  (10:22) (11:7) | (9:25) (10:1) (10:10) | (16:10) (16:18) (16:20) | (40:22) (40:24) (41:1) |
| (11:22) (29:1) (29:11) | (10:12) (10:14) (10:17) | (16:22) (17:8) (17:9) | (41:13) (41:16) (41:25) |
| (29:12) (29:24) (31:12) | (10:18) (10:19) (10:21) | (17:10) (17:19) (17:20) | (42:15) (42:22) (42:24) |
| (31:17) (33:12) (34:16) | (11:2) (11:4) (11:13) | (17:23) (18:9) (18:11) | (44:19) |
| (34:19) (35:12) (39:17) | (11:22) (12:10) (12:23) | (18:22) (18:24) (19:8) | thereof  (4:15) |
| still  (5:21) (11:3) (39:3) | (12:24) (13:4) (13:10) | (19:15) (20:10) (20:12) | there's  (40:11) (43:11) |
| stint  (5:6) | (13:14) (13:16) (13:20) | (20:17) (20:22) (20:24) | these  (18:5) (21:1) (24:1) |
| stipulated  (4:2) | (13:23) (13:24) (14:5) | (21:4) (21:7) (21:9) (21:13) | (26:13) (28:22) (30:20) |
| stipulation  (3:5) (4:1) | (14:14) (14:18) (15:1) | (21:15) (21:17) (21:19) | (30:23) (30:24) |
| strategies  (37:22) | (15:3) (15:4) (15:5) (15:10) | (21:22) (21:24) (22:8) | they  (9:16) (9:18) (13:16) |
| street  (1:19) (2:8) | (16:5) (16:7) (16:10) | (22:14) (22:15) (22:17) | (13:18) (17:14) (18:16) |
| structure  (12:16) (45:4) | (16:11) (16:12) (16:14) | (23:16) (23:17) (23:22) | (20:8) (26:17) (32:15) (33:8) |
| study  (13:21) (13:22) | (16:17) (17:1) (17:16) | (23:23) (23:24) (24:1) | they're  (27:17) (44:25) |
| (14:1) (14:12) (44:15) | (18:4) (18:6) (18:17) | (24:2) (24:3) (24:10) | think  (5:14) (18:12) |
| (44:17) (45:9) (45:15) (46:2) | (18:20) (18:25) (19:2) | (24:11) (24:12) (24:14) | (21:8) (22:2) (23:23) |
| subject  (31:8) | (19:4) (19:8) (19:23) | (24:18) (24:21) (25:6) | (26:25) (27:8) (27:14) |
| subjected  (37:1) | (19:24) (20:1) (20:5) (20:6) | (25:8) (25:9) (25:11) | (28:10) (31:13) (40:2) |
| submitted  (20:4) | (20:16) (20:22) (20:24) | (25:12) (25:18) (25:21) | (40:3) (46:6) |
| subordinates  (15:14) | (21:1) (21:5) (21:6) (21:9) | (26:6) (26:10) (26:11) | thinking  (10:6) |
| subsequent  (30:12) (30:14) | (21:10) (21:18) (21:19) | (26:19) (26:21) (27:5) | this  (4:3) (4:14) (7:21) |
| substance  (41:2) (41:14) | (22:3) (22:6) (22:7) (22:10) | (27:7) (27:12) (27:16) | (8:19) (13:17) (13:20) |
| such  (4:14) (8:3) (8:6) | (22:12) (22:17) (23:6) | (27:17) (27:18) (27:19) | (14:9) (14:25) (17:15) |
| (12:22) (12:24) (12:25) | (23:7) (23:8) (23:18) | (28:1) (28:6) (28:9) (28:13) | (25:11) (25:16) (27:2) |
| (22:12) (23:6) (26:8) | (23:19) (24:10) (24:15) | (28:14) (28:25) (29:1) | (29:5) (29:17) (38:1) |
| (26:20) (32:5) | (24:24) (25:8) (25:13) | (29:10) (29:19) (29:21) | (38:12) (38:15) (38:17) |
| sued  (9:17) | (26:1) (26:10) (26:11) | (30:3) (30:4) (30:7) (30:8) | (40:2) (40:3) (40:5) (40:17) |
| suggesting  (20:6) (20:16) | (26:21) (27:15) (27:25) | (30:17) (30:23) (31:4) | (40:19) (40:23) (40:25) |
| suggests  (22:6) | (28:10) (28:17) (28:20) | (31:5) (31:8) (31:9) (31:16) | (41:15) (42:2) (43:13) |
| supervision  (47:9) | (28:25) (29:3) (29:13) | (32:16) (32:18) (32:22) | (43:18) (43:24) (43:25) |
| support  (6:16) (17:4) | (29:23) (30:2) (30:3) (30:8) | (32:23) (32:24) (33:2) | (44:2) (44:8) (44:16) |
| suppose  (12:8) | (30:14) (30:15) (30:20) | (33:3) (33:5) (33:12) | (44:17) (45:19) (47:14) |
| sure  (11:11) (13:18) | (31:2) (31:7) (31:16) (32:4) | (33:16) (33:22) (34:4) | those  (4:7) (4:12) (9:17) |
| (23:2) (26:17) (32:2) | (32:20) (32:21) (33:9) | (34:7) (34:9) (34:11) | (9:23) (15:14) (21:3) (23:3) |
| (36:23) (38:2) (41:1) (42:4) | (33:11) (33:25) (34:3) | (34:21) (34:23) (34:25) | (23:10) (27:12) (27:16) |
| (42:13) (42:23) | (34:12) (34:16) (34:19) | (35:10) (35:15) (35:16) | (27:23) (30:13) (31:15) |
| surrounding  (42:18) | (34:22) (34:25) (35:1) | (35:21) (36:2) (36:3) (36:5) | (32:11) (34:1) (41:2) (41:7) |
| survey  (13:7) (13:9) (39:4) | (35:4) (35:8) (35:10) | (36:10) (36:16) (36:19) | (44:21) |
| sworn  (4:24) (47:5) | (35:13) (35:18) (35:20) | (36:25) (37:5) (37:7) (37:8) | though  (32:8) |
| | (36:2) (36:3) (36:6) (37:7) | (37:12) (37:17) (37:18) | thought  (31:14) |
| **T** | (37:10) (37:24) (38:4) | (37:20) (38:4) (38:18) | thousand  (15:24) (16:2) |
| | (38:6) (39:3) (39:5) (39:6) | (38:22) (38:23) (38:25) | (25:10) |
| take  (16:10) (27:25) | (39:8) (39:9) (39:10) | (39:2) (39:3) (39:4) (39:17) | three  (31:14) (40:8) |
| (29:18) (38:8) (41:6) (41:11) | (39:13) (39:20) (39:21) | (39:25) (40:13) (40:16) | through  (20:19) (30:16) |
| (30:11) (38:9) | (39:25) (40:3) (41:7) (42:9) | (40:23) (41:2) (41:4) (41:8) | (31:20) (37:14) |
| takes  (28:1) | (42:22) (43:3) (43:7) | (41:14) (41:22) (42:5) | time  (4:14) (6:3) (11:1) |
| talk  (7:24) (14:12) | (43:22) (44:10) (44:12) | (42:8) (42:15) (42:17) | (11:2) (11:14) (14:18) (15:6) |
| (18:15) (19:18) (29:3) | (45:4) (45:8) (45:10) | (42:22) (42:25) (43:1) | (27:2) (35:7) (35:21) (36:1) |
| (31:4) (38:17) | (45:12) (45:14) (45:15) | (43:2) (43:4) (43:7) (43:15) | (42:22) (45:15) |
| talked  (7:14) (18:3) (20:3) | (45:16) (47:4) (47:7) | (43:19) (44:1) (44:2) (44:6) | today  (22:20) (22:21) |
| talking  (22:20) (40:13) | (47:12) (48:4) | (44:12) (44:15) (44:22) | (22:23) (38:23) (46:2) |
| (40:16) (43:16) | that's  (6:18) (24:24) | (45:3) (45:9) (45:10) | together  (13:4) |
| tasked  (13:13) (13:14) | (25:1) (25:3) (32:8) (33:17) | (45:11) (45:12) (45:15) | tomorrow  (38:24) (38:25) |
| taylor  (31:23) (32:1) | (39:12) (42:10) (46:6) | (45:16) (45:18) (45:19) | too  (40:3) |
| (32:2) (32:3) (32:6) | the  (1:15) (1:16) (1:17) | (45:20) (45:24) (46:2) | took  (11:10) (13:11) |
| technical  (28:11) | (1:20) (4:3) (4:4) (4:7) | (46:6) (47:4) (47:5) (47:7) | (20:4) (28:23) |

SSOCIATES   INC

topic                                    you're        55

| | |
|---|---|

topic    (31:9)
tort    (6:3)
total    (5:7) (17:15)
:raditional    (28:10)
transcribed    (47:8)
transcript    (47:10)
transcription    (48:5)
transmitted    (30:7)
trey    (14:22)
trial    (5:13) (5:22) (19:13)
tried    (19:2)
true    (47:9) (48:5)
tuesday    (38:14)
twenty    (43:2)
twenty-three    (5:12)
twenty-two    (5:10) (5:20)
two    (8:10) (31:14) (34:2)
typically    (24:2) (24:6)
(37:21)

### U

uh-huh    (5:3) (6:10) (6:22)
(7:1) (7:4) (33:13)
unable    (30:3)
under    (20:5) (47:8)
understand    (42:7)
understanding    (39:21)
(42:21) (47:11)
united    (1:1)
unless    (20:9) (23:23)
(35:2)
until    (4:14) (34:25)
upstairs    (30:11)
use    (12:1) (33:2) (33:3)
used    (4:15) (4:16) (11:22)
(11:24) (27:12) (27:17)
.sually    (16:1) (28:1)

### V

various    (6:6) (28:18)
verbal    (10:3)
versus    (1:5)
very    (20:3) (37:23)
violate    (34:23) (35:8)
violations    (22:17)
voluntarily    (42:11)

### W

wade    (2:7)
wait    (36:12) (40:24)
waived    (4:9) (4:11)
walsh    (1:18) (2:7)
want    (10:10) (12:8)
(19:10) (32:3)
wanted    (13:8) (14:2)
warranted    (18:17)
was    (5:19) (5:24) (5:25)
(7:21) (7:24) (8:13) (9:20)
(9:25) (10:3) (10:4) (10:11)
(10:16) (10:17) (11:1)
(11:3) (11:6) (11:10)
(11:12) (11:17) (11:24)
(12:3) (12:6) (12:11) (13:3)
(13:13) (14:1) (14:14)
(14:18) (16:5) (16:16)
(16:25) (17:6) (17:12)
(17:13) (18:5) (18:11)
(18:12) (18:19) (18:20)
(18:22) (19:2) (19:4) (19:6)
'19:10) (20:17) (20:21)
20:23) (20:24) (21:13)
(21:14) (22:13) (22:21)
(23:12) (24:8) (24:10)
(24:15) (25:7) (25:11)
(26:4) (26:11) (26:21)
(26:22) (27:4) (28:14)

(28:23) (29:12) (29:13)
(29:14) (29:15) (29:21)
(30:3) (32:14) (32:18)
(32:20) (33:9) (37:18)
(39:2) (39:3) (39:10)
(39:12) (39:15) (39:22)
(41:1) (41:2) (41:13)
(41:16) (41:25) (42:7)
(42:11) (42:12) (42:15)
(42:22) (43:2) (43:5)
(43:15) (43:25) (44:12)
(44:17) (45:9) (45:12)
(45:15) (45:17) (45:21)
(45:22) (45:24) (47:7)
wasn't    (21:12) (25:7)
wax    (28:2) (28:4)
way    (20:17) (43:6) (47:13)
website    (35:25)
week    (23:1) (23:2) (23:4)
(44:13)
well    (5:25) (6:17) (9:20)
(13:3) (13:13) (13:23)
(14:7) (15:1) (15:9) (16:20)
(20:6) (21:11) (22:4)
(22:19) (22:22) (23:7)
(29:12) (31:12) (35:10)
(40:11) (43:2)
went    (19:24) (20:1) (20:2)
(40:19) (42:23)
were    (5:19) (6:24) (8:11)
(10:14) (13:9) (14:7) (15:6)
(16:21) (18:16) (19:15)
(21:3) (22:12) (22:16)
(25:10) (26:2) (26:3) (26:8)
(26:9) (26:13) (26:17)
(27:12) (29:24) (30:1)
(30:19) (30:21) (31:8)
(31:14) (34:19) (35:2)
(35:4) (35:24) (36:3) (39:3)
(40:22) (40:24) (43:3)
(44:2) (44:19) (45:2)
we're    (17:16)
weren't    (26:24) (42:24)
we've    (17:15) (27:8) (40:2)
what    (8:13) (8:14) (8:15)
(8:23) (9:9) (9:13) (9:14)
(10:4) (12:17) (14:2)
(14:24) (16:7) (17:6)
(18:14) (18:22) (19:21)
(20:14) (20:18) (22:21)
(27:25) (28:14) (28:22)
(29:17) (29:21) (32:14)
(35:2) (36:21) (36:23)
(39:2) (39:7) (39:10)
(39:12) (41:2) (41:6)
(42:13) (42:21) (42:23)
(42:24) (43:4) (43:15)
(44:24) (45:4) (45:7)
what's    (39:9)
when    (5:22) (11:5) (11:9)
(13:10) (15:10) (16:10)
(16:18) (16:20) (17:8)
(17:25) (18:12) (20:7)
(22:25) (23:16) (23:17)
(27:4) (28:20) (29:17)
(30:7) (30:12) (45:14)
where    (14:4) (17:7) (24:8)
(44:21) (45:5)
whether    (5:20) (16:17)
(21:15) (29:15) (34:22)
which    (13:11) (30:2)
(43:15) (44:14) (45:13)
while    (22:13) (26:3) (26:8)
white    (35:12) (35:18)
(36:8) (36:15) (36:18)
who    (9:23) (10:21) (10:23)

(11:22) (11:24) (13:13)
(14:14) (14:17) (17:6)
(21:6) (21:24) (22:1)
(23:19) (23:21) (25:18)
(26:20) (28:8) (31:4)
(31:23) (41:18) (41:20)
(44:25)
wholesale    (17:11)
whom    (26:4)
whose    (18:6) (45:17)
why    (8:5) (14:1) (14:9)
(20:2) (32:14)
wide    (13:9)
will    (18:4) (38:23)
williams    (2:3) (3:10)
(5:1) (7:8) (20:15) (24:16)
(24:25) (25:4) (25:23)
(26:7) (33:19) (34:8)
(36:13) (37:19) (38:10)
(38:20) (40:10) (40:15)
(43:17)
with    (4:6) (6:4) (7:18)
(8:3) (8:6) (8:16) (10:1)
(13:14) (13:20) (14:9)
(14:12) (17:19) (18:5)
(18:7) (18:19) (21:18)
(21:20) (22:13) (22:14)
(23:14) (24:1) (24:3)
(25:16) (27:8) (28:13)
(28:18) (29:25) (31:10)
(35:3) (36:7) (37:20)
(37:24) (39:20) (41:13)
(41:17) (41:18) (41:20)
(41:21) (42:2) (42:17)
(43:1) (43:6) (48:5)
within    (13:7) (22:4)
without    (24:12) (24:21)
(36:2)
witness    (4:19) (38:18)
(47:4)
witness's    (3:7) (48:1)
woman    (11:22) (11:24)
women    (26:14) (26:17)
wondering    (5:19) (16:16)
(20:17)
word    (12:1) (12:4) (12:8)
(15:1)
words    (15:24) (17:14)
work    (6:4) (21:24) (27:4)
worked    (5:4) (16:5) (18:9)
working    (5:8) (16:21)
(27:5) (33:5) (37:8) (37:12)
works    (36:3)
would    (5:9) (7:15) (8:9)
(8:14) (8:15) (8:16) (8:19)
(8:21) (9:17) (9:18) (10:9)
(11:7) (12:12) (13:6)
(13:17) (14:4) (14:5) (15:1)
(15:3) (16:7) (19:23) (21:6)
(21:9) (21:20) (22:2) (22:3)
(22:7) (22:10) (25:12)
(27:8) (27:15) (28:10)
(29:8) (29:19) (30:10)
(30:15) (30:21) (31:7)
(31:20) (31:25) (32:3)
(32:11) (32:15) (33:23)
(34:23) (34:25) (35:2)
(35:5) (35:8) (35:10)
(35:25) (36:6) (37:24)
(39:6) (45:4) (45:13) (45:14)
wouldn't    (17:6) (18:16)
(21:5) (25:6) (37:10) (37:11)
written    (11:12)
wrote    (29:10)

### Y

yeah    (25:1) (38:19)

(39:12) (39:14) (45:24)
year    (5:24)
years    (5:7) (5:20) (17:19)
yes    (6:14) (6:18) (7:7)
(7:12) (7:20) (8:19) (9:22)
(10:20) (14:13) (16:24)
(18:2) (19:20) (22:24)
(24:5) (24:6) (24:20)
(27:11) (27:22) (27:24)
(29:12) (30:22) (30:25)
(31:3) (32:13) (35:17)
(35:19) (39:1) (40:6)
(40:18) (40:21) (43:23)
(43:25) (44:9) (44:11)
(44:20) (45:6)
yesterday    (31:13) (38:17)
yet    (5:14) (44:16)
you    (5:4) (5:7) (5:14)
(5:18) (5:19) (5:22) (6:3)
(6:7) (6:19) (6:24) (7:2)
(7:7) (7:13) (7:15) (7:17)
(8:2) (8:5) (8:9) (8:15)
(8:16) (8:23) (10:7) (10:10)
(10:12) (12:12) (12:15)
(12:21) (12:25) (13:6)
(13:19) (14:3) (14:7) (14:8)
(14:12) (14:24) (16:12)
(16:15) (16:16) (16:17)
(16:21) (17:9) (17:11)
(17:21) (18:3) (18:5) (18:6)
(18:7) (18:14) (19:8)
(19:13) (19:18) (19:21)
(20:3) (20:6) (20:16) (21:2)
(21:8) (21:15) (21:20)
(21:22) (22:15) (22:21)
(22:22) (22:25) (23:2)
(23:6) (23:7) (23:10) (24:7)
(24:9) (24:14) (24:20)
(25:12) (25:24) (26:3)
(26:8) (26:19) (27:3) (27:8)
(27:14) (27:20) (28:3)
(28:7) (28:13) (28:17)
(28:18) (28:19) (28:22)
(29:5) (29:6) (29:8) (29:13)
(29:17) (29:18) (29:23)
(29:24) (30:7) (30:8) (30:9)
(30:12) (30:13) (30:14)
(30:15) (30:17) (30:18)
(31:1) (31:18) (31:25)
(32:5) (32:10) (33:10)
(33:25) (34:4) (34:12)
(34:14) (34:16) (34:19)
(34:22) (35:2) (35:4)
(35:15) (35:20) (35:24)
(35:25) (36:4) (36:15)
(36:19) (36:23) (37:11)
(37:13) (37:21) (37:25)
(38:24) (39:8) (39:10)
(40:3) (40:22) (40:25)
(41:6) (41:11) (42:2) (42:5)
(42:14) (42:17) (42:24)
(43:4) (43:10) (43:13)
(43:24) (44:2) (44:6) (44:7)
(44:12) (44:24) (45:4)
(45:7) (45:17) (45:21)
(45:23) (46:1) (46:7) (46:9)
your    (5:23) (7:22) (8:13)
(9:21) (10:5) (12:2) (17:19)
(20:18) (22:4) (22:7)
(22:17) (27:20) (28:10)
(30:21) (31:10) (31:25)
(33:20) (36:9) (36:25)
(37:20) (38:22) (39:21)
(40:4) (42:21) (43:8) (44:5)
(44:10)
you're    (5:21) (6:7)
(17:25) (23:2) (26:1)

yourself  (31:18)(40:20)
(41:22)
you've  (30:20)(33:9)
(40:4)(40:17)