UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JENNIFER M. MEDLEY                          CIVIL ACTION

VERSUS                                      NO: 09-4570

LOUISIANA STATE DEPARTMENT                  SECTION: "J" (3)
OF JUSTICE

### ORDER AND REASONS

Before the Court are **Defendant Louisiana State Department of Justice's ("LDOJ") Motion for Summary Judgment (Rec. Doc. 96)** and **Plaintiff Jennifer Medley's ("Medley") Opposition (Rec. Doc. 113)**, as well as **Defendant's Reply in Support (Rec. Doc. 118)**.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

LDOJ hired Plaintiff as an Assistant Attorney General in June of 2004[1] at a starting salary of $40,000. At the time of her hire, she had been admitted to practice law for a year and a half in the state of Louisiana. Initially, she worked on civil rights matters–her workload then shifted to workers' compensation cases. She remained with the LDOJ until September 4, 2009, when she resigned to accept other employment. During her employment, Plaintiff received five salary increases, which ranged from three percent to six percent of her salary. By the time she left LDOJ, her salary had increased $10,000—from $40,000 to $50,000.

---

[1] In her Opposition, Plaintiff writes that she started her employment with LDOJ on July 7, 2004. (Rec. Doc. 113 at 2.)

Plaintiff's last salary increase was effective on April 7, 2008. On April 22, 2008, Plaintiff submitted a request for a cost of living adjustment, seeking an increase in salary to $60,000. Her stated reasons did not include references to her performance. On November 2, 2008, Plaintiff filed an EEOC complaint, alleging that she was "paid less than similarly situated employees" and that she believed she was "being discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because of [her] sex, female, and [her] race, Black." On December 3, 2008, the LDOJ provided its response to the charge of discrimination, denying that Plaintiff was paid less than similarly situated employees and denying that she had been discriminated against because of her race or gender. On May 28, 2009, the U.S. Department of Justice, Civil Rights Division, issued a Notice of Right to Sue letter.

Plaintiff Medley filed an original complaint on July 29, 2009, asserting claims under the Civil Rights Act of 1964, 42 U.S.C. §2000e-5. (Rec. Doc. 1.) Plaintiff then filed a First Amended  Complaint on August 26, 2009, again under the Civil Rights Act of 1964. (Rec. Doc. 6.) Both complaints allege that LDOJ discriminated against Plaintiff by engaging in "discriminatory wage practices based on race and/or gender." (Rec. Doc. 1 at 4 & Rec. Doc. 6 at 4.)

Plaintiff also filed a Motion to File Second Amended

2

Complaint on November 11, 2009, which would have added claims of retaliation. (Rec. Doc. 18.) Magistrate Judge Knowles denied Plaintiff's Motion on January 4, 2010 (Rec. Doc. 36), explaining that "courts in this judicial district are in near-unanimous agreement that no claim for retaliation for employment discrimination exists under Louisiana law since the 1997 amendment" and that "any amendment on Medley's part to add a retaliation claim under Louisiana state law would be futile." (Rec. Doc. 36 at 7.) After Plaintiff filed objections to this Order (Rec. Doc. 37), the Court affirmed the Order denying Plaintiff's Motion to File Second Amended Complaint. (Rec. Doc. 42.) Plaintiff filed a Second Motion to File a Second Amended Complaint on March 8, 2010 (Rec. Doc. 39), which was similarly denied (Rec. Doc. 43) for reasons including Plaintiff's failure to exhaust administrative remedies. The Court subsequently denied Plaintiff's Motion for Reconsideration of the Magistrate Judge's Order. (Rec. Doc. 54, denying Rec. Doc. 45.)

### PLAINTIFF'S CLAIMS

### A.   Plaintiff's Retaliation Claims Alleged in her Opposition

As discussed above, the issue of whether Plaintiff can bring claims of retaliation has been thoroughly reviewed by the Court. Accordingly, although Plaintiff begs the Court yet again in the her Opposition to review her claims of retaliation, the Court declines to do so for the reasons already provided by the Court.

**B.    Plaintiff's Hostile Work Environment and Constructive Discharge Claims Alleged in her Opposition**

Plaintiff also alleges brand-new claims of hostile work environment and constructive discharge in her Opposition, neither of which were included in her Complaint or First Amended Complaint. The Court has the ability to allow parties to make amendments to pleadings under Fed. R. Civ. Pro. 15. However, after evaluating Plaintiff's proposed expansion using the equitable factors enumerated by the Fifth Circuit, the Court declines to allow Plaintiff to add claims of hostile work environment and constructive discharge at this point in the litigation. See Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 268 (5th Cir. 2004). In Ellis, the Fifth Circuit explained that courts may consider factors including "(1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment." Id.

As previously discussed, Plaintiff is well-aware of the process of amending her complaint. Plaintiff did not mention claims of hostile work environment or constructive discharge in her Complaint or First Amended Complaint—nor did she in her failed Second Amended Complaint. Interestingly, in her First Amended Complaint, Plaintiff Medley wrote, "At all pertinent

4

times, Medley enjoyed the ability to make and enforce contracts, including that of employment and working in a <u>non-racially hostile environment</u> within the meaning and intent of 42 U.S.C. § 1981, as amended." (Rec. Doc. 6 at 3.) Plaintiff's failure to allege claims of hostile work environment and constructive discharge earlier is particularly troubling as her claims are not based on information obtained through discovery, but rather primarily on her own sworn declaration. (<u>See</u> Rec. Doc. 113 at 32-36.) Furthermore, adding other claims at this point would cause delay and undue prejudice to the Defendant. Using the <u>Ellis</u> factors, the Court refuses to exercise its discretion to allow Plaintiff to make these new allegations now.

Notwithstanding the Court's decision not to entertain these allegations, Plaintiff has not alleged meritorious hostile work environment and constructive discharge claims. To support her claims, Plaintiff cites to the following instances: (1) after Plaintiff emailed the office to ask a legal question, her superior "replied-all" and told her to look up the question herself; (2) following this email exchange, a loud conversation ensued between the two of them in Plaintiff's office during which Plaintiff's superior told her she was crazy; (3) Plaintiff Medley, along with at least one other attorney, worked "half a city block away" from the nearest common printer; (4) from November 2008 until early May 2009, her superior walked passed

her office several times a day, every day, and stuck his head in her office when he passed; (5) her superior's assistant read through Plaintiff's work emails; and (6) Plaintiff's workload switched from civil rights cases to employment litigation cases.

In analyzing claims alleging a racially hostile working environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (citation omitted). Only when the workplace is "permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). Conduct "that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." Harris, 510 U.S. at 21.

The Fifth Circuit has noted that general allegations of discrimination or harassment should not be considered; instead, a court should only consider the specific allegations of the

6

Plaintiff. <u>Mosley v. Marion County, Miss.</u>, No. 04-60192, 2004 WL 2244260, at *1 (5th Cir. Oct. 5, 2004) (refusing to consider general allegations of discrimination); <u>Wallace v. Texas Tech. Univ.</u>, 80 F.3d 1042, 1049 (5th Cir. 1996) (finding that a general allegation of racist remarks was insufficient to establish prima facie claim of hostile work environment). Title VII does not forbid "all verbal or physical harassment in the workplace"; it targets only discrimination because of plaintiff's protected status." <u>Williams v. Gonzales</u>, No. Civ. A. 104CV342, 2005 WL 3447885, at *15 (E.D. Tex. Dec. 14, 2005) (citation omitted). Plaintiff must show that "but for" her race or gender, she would have experienced a different workplace. <u>Merriell v. Slater</u>, No. Civ. A. 97-0800, 1998 WL 88857, at *5 (E.D. La. Feb. 27, 1998).

Here, Plaintiff has not pointed to sufficient evidence in the record to establish that a reasonable person would find the environment at LDOJ to be hostile or abusive. Plaintiff complains of a couple of isolated incidents, her walk to the printer, and her superior's practice of walking past her office. And yet it does not appear that these instances were sufficiently severe or pervasive to alter the conditions of the Plaintiff's employment and create an abusive working environment. Moreover, Plaintiff's allegations do not reveal that Plaintiff was subjected to harassment because of her race or gender.

Plaintiff acknowledges that a claim for constructive discharge "requires a greater degree of harassment than that required by a hostile environment claim." (Rec. Doc. 113 at 35.) Because the Court is not persuaded that Plaintiff has alleged meritorious hostile work environment claims, it follows that the Court is also not persuaded that Plaintiff has alleged meritorious constructive discharge claims.

Again, the Court will not consider the Plaintiff's claims for hostile work environment or constructive discharge, but even if it did, the Court does not find that Plaintiff has alleged meritorious claims. Accordingly, the Court will address <u>only</u> Plaintiff's discrimination claims presented in her original Complaint and First Amended Complaint.

**C.   Plaintiff's Discrimination Claims**

**1.   Parties' Arguments**

Defendant argues that Plaintiff cannot carry her burden of proof with respect to her discrimination claims, as she cannot establish a prima facie case of disparate pay based on race or gender. To make out a prima facie case of discrimination under Title VII, Defendant explains, an employee must show that she was a member of a protected class, that she was denied a benefit, that she was qualified for the benefit, and that an employee outside the class received the benefit. <u>McDonnell Douglas, Corp. v. Green</u>, 411 U.S. 792, 802-03 (1973). According to Defendant

8

then, Plaintiff must show that she occupied a position similar to white employees and to male employees who were compensated at a higher rate.

Defendant explains that because Plaintiff has not provided direct testimony from LDOJ employees as to discriminatory intent, Plaintiff must prove discrimination using circumstantial evidence. Under the McDonnell Douglas framework, Plaintiff must first establish a prima facie case of discrimination. If Plaintiff is successful, the burden shifts to Defendant to provide a legitimate, nondiscriminatory reason for its action, and if Defendant does, then Plaintiff must offer evidence that the proffered reason is a pretext for discrimination. 411 U.S. at 802-04. In establishing a prima facie case of discrimination, Defendant explains that Plaintiff must show that she was "paid less than a member of a different race was paid for work requiring substantially the same responsibility." Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981); see also Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984).

Defendant argues that Plaintiff cannot meet her burden to establish a prima facie case of discrimination. Plaintiff has identified six attorneys employed by the LDOJ whose level of pay allegedly exceeded hers-Phyllis Glazer (white female), Kelly Badeaux-Phillips (white female), Anthony Winters (black male),

9

Matthew Derbes (white male), Michael Menasco (white male) and John Sudderth (white male). However, Plaintiff only identifies three attorneys to whom she is similarly situated—Matthew Derbes (white male), Michael Menasco (white male), and Tanya Irvin (black female). (Rec. Doc. 96, Ex. K, Resp. to Interrog. 9.)

Defendant methodically evaluates each of the attorneys identified by Plaintiff and finds that Plaintiff has failed to establish a prima facie case of discrimination. Namely, Plaintiff has failed because the named employees were either (1) not a member of a different race; (2) not paid more than Plaintiff; (3) not similarly situated; or (4) not performing substantially the same job.

First, Defendant explains that Anthony Winters and Tanya Irvin are not members of a different race. Although Plaintiff described Anthony Winters as a white attorney, Winters identified himself as a black attorney on LDOJ personnel forms. (Rec. Doc. 96, Ex. L.) Defendant also points out that Plaintiff has supplied the Court with an example of a member of her own race whose salary is greater than her own—Winters' starting salary in 2006 was $41,000. Tanya Irvin, also identified by Plaintiff, is another LDOJ black attorney. Although Irvin had a starting salary of $50,000 in 2009, Defendant explains that this was as a result of her years of prior legal experience. (Rec. Doc. 96, Ex. B (showing that Irvin started at the LDOJ in 2009 and was admitted

10

to the bar in 2002).) Accordingly, because these attorneys were also African American, Defendant contends that the Court should not consider these two attorneys in determining whether Plaintiff established a prima facie case.

Next, Defendant argues that for the majority of Plaintiff's employment, Plaintiff actually earned more than Phyllis Glazer, a white female attorney whom Plaintiff has identified as a white attorney earning more than she. Glazer was hired approximately fifteen months after Plaintiff, and began at the same starting salary–$40,000. Because Plaintiff had already received an across-the-board increase, Plaintiff earned more than Glazer earned when Glazer began at LDOJ. Only when Glazer received a merit increase of $5,000 in January of 2008 upon receiving a competitive job offer did Glazer earn more than Plaintiff. Therefore, Defendant explains that for the first two and a half years of Glazer's employment, Plaintiff actually earned more than Glazer. Accordingly, Defendant concludes that Plaintiff does not establish a prima facie case by providing Glazer as an example–rather, Glazer's salary actually shows that at several times, LDOJ was paying Plaintiff, a black attorney, more than Glazer, a white attorney.

Thirdly, Defendant argues that Plaintiff was not similarly situated to Kelly Badeaux-Phillips, Michael Menasco, or John Sudderth in that Plaintiff had far less prior legal experience

11

than these other attorneys did when they began at LDOJ. When LDOJ hired Plaintiff, she had a year and a half of prior legal experience; whereas Badeaux-Phillips had five and a half years of prior legal experience, Menasco had five and a half years of prior legal experience, and Sudderth had twelve years of prior legal experience. As such, Defendant contends that Plaintiff was not similarly situated to these attorneys. Although Plaintiff identified Tanya Irvin as a similarly situated attorney, Defendant explains that not only is Irvin black (and therefore not relevant to Plaintiff's establishing a prima facie case), but Irvin is not similarly situated to Plaintiff because she had six years of prior legal experience.

Fourthly, Defendant asserts that Plaintiff did not perform the same job as Matthew Derbes or Anthony Winters. LDOJ hired Derbes as an Assistant Attorney General in the Criminal Division in 2006 at a starting salary of $50,000 based on his prior legal experience as a chief prosecutor with the Orleans Parish District Attorney's Office. Defendant argues that attorneys in the Criminal Division need a set of specialized skills to prosecute criminal cases and that therefore attorneys in the Criminal Division are not similarly situated to attorneys in the Litigation Department in which Plaintiff worked. Additionally, although Defendant believes that the Court should not consider Plaintiff's identification of Anthony Winters as he is also a

12

black attorney, Winters worked in the Gaming Division, another
area of LDOJ that requires attorneys to have a specialized
working knowledge of gaming and gaming law. Defendant contrasts
the work done by Derbes and Winters with that done by
Plaintiff-Plaintiff's area required no specialized knowledge of
any particular area of law.

Additionally, Defendant provides details on other black
attorneys employed by LDOJ who earned more than Plaintiff,
further refuting the allegations of discrimination-Defendant
employed Pauline Feist (black female) who had a starting salary
of $45,000 in 2001, Sharon Florence (black female) who had a
starting salary of $50,000 in 2009, Kevin Hill (black male) who
had a starting salary of $60,000 in 2008, and Tanya Irvin (black
female) who had a starting salary of $50,000 in 2009.

Ergo, Defendant concludes that Plaintiff has failed to show
that she was "paid less than a member of a different race was
paid for work requiring substantially the same responsibility."
Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071,
1074 (5th Cir. 1981). Although Defendant maintains that Plaintiff
cannot establish a prima facie case, Defendant argues that even
if she did, Defendant can articulate legitimate, non-
discriminatory reasons for paying non-black attorneys more than
it paid Plaintiff. Defendant points to the differences in prior
legal experience and the different skill sets needed in the

13

Criminal and Gaming divisions. Defendant also explains that merit increases are within the discretion of the Attorney General, and that other employees were more deserving of these increases than Plaintiff. If the Court had found that Plaintiff did establish a prima facie case of discrimination, Defendant argues that it could shift the burden back to Plaintiff to show that Defendant's reasons were merely pretexts for discrimination. Defendant submits that Plaintiff is and will be unable to do so.

Lastly, Defendant addresses Plaintiff's gender discrimination claim. Defendant argues that Plaintiff has effectively disproven her own claim of disparate pay based on gender in her attempt to establish a prima facie case of disparate pay based on race—namely, in identifying for the Court Phyllis Glazer and Kelly Badeaux-Phillips (both white female attorneys). Defendant explains that Badeaux-Phillips was hired in 2005 with a starting salary of $52,000 based on her almost six years of prior legal experience. The fact that Badeaux-Phillip's (also a member of the same protected gender class) starting salary was higher than Plaintiff's rate of pay refutes the claim that LDOJ engaged in discriminatory wage practices based on gender. Similarly, Defendant argues that the fact that at some points Glazer earned more than Plaintiff also refutes Plaintiff's gender discrimination claim.

14

With respect to Plaintiff's gender discrimination claim, Defendant also provides the Court with examples of male attorneys who earned the same as or less than Plaintiff–Alan Alario II was hired in 2006 with a starting salary of $40,000, Philbert Grinstead was hired in 2004 at a rate of $35,000, and Frank LaBruzzo was hired in 2005 with a starting salary of $40,000. Because Plaintiff has not established prima facie cases for either of her discrimination claims, Defendant requests that the Court grant summary judgment in its favor.

In response, Plaintiff cites to general statistics about salaries paid to black and white attorneys, which show that black attorneys, and specifically black females, were paid lower salaries then their white counterparts. She also cites to the pay differential between her and Michael Menasco as evidence of discrimination–Menasco, a white attorney, earned $4,000 more than Plaintiff although barred at the same time as Plaintiff. Plaintiff points to Phyllis Glazer, a white attorney, who asked for and received an additional salary increase when LDOJ repeatedly told Plaintiff that there were no funds in the budget for raises. Plaintiff argues that "[g]iven her time, experience and performance evaluations . . . , there exists no rationale for Glazer's rate of pay other than race discrimination."

Plaintiff also directs the Court's attention to John Sudderth, who was given a raise despite being disciplined for

ethical shortcomings in connection to his work, and to Kelly
Badeaux-Phillips, who was also given a raise. Lastly, Plaintiff
mentions that Anthony Winters, a black male, was barred after
Plaintiff but hired at a higher rate of pay.

    **2.   Discussion**

Summary judgment is appropriate when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(c)(2); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-
23 (1986); <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th
Cir. 1994). When assessing whether a dispute as to any material
fact exists, the Court considers "all of the evidence in the
record but refrains from making credibility determinations or
weighing the evidence." <u>Delta & Pine Land Co. v. Nationwide
Agribusiness Ins. Co.</u>, 530 F.3d 395, 398 (5th Cir. 2008). All
reasonable inferences are drawn in favor of the nonmoving party,
but a party cannot defeat summary judgment with conclusory
allegations or unsubstantiated assertions. <u>Little</u>, 37 F.3d at
1075. A court ultimately must be satisfied that "a reasonable
jury could not return a verdict for the nonmoving party." <u>Delta</u>,
530 F.3d 399.

If the dispositive issue is one on which the moving party
will bear the burden of proof at trial, the moving party "must

come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

Defendant is correct in explaining that in order to make out a prima facie case of discrimination under Title VII, an employee must show that she was a member of a protected class, that she was denied a benefit, that she was qualified for the benefit, and that an employee outside the class received the benefit.

McDonnell Douglas, Corp. v. Green, 411 U.S. 792, 802-03 (1973).
Accordingly, Plaintiff must show that she occupied a position
similar to white employees and to male employees who were
compensated at higher rates. Under the McDonnell Douglas
framework, if Plaintiff is successful in establishing a prima
facie case of discrimination, the burden shifts to the Defendant
to provide a legitimate, nondiscriminatory reason for its action.
If Defendant does, then Plaintiff must offer evidence that the
proffered reason is a pretext for discrimination. 411 U.S. at
802-04.

Although Plaintiff filed a Motion for Leave to File Excess
Pages in Opposition (Rec. Doc. 111), Plaintiff does little to
actually respond directly to Defendant's arguments. She spends
the majority of her Opposition explaining her discontent with the
job and her dissatisfaction with her salary. Although it is clear
that Plaintiff was unhappy during the course of her employment at
LDOJ, she falls short of meeting her burden.

Plaintiff cites to general statistics about salaries–which
are meaningless without giving context as to whom these attorneys
were. In establishing a prima facie case of discrimination,
Plaintiff must show that she was "paid less than a member of a
different race was paid for work requiring substantially the same
responsibility." Pittman v. Hattiesburg Mun. Separate Sch. Dist.,
644 F.2d 1071, 1074 (5th Cir. 1981); see also Uviedo v. Steves

18

Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984). Plaintiff does not demonstrate to the Court that these attorneys were doing "work requiring substantially the same responsibility," and accordingly does not meet her burden to establish a prima facie case of discrimination by presenting the Court with this list.

Plaintiff only offers five attorneys in her Opposition[2] to demonstrate to the Court that she was discriminated against on the basis of her race and gender—Michael Menasco (white male), Phyllis Glazer (white female), John Sudderth (white male), Kelly Badeaux-Phillips (white female), and Anthony Winters (black male). In addition to showing that these attorneys were outside her protected class and received higher pay, Plaintiff must also show that these attorneys were similarly situated to her. McDonnell Douglas, 411 U.S. at 802. With respect to Menasco, Sudderth, Badeaux-Phillips and Winters, Plaintiff has not carried her prima facie burden in demonstrating that she was similarly situated to these attorneys.

The Fifth Circuit has explained that in order for an employees to be similarly situated, employees should be in

_____

[2] The other two attorneys mentioned by Plaintiff in her Interrogatories were Matthew Derbes (white attorney) and Tanya Irvin (black female). Tanya Irvin is not a member outside Plaintiff's protected class and thus irrelevant to Plaintiff's establishing a prima facie case. The Court finds that Derbes is not similarly situated to Plaintiff, as he served in the Criminal Division (which required specialized skills) and had prior experience as a chief prosecutor with the Orleans Parish District Attorney's Office.

"nearly identical" situations. Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009). Accordingly, employees "with different supervisors, who work for different divisions of a company," or "who have different work responsibilities" would *not* be similarly situated. Id. at 259-60. Conversely, "when employees being compared held the same job or responsibilities [or] shared the same supervisor or had their employment status determined by the same person," courts should consider them similarly situated for the purposes of Title VII analysis. Id. at 260.

LDOJ has provided evidence to show that Menasco, Sudderth, and Badeaux-Phillips all had significantly more prior legal experience at the time they were hired by LDOJ than Plaintiff did when she began her employment at LDOJ. Plaintiff has not even presented the Court with an argument that despite these disparities in experience, these attorneys were similarly situated. Accordingly, Plaintiff does not carry her burden to establish a prima facie case of discrimination by identifying these attorneys.

With respect to Winters, not only is he a black attorney (and thus not helpful to Plaintiff in establishing a prima facie case of race discrimination), Plaintiff has also not shown that she is similarly situated to Winters. Winters is an attorney in the Gaming Division, which LDOJ explains requires a set of

20

specialized gaming knowledge. Winters and Plaintiff have different work responsibilities and work in different divisions of LDOJ—accordingly, they were not similarly situated for the purposes of a gender discrimination claim. By identifying Winters, Plaintiff also falls short of establishing a prima facie case of discrimination. Further, because Winters, Menasco, and Sudderth, the only male attorneys identified by Plaintiff, are not similarly situated to Plaintiff, Defendant is entitled to summary judgment on Plaintiff's gender discrimination claims.

Lastly, Plaintiff offers the example of Phyllis Glazer, a white attorney. Plaintiff does not dispute Defendant's assertion that Glazer was hired fifteen months after Plaintiff at a starting salary of $40,000, and that for over two years, Plaintiff actually earned more than Glazer earned (because Plaintiff had already received an across-the-board increase when Glazer began). However, Glazer did receive a merit increase of $5,000 in January of 2008, and from that point forward, Glazer did earn more than Plaintiff. Viewing the facts in the light most favorable to Plaintiff, she establishes a prima facie case of race discrimination by her identification of Glazer:(1) Plaintiff is a member of a protected class—she was a black attorney; (2) Plaintiff was denied a raise over and above her across-the-board increases paid to all attorneys; (3) Plaintiff alleges that she was qualified for the raise and presented the Court with

21

favorable recommendation letters;[3] and (4) an employee outside
her protected class, Glazer, received a raise. Under McDonnell
Douglas, the burden then shifts to the Defendant to provide a
non-discriminatory motive for giving Glazer a merit raise. 411
U.S. at 802-04.  Defendant has done so–Defendant explains that it
gave Glazer a $5,000 merit raise when Glazer received a
competitive job offer.

Because Defendant has articulated a nondiscriminatory
motive, the burden shifts back to Plaintiff to show that the
Defendant's motive is merely a pretext for discrimination. Id.
Plaintiff has failed to do so. Instead, she baldly asserts that
"[g]iven [Plaintiff's] time, experience and performance
evaluations . . . , there exists no rationale for Glazer's rate
of pay other than race discrimination." However, Plaintiff is
mistaken. Defendant *has* provided another rationale to justify
giving Glazer a raise in lieu of giving Plaintiff a raise.
Plaintiff cannot carry her burden with mere allegations. Little,
37 F.3d at 1075 (explaining that a party cannot defeat summary
judgment with conclusory allegations).

In sum, Plaintiff has not established a prima facie case of
discrimination by her identification of Menasco, Sudderth,
Badeaux-Phillips, or Winters–as these attorneys are not similarly

---

[3] Defendant maintains that Plaintiff was not qualified for a
merit increase.

situated to Plaintiff. Even if Plaintiff does establish a prima facie case of race discrimination by her identification of Glazer, Defendant has provided a valid, non-discriminatory motive to give Glazer a merit raise in lieu of Plaintiff. Plaintiff now has the burden of showing that Defendant's motive was merely a pretext for discrimination, and she has failed to carry that burden. Defendant is therefore entitled to summary judgment on Plaintiff's race discrimination claims.

Accordingly, **IT IS ORDERED** that the **Defendant's Motion for Summary Judgment (Rec. Doc. 96)** is **GRANTED**.

New Orleans, Louisiana, this 21st day of October, 2010.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE